**Julia E. Markley**, OSB No. 000791
JMarkley@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Thomas H. Shunk** (Ohio Bar No. 0025793)
TShunk@bakerlaw.com
(admitted *pro hac vice*)
**Christina J. Moser** (Ohio Bar No. 0074817)
cmoser@bakerlaw.com
(admitted *pro hac vice*)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio  44114-3485
Telephone: 216.621.0200
Facsimile: 216.696.0740


Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **GOOGLE INC.**,<br><br>            Plaintiff,<br><br>v.<br><br>**TRAFFIC INFORMATION LLC**,<br><br>            Defendant. | No. CV09-642-HU<br><br>**OPPOSITION BY GOOGLE INC. TO MOTION TO DISMISS OR TRANSFER**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff Google Inc. ("Google") respectfully submits its Opposition to the Motion to

Dismiss or Transfer filed by defendant Traffic Information, LLC ("Traffic").  Google

respectfully requests oral argument on Traffic's motion.

i-    OPPOSITION TO MOTION TO DISMISS OR
      TRANSFER

*Perkins Coie* LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## Table of Contents

I.   Introduction ............................................................................................... 1

II.  Relevant Facts .......................................................................................... 3

III. Argument In Support Of Jurisdiction ...................................................... 6

   A.  Traffic Information Does Not Deny That There Is A Substantial Controversy Between The Parties, And This Court Therefore Has Subject Matter Jurisdiction .......................... 6

   B.  Traffic's Injurious Statements To Google's Customers Are "Fairly Traceable" To Traffic  7

   C.  Statements Made In Settlement Can Create A Justiciable Controversy ............................ 8

IV.  Argument Opposing Transfer ................................................................. 11

   A.  Under 28 U.S.C. § 1404(a), Transfer Is Appropriate Only If the New Venue Is Clearly More Convenient ............................. 11

   B.  Google's Choice of Forum Is Entitled to Deference ....................................................... 13

   C.  Private Factors Weigh Against Transfer ........................................................................ 13

     1.  Ease of Access to Sources of Proof Weighs Heavily in Favor of the District of Oregon ............................. 13

     2.  Availability of Compulsory Process Weighs Against Transfer ............................... 16

     3.  The Cost of Transporting Friendly Witnesses Weighs Heavily Against Transfer ... 17

     4.  Possibility of Viewing Subject Premises Is Neutral ............................................... 19

   D.  Public Factors Weigh Against Transfer ......................................................................... 19

     1.  Court Congestion Weighs Heavily Against Transfer ............................................. 19

     2.  Transfer to the Eastern District of Texas Would Not Advance Judicial Efficiency ............................. 20

     3.  Imposition of Jury Duty on Community Unrelated to Litigation Weighs Against Transfer ............................. 22

     4.  Local Interest Weighs Against Transfer ................................................................ 24

     5.  Familiarity with Governing Law and Avoidance of Conflicts of Law Are Neutral Factors. ............................. 25

   E.  At the Most, Transfer to the Eastern District of Texas Only Shifts Convenience ...... 25

   F.  Overall, the "Interest of Justice" Weighs Against Transfer. ........................................ 25

     1.  The "Interest of Justice" Is Not Limited to Whether Related Cases Exist in the Transferee Forum. ............................. 25

     2.  Transfer to the Eastern District of Texas Would Reward Traffic's Forum Shopping and Indirect Pursuit of Google's Business Partners ............................. 28

ii-  OPPOSITION TO MOTION TO DISMISS OR TRANSFER

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

V.   Conclusion.................................................................................................... 30

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

# Table of Authorities

*Cases*

*Allen v. Scribner*, 812 F.2d 426 (9th Cir. 1987).................................................................. 27

*Arrowhead Indus. Water Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988) ............. 6, 8, 29

*Birmingham Fire Ins. Co. v. UP North Plastics, Inc.*, 2004 WL 838169 (D. Minn. April 19, 2004) ............................................................................................................... 28

*Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F.Supp.2d 648 (D. Del. 2008)....... 20, 22

*Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, 79 U.S.P.Q. 2d 1603 (C.D. Cal. 2006) .......................................................................................................... 23

*Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1st Cir. Mass. 1977)........................... 26

*Codex*, .......................................................................................................................... 29

*CollegeNet, Inc. v. ApplyYourself, Inc.*, slip op., Case No. CV-02-484-HU (D. Ore. 2002)................................................................................................................... 25

*Creative Tech., Ltd., v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696 (9th Cir. 1995) ............................... 12

*Data Retrieval Technology, LLC v. Sybase, Inc.*, Slip Copy, 2009 WL 960681 (W.D.Wash. 2009) ........................................................................................... 14

*Dean Rhoades v. Avon Products, Inc.*, 504 F.3d 1151 (9th Cir. 2007)......................................... 9

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir.1986)..............12, 13, 16

*Delphi Corp. v. Automotive Technologies Int'l., Inc.*, 2008 WL 294116 (E.D. Mich. July 25, 2008) ................................................................................................................. 26, 29

*Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999) ..................... 7

*Fifth Generation Computer Corp. v. IBM Corp.*, No. 9:08-cv-205, 2009 U.S. Dist. LEXIS 12502 (E.D. Tex. Feb. 13, 2009) ......................................................................... 15

*Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088 (9th Cir. 1998)..................... 12

*Gemini IP Tech. v. Hewlett-Packard Co.*, No. 07-C-205-S, 2007 WL 2050983 (W.D. Wisc. July 16, 2007) ............................................................................................. 23

*Home Indem. Co. v. Stimson Lumber Co.*, 229 F.Supp.2d 1075 (D.Or., 2001)........................... 13

*In re TS Tech*, 551 F.3d 1315 (Fed. Cir. 2008) ...................................................................... 13

*Invitrogen Corp. v. Incyte Genomics, Inc.* 2002 WL 883963 (D.Del. May 1, 2002) ................. 26

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ...................................................................................................... 26

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir.) ........................................ 11, 12, 13

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) ........................................ 28

*Krauss Craft, Inc. v. Ross Recreational Equip. Co.*, Slip Copy, 2009 WL 367521 (D. Or., February 12, 2009) ...................................................................................................... 12

*Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607 (E.D. La. 2000) .................... 23

*Md. Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941) .................................... 6

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ............................................ 6

*Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008) ........ 21

*Miller v. Consolidated Rail Corp.*, 196 F.R.D. 22 (E.D.Pa.2000) .................................. 13

*Minnesota Min. and Mfg. Co. v. Norton Co.*, 929 F.2d 670 (Fed. Cir. 1991) ....................... 7

*Molins PLC v. Quigg*, 837 F.2d 1064 (Fed.Cir.1988) .................................................... 12

*Nice Systems, Inc. v. Witness Systems, Inc.*, 2006 WL 2946179 (D.Del. October 12, 2006) ...................................................................................................................... 21

*Pergo, Inc. v. Alloc, Inc.*, 262 F.Supp.2d 122 (S.D.N.Y. 2003) .................................... 21

*Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F.Supp.2d 836 (N.D.Ill.2009) ....... 19

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) ...................... 9

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) .................................. 7

*Stomp, Inc. v. NeatO*, LLC, 61 F.Supp.2d 1074 (C.D.Cal. 1999) .................................... 28

*Surefoot L.C. v. Sure Foot Corp.*, 2007 U.S. Dist. LEXIS 23525 (D. Utah 2008) .................. 9

*Surfer Internet Broad. of Miss., LLC v. XM Satellite Radio Inc.*, No. 4:07-cv-034, 2008 WL 1868426 (N.D. Miss. Apr. 24, 2008) ................................................................ 23

*The Whistler Group, Inc. v. PNI Corp.*, No. 03-1536, 2003 WL 22939214 (N.D. Tex. Dec. 5, 2003) ............................................................................................................ 23

*United States ex rel. Swan v. Covenant Care, Inc.*, 1999 U.S. Dist. LEXIS 15287 (N.D. Cal. 1999) ...................................................................................................... 27

*Vestas-American Wind, Technology, Inc. v. Beaird Co., Ltd.*, 2008 WL 4164551 (D.Or., September 03, 2008) .................................................................................................. 25

v-   OPPOSITION TO MOTION TO DISMISS OR
TRANSFER

41063-0124/LEGAL16811746.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Warner v. Stryker Corp.*, Slip Copy, 2009 WL 1773170 (D. Or., June 22, 2009)...................... 21

*Statutes*

28 U.S.C. § 1404(a).................................................................................................. 11

*Rules*

Fed. R. Civ. P. 45(c)(3)............................................................................................ 16

Fed. R. Evid. 408..................................................................................................... 1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## I.    Introduction

Defendant Traffic Information LLC ("Traffic") argues (1) that Google Inc.'s ("Google") Complaint lacks subject matter jurisdiction because it is based on threats of litigation made by Traffic to Google's business partner, T-Mobile, not to Google, and (2) that the Eastern District of Texas is better able to adjudicate this matter.  Neither argument has merit.

This lawsuit concerns allegations by Traffic that Google's software product "Google Maps for Mobile" ("GMM")[1] infringes U.S. Patents 6,785,606 and 6,466,862 (the "Traffic Patents").  Traffic does not deny that it has asserted to Google's partner T-Mobile that use of GMM on a T-Mobile cell phone[2] infringes the Traffic Patents.   Traffic's assertion directly threatens Google's relationship with T-Mobile and T-Mobile cell phone users and with other potential partners and customers that may be considering GMM for use on other cell phones.  Though Traffic argues that there is no substantial controversy to support a declaratory judgment, Traffic has not withdrawn its claim that GMM infringes the Traffic Patents.

Rather than deny that it has made the accusation, Traffic argues that it should be permitted to make improper allegations of patent infringement to Google's distributors and end users with impunity, by virtue of labeling any such accusations "confidential" pursuant to Fed. R. Evid. 408.  That rule, however, is not a <u>confidentiality</u> rule, but a narrow rule regarding <u>admissibility</u> of evidence.  This Brief shows that use of Rule 408 communications to serve as the basis for declaratory judgment actions has been explicitly recognized as proper by various courts, including the 9th Circuit Court of Appeals.  Traffic's attempt to imply wrongdoing on the part of

---

[1] GMM is software which can be utilized on cell phones and similar devices in order to display maps on the cell phone for various purposes.

[2] T-Mobile makes GMM available to purchasers of certain of its cell phones.

either Google or T-Mobile is inappropriate – a transparent effort to distract this Court from the legal issues presented.

Google's lawsuit is not just the "first-filed" action - it is the only filed action between Traffic and Google.  Traffic fails to overcome the requisite deference to the District of Oregon as Google's chosen forum, and fails to meet the high burden of proof necessary to support transfer. Indeed, while Traffic's principals and the inventors live and work in or around this district, Traffic is placed in the counterintuitive position of arguing that its own home turf is less convenient than the far away Eastern District of Texas.

Traffic's primary argument for the Eastern District of Texas as a preferable venue revolves around its contention that it "does business" in that district.  Yet Traffic cannot identify any witnesses who actually reside there that might be of importance to this case, and it can identify no actual business it does there other than the business of filing lawsuits.[3]  In fact, transfer of this matter to the Eastern District of Texas would undermine, not advance the interests of justice, and would unfairly reward patent owners whose only business function is to file strategic multiple lawsuits in inconvenient venues.

_____

[3] In footnote 2 of its brief, Traffic identifies five lawsuits filed in the Eastern District of Texas by it  regarding "one or both of the patents-in-suit."  Traffic's brief is dated August 14. That court's docket reveals that on that very day Traffic filed, and promptly dismissed, another such action in the Eastern District of Texas, *Traffic Information LLC v. Yahoo! Inc., et al.*, Case No. 1:09cv-00786, asserting claims against Yahoo! Inc., Hewlett-Packard Company, Mapquest, Inc., Rand McNally & Company and The American Automobile Association, Inc., and then four days later filed a similarly-titled case in that district, Case No. 2:09-cv-00246 asserting claims against Yahoo!, Inc., Casio America, Inc., Cole Cellular Phones, Hewlett-Packard Company, Mapquest, Inc., Nokia, Inc., Rand McNally & Company and The American Automobile Association, Inc., making the count of cases seven, not including the present action.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Google's declaratory judgment action is the only action between the parties that would resolve all issues related to whether or not GMM infringes the Traffic Patents. Google's choice of forum is the District of Oregon. Traffic offers no convincing reason to disturb this choice.

## II.    Relevant Facts

Google filed this declaratory relief action on June 9, 2008, after receiving notice from T-Mobile USA that Traffic had identified GMM as infringing the Traffic Patents when used on a T-Mobile cell phone. As GMM is not limited to any particular device,[4] customers of T-Mobile USA represent only a portion of total GMM users.

Google's main office is in Mountain View, California.[5] The bulk of Google's business activities relating to the accused Google product take place in its Mountain View, California and Seattle/Kirkland, Washington offices.[6] Accordingly, the majority of Google employees with information potentially relevant to this lawsuit and relevant documents are located in or near Mountain View and Seattle.[7] Google has no office located in or employee currently residing in the Eastern District of Texas.[8] The accused traffic features of GMM were initially developed by employees of Zipdash, Inc., a Palo Alto-based company purchased by Google in 2004.[9] Google

---

[4] See Exhibit 1, Google Maps for Mobile product information ("Google Maps for mobile works on most phones") found at:
http://www.google.com/mobile/products/maps.html#p=default.
[5] See Exhibit 2, Delaware Dept. of State record for Google Inc.; Exhibit 3, Google Locations, found at http://www.google.com/intl/en/corporate/address.html.
[6] See Exhibit 4, Information page for Google's Mountain View, California location; Exhibit 5, Information page for Google's Seattle/Kirkland, Washington location..
[7] See Declaration of Christina J. Moser, ¶¶3, 5 (Moser Decl.").
[8] Id. ¶6.
[9] See Exhibit 6, Exhibit 21.01 to Google, Inc.'s 2004 Annual Report; Exhibit 7, *Navigating by Phone*, Palo Alto Weekly, April 28, 2004, accessible at
http://www.paloaltoonline.com/weekly/morgue/2004/2004_04_28.zipdash28ja.shtml; Exhibit 8, *TECHNOLOGY; That's the Weather, and Now, Let's Go to the Cellphone for the Traffic*, New York Times, March 1, 2004, accessible at

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

continues to develop and support these traffic features at Google's offices based in the greater Seattle, Washington area.[10]  T-Mobile USA, the Google business partner that received the infringement accusations, is based in Bellevue, Washington.[11]  As demonstrated by the foregoing, none of Google's potentially relevant information or witnesses for this case is located in Texas.

Traffic is a Texas limited liability company registered with the Texas Secretary of State on April 13, 2006.[12]  Although Traffic claims that its principal business operations are conducted in the Eastern District of Texas, its address listed with the Texas Secretary of State is 601 SW 2nd Ave. Ste. 1600, Portland, OR 97204-3157.[13]  Traffic claims that its documents are located in Bellaire, Texas, which is the location of its litigation counsel.[14]  Traffic has identified no "business" it conducts in the Eastern District of Texas, other than the multiplicity of patent suits it has filed over the past two years.[15]

Kevin Russell is a named co-inventor of the Traffic Patents and also is the patent attorney who prosecuted the applications that resulted in the Traffic Patents.[16]  Mr. Russell is a partner at Chernoff Vilhauer McClung & Stenzel LLP, which has its sole office at 601 SW 2nd Ave Ste

---

http://www.nytimes.com/2004/03/01/business/technology-that-s-the-weather-and-now-let-s-go-to-the-cellphone-for-the-traffic.html.
  [10] Exhibit 5.
  [11] See Exhibit 9, T-Mobile USA Company Information, found at http://www.t-mobile.com/Company/CompanyInfo.aspx?tp=Abt_Tab_CompanyOverview.
  [12] See Exhibit 10, Texas Franchise Tax Certification record for Traffic Information LLC, downloaded June 1, 2009.
  [13] *Id.* Google has been unable to identify a Texas address for Traffic and none is provided in the Declaration of Kevin Russell in Support of Traffic's Motion to Dismiss or Transfer ("Russell Decl."). See Moser Decl. ¶12.
  [14] See Motion to Dismiss or Transfer, Docket No. 8 (caption) and Russell Decl. ¶13.
  [15] See, *e.g.* Russell Decl. ¶¶7-9.
  [16] See Russell Decl. ¶10; Exhibit 11, Attorney/Agent Information for App. Serial No. 10/367,162 ('606 Patent) and App. Serial No. 09/550,476 ('862 Patent).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1600, Portland OR 97204.[17]  Both Kevin Russell and Bruce DeKock, another listed inventor of

the Traffic Patents, reside in the District of Oregon.[18]  The third inventor, Richard Qian, was a

resident of Camas, Washington (approximately 20 miles from Portland) and, upon information

and belief, currently lives near Seattle, Washington.[19]  Traffic has identified no witnesses

residing in the Eastern District of Texas.  Despite its purported concern about being involved in

"piecemeal litigation," Traffic has filed seven *separate* actions involving one or both of the

Traffic Patents since 2007.[20]

    Traffic requests transfer to the Eastern District of Texas, where it has cases pending.

Witnesses in Mountain View, California, Seattle, Washington, or Portland, Oregon, would have

to travel approximately 2000 miles, 2350 miles, and 2300 miles, respectively to the Eastern

District of Texas (Marshall), but witnesses from Mountain View and Seattle would have to travel

approximately 670 miles and 180 miles, respectively, to attend a hearing or trial in the District of

Oregon (Portland).[21]

---

[17] See Exhibit 12, Chernoff Vilhauer McClung & Stenzel LLP website
[18] Exhibit 13, Inventor Declaration and Power of Attorney for App. Serial No.
10/367,162 ('606 Patent).
[19] *Id.*, also Exhibit 14, website for Richard J. Qian obtained from http://richardqian.com/.
[20] The PACER website shows that Traffic has filed all of the Eastern District of Texas
cases separately over a period of about two years, beginning in 2007.  See *Traffic Information
Traffic Information LLC v. American Honda Motor Co. Inc.*, 2:2007cv00391 (filed 09/07/2007,
closed 03/12/2008); *Traffic Information LLC v. Alpine Electronics of America, Inc. et al*,
2:2008cv00007 (filed 01/08/2008, closed 04/15/2009); *Traffic Information LLC v. HTC USA,
Inc. et al*, 2:2008cv00404 (filed 10/20/2008); *Traffic Information LLC v. AT&T Mobility LLC et
a*l, 2:2009cv00083 (filed 03/20/2009); *Traffic Information, LLC v. Sony Electronics Inc. et al*,
2:2009cv00191 (filed 06/10/2009); *Traffic Information, LLC v. Yahoo! Inc. et al*, 1:2009cv00786
(filed 08/14/2009, closed 08/14/2009); *Traffic Information, LLC v. Yahoo! Inc. et al*,
2:2009cv00246 (filed 08/18/2009).
[21] Exhibit 15, Maps showing distances.

5-  OPPOSITION TO MOTION TO DISMISS OR
    TRANSFER

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

III.    **Argument In Support Of Jurisdiction**

A.    **Traffic Information Does Not Deny That There Is A Substantial Controversy Between The Parties, And This Court Therefore Has Subject Matter Jurisdiction**

In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764 (2007), the Supreme Court made it clear that a declaratory action is available in a patent case when the facts as alleged "'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Id.* at 127 (quoting *Md. Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

This case, where the defendant has apparently made a strategic decision to pursue Google's customers who use GMM on T-Mobile cell phones rather than Google directly, is exactly the kind of situation for which the Declaratory Judgment Act provides a remedy.  As described in *Arrowhead Indus. Water Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988):

> This appeal presents a type of the sad and saddening scenario that led to enactment of the Declaratory Judgment Act (Act), 28 U.S.C. § 2201. In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. See *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F.Supp. 219, 237, 150 USPQ 589, 601 (D.N.J.1966). Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. See E. Bor-chard, *Declaratory Judgments* 803-04 (2d ed. 1941). Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that

6-  OPPOSITION TO MOTION TO DISMISS OR TRANSFER

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

would settle the conflict of interests. The sole requirement for jurisdiction under the Act is that the conflict be real and immediate, *i.e.*, that there be a true, actual "controversy" required by the Act. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937); *Jervis B. Webb Co.*, 742 F.2d at 1398, 222 USPQ at 949.

*Id.*

Google filed this lawsuit for declaratory relief to prevent Traffic from initiating piecemeal litigation against each Google Maps business partner and, by extension, end users of GMM, beginning with T-Mobile USA and T-Mobile cell phone users, and thereby to avoid being made an explicit or implied defendant in a multitude of actions against those customers. Allowing these harms to continue "would undermine the intended purpose of the Declaratory Judgment Act." *Minnesota Min. and Mfg. Co. v. Norton Co.*, 929 F.2d 670, 675 (Fed. Cir. 1991).

### B.    Traffic's Injurious Statements To Google's Customers Are "Fairly Traceable" To Traffic

Traffic argues that Traffic's injurious statements to Google's business partner T-Mobile USA are not "fairly traceable" to Traffic and, thus, Google lacks constitutional standing for this action, because Traffic's statements to T-Mobile USA were intended by Traffic to be confidential. See, *Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 332, 119 S.Ct. 765, 774 (1999) (question is whether there is a "traceable connection" between facts forming basis for declaratory relief action and threatened harm to plaintiff); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998) (standing requires "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant").

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Traffic's analysis appears to admit that the statements are "traceable" to Traffic (as it must), focusing instead on the question of whether it is "fair" to trace the statements to Traffic. There is little doubt that Traffic has indeed made claims regarding the infringement of the Traffic Patents by GMM to T-Mobile by Traffic's own admission at page 5 of its Brief and in the Russell Declaration at ¶ 6.  Though Traffic may argue that accusations against users of GMM on T-Mobile cell phones cannot give rise to a justiciable harm to Google if whispered in the ears of Google's business partner T-Mobile USA, the Federal Circuit in *Arrowhead* has made it clear that nonpublic accusations are as harmful as those made publicly to the accused infringer:

> Ecolochem tells us, irrelevantly, that its proposed finding was "nonpublic." Nowhere, however, does Ecolochem deny that its proposed finding expressed its true belief that Arrowhead's process is an infringement. We will not assume that Ecolochem was trying to mislead the Arkansas court, nor, in view of Fed.R.Civ.P. 11, will we assume that Ecolochem had not made a thorough investigation and adduced the evidence of Arrowhead's infringement on which it necessarily rested its proposed finding.

*Arrowhead*, 846 F.2d at 735n.4.

Having filed suit against T-Mobile and accused Google's GMM product of infringing its patents, Traffic cannot now protest the fact that Google is taking those accusations seriously.

### C.    Statements Made In Settlement Can Create A Justiciable Controversy

As to the "fairness" of tracing Traffic's allegations in this fashion, there is no basis for Traffic's assertion that alleged settlement communications may not serve as the basis for a declaratory judgment lawsuit.  Traffic does not attempt to establish that its communication to T-Mobile USA was subject to a confidentiality agreement or otherwise protected from disclosure, let alone show that its e-mail contained an actual settlement demand or confidential

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

information.[22]  According to its Brief at page 5, Traffic apparently unilaterally labeled its email

as "INADMISSIBLE AND CONFIDENTIAL, FOR SETTLEMENT PURPOSES ONLY,

SUBJECT TO FRE 408."  In the absence of a confidentiality agreement between the adverse

parties, however, Traffic had no reasonable expectation that T-Mobile USA would not share with

Google the fact that Traffic was accusing GMM of infringement.

More importantly, Federal Rule of Evidence 408 is not a confidentiality provision, nor

does it provide a blanket exclusion for any and all information designated as settlement

communications.  The Federal Circuit rejected the notion that materials marked as Rule 408

communications during licensing negotiations could not be used to establish justiciability in

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007):

> To avoid the risk of a declaratory judgment action, ST could have
> sought SanDisk's agreement to the terms of a suitable
> confidentiality agreement. The record before us reflects that the
> parties did not enter into such an agreement. Rather, ST sought to
> condition its open licensing discussions and the infringement study
> on adherence to Federal Rule of Evidence 408. That rule expressly
> relates to evidence of efforts toward compromising or attempting
> to compromise a claim in litigation and does not prevent SanDisk
> from relying on the licensing discussions and infringement study to
> support its claims.

*SanDisk*, at 1375; see also, *Surefoot L.C. v. Sure Foot Corp.*, 2007 U.S. Dist. LEXIS 23525, *6

(D. Utah 2008) (citing *SanDisk* and refusing to strike statements pertaining to discussions under

Rule 408 in determining whether claims were justiciable).

The Ninth Circuit reached the same conclusion in *Dean Rhoades v. Avon Products, Inc.*,

504 F.3d 1151 (9th Cir. 2007):

---

[22] Without providing the actual text of the disputed email, Traffic cannot meet its burden
of establishing that the information contained therein is confidential or otherwise privileged from
disclosure.

9-   OPPOSITION TO MOTION TO DISMISS OR
     TRANSFER

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

The text of *[Rule 408]* is clear: evidence from settlement negotiations may not be considered in court "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Rule 408, however, does not bar such evidence when "offered for [other] purposes . . . [such as] proving a witness's bias or prejudice." See, e.g., *United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002) (holding that evidence from settlement negotiations was admissible to prove "obstruction of the EPA's investigation"); *United States v. Pend Oreille Pub. Utility Dist. No. 1*, 926 F.2d 1502, 1507 n.4 (9th Cir. 1991) (same, where the evidence was "introduced only to prove that disputed lands were suitable for agricultural use prior to construction of [a] dam"). Notwithstanding the letter's attempt to claim an absolute privilege, therefore, statements made in settlement negotiations are only excludable under the circumstances protected by the Rule.

Here, DermaNew does not rely on the threats in an attempt to prove whose trademark is valid, or to impeach Avon. Instead, it uses the threats to satisfy the jurisdictional requirements of an action for declaratory relief. n9 This is perfectly acceptable under Rule 408.

*Id.* at 1161.

Moreover, under E.D. Tex. Local Patent Rule 3-1, Traffic is required to identify for T-Mobile USA "not later than ten days before the Initial Case Management Conference with the Court":

**(b)** Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

**(c)** A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality,

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

> including for each element that such party contends is governed by
> 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or
> material(s) in the Accused Instrumentality that performs the
> claimed function;

Traffic is not permitted by the rules of the court before which its claims are pending to keep its

identification of accused products confidential.

Further, there is nothing inherently private or confidential about the matters pointed to by

Traffic. It is common for Google itself to refer to the "traffic feature" of GMM.[23] Traffic cannot

point to any aspect of the information it claims was passed on from T-Mobile USA to Google

that has even the appearance of confidentiality, except for Traffic's own self-serving

confidentiality language apparently placed on the e-mail in question without obtaining any prior

understanding from T-Mobile USA.


## IV.    Argument Opposing Transfer

### A.    Under 28 U.S.C. § 1404(a), Transfer Is Appropriate Only If the New Venue Is Clearly More Convenient

Traffic moves alternatively to transfer the case pursuant to 28 U.S.C. § 1404. The statute

provides:

> For the convenience of parties and witnesses, in the interest of
> justice, a district court may transfer any civil action to any other
> district or division where it might have been brought.

28 U.S.C. § 1404(a). The decision whether to transfer venue lies in the discretion of the district

court. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.) (under section 1404(a), "the

district court has discretion to adjudicate motions for transfer according to an individualized,

---

[23] See for example, Exhibit 16, the Google Mobile Blog dated April 7, 2008, "Better Know Your Mobile: Using My Location And Traffic Features on Google Maps." at http://googlemobile.blogspot.com/2008/04/better-know-your-mobile-using-my.html.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

case-by-case consideration of convenience and fairness.") (internal quotation omitted), *cert.*

*denied*, 531 U.S. 928 (2000).

In determining proper venue, the court considers both public and private factors. *Decker*

*Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986); *Creative Tech., Ltd.,*

*v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995).[24]

Private factors include:

> …ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; the possibility of viewing subject premises; and other factors contributing to an expeditious and inexpensive trial.
>
> . . .
>
> [Public] factors include administrative difficulties flowing from court congestion; imposition of jury duty on the people of a community unrelated to the litigation; the local interest in resolving the controversy at home; the interest in having a diversity case tried in a forum familiar with the law that governs the action; and the avoidance of unnecessary conflicts of law problems.

*Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1093, 1094 (9th Cir. 1998).

See also *Decker,* 805 F.2d at 843; *Royal Queentex Enterprises, Inc. v. Sara Lee Corp.*, No. C-99-

4787 MJJ, 2000 U.S. Dist. LEXIS 10139, at *7-8 (N.D.Cal. Mar.1, 2000).

---

[24] Ninth Circuit precedent applies to this question. See *Molins PLC v. Quigg*, 837 F.2d 1064, 1065 (Fed.Cir.1988) ("[W]e apply the law of that circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law.")  Some Ninth Circuit decisions have identified another set of specific factors to be evaluated by the court, which are largely subsumed in the *Decker* analysis, including: (1) plaintiff's choice of forum; (2) is the forum state familiar with the governing law?; (3) the contacts relating to plaintiff's cause of action in the forum; (4) the ease of access to sources of proof and the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (5) the differences in the cost of litigating in the two forums. See *Jones*, 211 F.3d at 498-99; *Krauss Craft, Inc. v. Ross Recreational Equip. Co.*, Slip Copy, 2009 WL 367521 *8 (D. Or., February 12, 2009).

12- OPPOSITION TO MOTION TO DISMISS OR TRANSFER

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### B.    Google's Choice of Forum Is Entitled to Deference

Traffic "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker.*, 805 F.2d at 843, see also *Jones*, 211 F.3d at 498-99 (plaintiff's choice of forum is a factor in section 1404(a) analysis). Contrary to Traffic's suppositions, even a non-resident's choice of forum is entitled to deference where the defendant is located in the forum state and the balance of events relevant to the case took place there. *Home Indem. Co. v. Stimson Lumber Co.*, 229 F.Supp.2d 1075, 1085-86 (D.Or., 2001), see also *Miller v. Consolidated Rail Corp.*, 196 F.R.D. 22, 25-26 (E.D.Pa.2000) (although court was not plaintiff's home forum, plaintiff and his case had "more than a superficial link" to the Pennsylvania court, in large part because the defendant's headquarters were located in Pennsylvania, and plaintiff's choice was therefore not given any reduced deference ).

Google chose the District of Oregon because it is the forum that is most convenient to Google, Traffic Information's principals, the inventors of the Traffic Patents, and the attorney who prosecuted the applications that led to the Traffic Patents in light of all the factors considered under a section 1404 analysis. Traffic's attempt to portray this choice as unrelated to the underlying facts is unavailing.

### C.    Private Factors Weigh Against Transfer.

#### 1.    Ease of Access to Sources of Proof Weighs Heavily in Favor of the District of Oregon

The relative ease of access to sources of proof strongly weighs against transfer to the Eastern District of Texas. This factor has been found to favor transfer where the documentary and physical evidence is located mainly in or closer to the transferee venue. *See In re TS Tech*, 551 F.3d 1315, 1317 (Fed. Cir. 2008). Here:

13- OPPOSITION TO MOTION TO DISMISS OR
     TRANSFER

41063-0124/LEGAL16811746.2

*Perkins Coie* LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

- The development of the accused product took place in Northern California and Washington;

- GMM is operated from Northern California and Washington;

- The "invention" at issue was likely conceived and reduced to practice in Oregon and/or Washington; and

- The patents at issue were prosecuted from Oregon.

The documents and physical evidence relevant to the underlying facts are much closer to Oregon than Texas.  As explained by the court in *Data Retrieval Technology, LLC v. Sybase, Inc.*, Slip Copy, 2009 WL 960681 (W.D.Wash. 2009):

> In addition, in patent infringement cases, it is well-recognized that the preferred forum is "that which is the center of gravity of the accused activity." *Amazon. com v. Cedant Corp.*, 404 F.Supp .2d 1256, 1260 (W.D.Wash.2005) (quoting *Ricoh Co., Ltd., v. Honeywell, Inc.*, 817 F.Supp. 473, 482, n. 17 (D.N.J.1993)). The district court "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Ricoh*, 817 F.Supp. at 482, n. 17. Additionally, a court should consider "the location of the product's development, testing, research and production." *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F.Supp.2d 1039, 1044 (S.D.Tex.2007) (citations omitted). "Also relevant is the place where the marketing and sales decisions occurred, not just the location of any particular sales activity." *Id.* (internal quotations and citation omitted).

As the party in the position of the alleged infringer, Google's relevant documents will include documents relating to the creation, development, and provision of the allegedly infringing GMM.  See *Tse v. Apple Computer, Inc.*, 2006 WL 2583608 *3 (D. Md., Aug. 31, 2006) ("The software and products alleged to violate Tse's patent were designed and produced in California, with the exception of MusicMatch's software, which was partially designed in Florida.  None of the design or production occurred in Maryland. California, then, is the 'hub of activity' in this case.").

14-  OPPOSITION TO MOTION TO DISMISS OR TRANSFER

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Google's documents are located in Northern California and Washington – significantly closer to the District of Oregon than the Eastern District of Texas. Moreover, should Google's source code be produced for inspection, access to the relevant source code is only available in Northern California or Washington.[25]  See *Tse*, 2006 WL 2583608 *2 (location of source code, technical specifications, schematics, and technical operations documentation relevant); *Fifth Generation Computer Corp. v. IBM Corp.*, No. 9:08-cv-205, 2009 U.S. Dist. LEXIS 12502, at *11-12 (E.D. Tex. Feb. 13, 2009) (finding this factor in favor of transfer where a number of documents were located in the transferee forum and none were located in the Eastern District of Texas, even though some documents may also be located in California, New Mexico, Minnesota, and the Southern District of Texas).

By contrast, Traffic's documents are likely either located in this District or just as easily accessible from Oregon as from Texas.  As Traffic does not produce any actual products or services, Traffic's relevant documents appear limited to documents relating to the prosecution of the Traffic Patents.  While Traffic maintains that its paper records are located in Bellaire, Texas (likely because of its other litigation activity), its motion is silent on whether or not relevant documents are also located in the District of Oregon.  Originals or duplicates of documents related to the prosecution of the Traffic Patents but not available in the patent's official prosecution history are just as likely to be located in Portland, Oregon, the location of the office of the attorney who prosecuted the applications leading to the Traffic Patents and the *situs* of this lawsuit.

---

[25] See Moser Decl. ¶7.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Even if the Court accepts Traffic's argument that Bellaire, Texas is the sole physical location of certain Traffic documents, this fact does not confer on the Eastern District of Texas any special status. Paper documents are routinely converted into electronic format and reviewed anywhere that a computer can be connected to the Internet.

Given that most of the relevant documents are located nearer to the District of Oregon than the Eastern District of Texas and, should Google's source code be produced, it will be made available for inspection only in California or Washington, consideration of the location of sources of proof weighs strongly against transfer.

### 2.    Availability of Compulsory Process Weighs Against Transfer

The Court should also consider the availability of compulsory process to secure the attendance of witnesses. See *Decker,* 805 F.2d at 843. Under Fed. R. Civ. P. 45(c)(3), a court may quash a subpoena that would require a non-party witness to travel more than 100 miles to testify, and a court must quash a subpoena that would require a non-party witness to travel more than 100 miles to another state. Fed. R. Civ. P. 45(c)(3)(A)(ii), (B)(iii).

Traffic does not identify a single non-party witness that resides or works within the Eastern District's absolute subpoena power. By contrast, regardless of whether they now say they would be willing to travel to Texas for trial, the non-party witnesses—Traffic's principals and inventors—have personal and business interests that are likely to put them at odds with the demands of litigation and compulsory process may therefore be needed to obtain their attendance at trial. Traffic does not deny that the two witnesses it identified, Kevin Russell and Bruce DeKock, reside in the District of Oregon and are therefore available for compulsory process to secure their attendance at trial.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Oddly, Traffic also relies upon an unspecified number of "witnesses with companies that have been sued for infringement of one or both of the patents-in-suit [who] will likely have evidence related to Google's allegation that the patents are invalid."[26]  By this reference, Traffic presumably intends to demonstrate that non-party witnesses and/or documents may be located across the United States, in an attempt to divert the Court's attention from the concentration of witnesses in and near this District.  Google would be happy to learn who these purported witnesses are, but Traffic's motion goes no further in its description of these unnamed witnesses.  Absent further specificity, this Court should not attribute any weight to Traffic's suppositions regarding witnesses from whom Google might seek discovery.

Traffic can identify no hostile third party witness residing in the Eastern District of Texas that might have useful information in this action.  The only putatively non-party witnesses identified by Traffic, Messrs. Russell and DeKock, all reside within this district.  Accordingly, this factor weighs against transfer.

### 3. The Cost of Transporting Friendly Witnesses Weighs Heavily Against Transfer

Despite Traffic's claims that Messrs. Russell and DeKock would be happy to travel to Marshall, Texas, the fact remains that they reside in this District.  Having a party-friendly witness "willing to travel" to Texas is not the same as saying Texas is less costly and more convenient, which is the appropriate inquiry.  On Google's side, the individuals who created,

---

[26] Memo at 11-12.

17- OPPOSITION TO MOTION TO DISMISS OR TRANSFER

41063-0124/LEGAL16811746.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

developed, and provide support to the GMM product are located in Northern California and Washington.[27]

Moreover, <u>Traffic's motion contains no representation that the third inventor,</u> <u>Richard Qian, is willing to travel to Marshall, Texas</u>.  It is far more likely that Mr. Qian will agree to cooperate if the action is heard in the District of Oregon than if the action were heard in the Eastern District of Texas.  See *Gemini IP Tech. v. Hewlett-Packard Co.*, No. 07-C-205-S, 2007 WL 2050983, at *2 (W.D. Wisc. July 16, 2007) (weighing convenience of non-party witnesses residing outside the subpoena power of the trial court).

The cost of transporting witnesses to the Eastern District of Texas significantly exceeds the cost of transporting them to the District of Oregon.  The nearest airport hubs for the witnesses, San Francisco, Seattle, and Portland, are all a substantial distance from Shreveport, the closest airport hub to Marshall, Texas.  Currently, air fares from San Francisco, Seattle, and Portland to Shreveport cost between $1586.01 and $2,054.[28]  Flights from San Francisco and Seattle to Portland cost in the neighborhood of $320.00.[29]  Driving from Seattle to Portland would take approximately three hours.[30]  Driving from Seattle to Marshall would take one and a half days.[31]  Compounding the airfare cost differential are the costs associated with the time it takes to travel to Marshall as opposed to Portland. Flights from San Francisco and Seattle to Marshall take between about seven to about ten

---

[27] See *Koh v. Microtek Int'l, Inc.*, 250 F.Supp.2d 627, 636 (E.D.Va.2003), ("[I]t is permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material.")
[28] See Exhibit 17, Sample Airfares to Shreveport.
[29] See Exhibit 18, Sample Airfares to Portland.
[30] See Exhibit 15, Maps.
[31] *Id.*

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

hours.[32]  Flights from San Francisco and Seattle to Portland take between one and two

hours.[33]  Clearly, it would be less costly to transport willing witnesses to Portland, Oregon

than Marshall, Texas.  Accordingly, this fact weighs heavily against transfer.

### 4.    Possibility of Viewing Subject Premises Is Neutral

The method claimed in the Traffic Patents is practiced on mobile devices.  Accordingly,

this is not a matter where the court or jury will be need to take a field trip to view any premises

and this factor is neutral.

### D.    Public Factors Weigh Against Transfer

### 1.    Court Congestion Weighs Heavily Against Transfer

As to Traffic's claim that the Eastern District of Texas' docket is, statistically, better

suited for adjudication of the merits of Google's contentions, such statistics are "relatively

meaningless in the section 1404(a) analysis."[34]  *Rabbit Tanaka Corp. USA v. Paradies*

*Shops, Inc.*, 598 F.Supp.2d 836, 841 (N.D.Ill.2009). "They consist of averages for cases of

all types and tell the reader nothing about cases of the particular type at issue. Specifically,

these statistics say nothing at all about patent infringement cases and how quickly they

proceed to trial in the two districts."  *Id.*

The Eastern District of Texas' patent "rocket docket" reputation appears to be a thing

of the past.  According to an August 18, 2008 article in *Texas Lawyer*,

> U.S. Magistrate Judge Chad Everingham of Marshall says he
> and Ward held July 29 status conferences for about 30 [patent]
> cases, the bulk of which were filed in the latter half of 2007.

---

[32] See Exhibit 17.

[33] See Exhibit 18.

[34] Even so, there is no appreciable difference between the median times from filing to disposition and from filing to trial in the two districts – the Eastern District of Texas is 9.2 months and 18.5 months, respectively and the District of Oregon is 10.4 months and 23 months, respectively.  See Exhibit 19, Judicial Caseload Profiles.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> Trial settings for those cases are in the summer of 2011,
> Everingham says.  Everingham says his best guess is that cases
> being filed now will be set for trial in late 2011 or early 2012.[35]

By comparison, when a similar argument was made in the *CollegeNET* matter to this

Court (comparing this Court's docket to the Eastern District of Virginia) this Court

dismissed the statistical inquiry, observing:

> Furthermore, while the Eastern District of Virginia may dispose of
> cases more quickly than the District of Oregon, Oregon's docket is
> relatively fast compared with other districts and the schedule set
> for this case anticipates a trial within twelve months of filing the
> case. The difference in time between the two districts is not enough
> to warrant upsetting plaintiff's choice of forum or to disregard the
> first to file rule.

*CollegeNET, Inc. v. ApplyYourself, Inc.*, 2002 WL 33962845 *5 (D. Or. July 26, 2002).

Clearly, the one year period to trial in the District of Oregon is significantly shorter than the

three to four years to trial in patent cases estimated by the very judges before whom

Traffic's Eastern District of Texas cases are currently pending.

### 2.     Transfer to the Eastern District of Texas Would Not Advance Judicial Efficiency

Finally, Traffic argues that the Eastern District of Texas' accumulated knowledge of the

patents and parties in the other pending cases creates a judicial efficiency requiring this Court to

give up the matter.  This analysis ignores the fact, however, that these various lawsuits involve

separate and unrelated parties and, other than one of several allegedly infringing products

distributed by T-Mobile, separate and unrelated products.  See *Boston Scientific Corp. v.*

*Johnson & Johnson Inc.*, 532 F.Supp.2d 648, 655 (D. Del. 2008) ("BSC is not a party to the New

Jersey litigation, although the same product and same patents are involved in both suits");

---

[35] Exhibit 20, M. Robbins, *Eastern District Rocket Docket Decelerates in Marshall Division*, Texas Lawyer, August 18, 2008.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Warner v. Stryker Corp.*, Slip Copy, 2009 WL 1773170 *1 (D. Or., June 22, 2009) (common

theory of liability does not render plaintiffs' claims "arising out of" the same transaction,

occurrence or series of transactions).  Thus, the central issue of a patent case – whether the

specific accused product infringes the identified claims of a valid enforceable patent – is likely to

be unique with regard to each of the lawsuits.  Indeed, in view of the expected differences among

parties and accused products, consolidation of issues for trial may well prove to be judicially

inefficient and confusing to the fact finder, as was noted in *Pergo, Inc. v. Alloc, Inc.*, 262

F.Supp.2d 122, 133 (S.D.N.Y. 2003):

> Pergo's main argument is that the transfer of the actions from
> this Court would result in the possibility of inconsistent
> judgments.…Pergo's apprehension is misplaced, given that the
> products alleged to have been infringing are not the same and
> the two sets of defendants are unrelated. … Without ever
> raising any concerns about the potential for inconsistent
> judgments, courts consistently deny the joinder of unrelated
> parties into one action, even where the infringement of the
> same patent is alleged, and thereby allow for the actions against
> those defendants to proceed separately. See, e.g., *Androphy*, 31
> F.Supp.2d at 623; *New Jersey Machine*, 1991 WL 340196, at
> *1-*2.

See also *Nice Systems, Inc. v. Witness Systems, Inc.*, 2006 WL 2946179, *3 (D.Del. October

12, 2006) (despite "some overlap of parties, products, and technologies" transfer not

warranted where actions were at various stages of litigation); *Micron Technology, Inc. v.

Mosaid Technologies, Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) (noting that competing

infringement case was "broader in some regards" and "narrower" in others and, thus, of limited

relevance to analysis of section 1404(a) analysis).

  The Court issued a Scheduling Order in this case.  By contrast, no Scheduling Order has

issued in the non-Google Eastern District of Texas cases.  Given the backlog in that court, it is

21- OPPOSITION TO MOTION TO DISMISS OR
    TRANSFER

41063-0124/LEGAL16811746.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

likely that this matter would resolve all issues related to GMM prior to the Eastern District of

Texas.  See *Boston Scientific*, 532 F.Supp.2d at 655.  As GMM is only one aspect of the

allegations currently made in those matters, earlier resolution would streamline issues before the

Eastern District of Texas.  Moreover, it is entirely speculative as to whether the Eastern District

would consolidate the various actions.  The Eastern District of Texas is just as likely to sever and

transfer Traffic's claims related to GMM to this district.

### 3.    Imposition of Jury Duty on Community Unrelated to Litigation Weighs Against Transfer

The Eastern District of Texas has no special connection to this case because the

Defendants' alleged infringement is not unique to this venue.  *TS Tech*, 551 F.3d at 1321

("[T]he vehicles containing TS Tech's allegedly infringing headrest assemblies were sold

throughout the United States, and thus the citizens of the Eastern District of Texas have no

more or less of a meaningful connection to this case than any other venue).

Traffic's attempt to portray its litigation efforts in Marshall, Texas as "substantial

contacts" by Google with that forum is circular reasoning at its finest.[36]  Traffic also

assumes that because its accusation that Google's GMM allegedly infringes the Traffic

Patents was made in connection with the T-Mobile Litigation, such "action" constitutes

"substantial contact" with the Eastern District of Texas.  Because Google and T-Mobile

USA are based in Northern California and Washington, no communication of Traffic's

infringement accusations relating to GMM took place in the Eastern District of Texas.  All

relevant actions would have taken place in the Pacific Northwest.

---

[36] The fact that Google has been sued, against its will, in the Eastern District of Texas is completely irrelevant.  See *Gemini*, 2007 WL 2050983 *2 ("A corporation does not forfeit its right to claim greater convenience in another forum because it is large or because it has litigated there in the past.")

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

As discussed above, the District of Oregon is also closer to the locus of the alleged infringement than the Eastern District of Texas.  See *The Whistler Group, Inc. v. PNI Corp.*, No. 03-1536, 2003 WL 22939214, at *4 (N.D. Tex. Dec. 5, 2003) ("In a patent infringement action, the preferred forum is that which is the center of gravity of the accused activity . . . In finding that center of gravity, a district court should consider the location of a product's development, testing, research, and production"); *Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 609 (E.D. La. 2000) ("A fundamental principle guiding the Court's [transfer] analysis is that litigation should proceed in that place where the case find its center of gravity . . . Relevant considerations in determining the center of gravity in a given case include the location of a product's development, testing, research, and production, and the place where marketing and sales decisions were made.") (internal quotation marks omitted).

With respect to Traffic's contacts with the transferee forum, Traffic has failed to identify any actual business it does in the Eastern District of Texas other than the business of filing lawsuits.  Where a plaintiff attempts to manufacture venue, courts routinely transfer the case. See, *e.g.*, *Surfer Internet Broad. of Miss., LLC v. XM Satellite Radio Inc.*, No. 4:07-cv-034, 2008 WL 1868426, at *1 (N.D. Miss. Apr. 24, 2008); *Gemini IP Tech.*, 2007 WL 2050983 *; *Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, 79 U.S.P.Q. 2d 1603 (C.D. Cal. 2006).  As the *Gemini IP Tech.* court stated, "there is nothing to suggest that Wisconsin is a convenient forum for the plaintiff in the sense of § 1404(a). The only apparent connection between plaintiff and Wisconsin is that it was organized here for purposes of establishing venue. There is no suggestion that it has employees or officers in

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Wisconsin or that anyone likely to give relevant testimony resides here." *Gemini IP Tech.*, 2007 WL 2050983, at *1. By contrast, the majority of the inventors of the Traffic Patents and of Traffic's principals have resided in the District of Oregon at least since the time the patent was filed and prosecuted. Therefore, this forum has a far more meaningful connection to the underlying issues in this litigation.

From a pure burden standpoint, it is also less onerous to expect jurors in the District of Oregon to hear this case than jurors in the Eastern District of Texas. The estimated population of the Eastern District of Texas is 2.9 million people.[37] The approximate population of the District of Oregon is 3.8 million.[38] Taking into account that the Eastern District of Texas completed 24 trials in 2008 compared to the 16 trials completed during the same period in this District, the burden on the jury pool would clearly be greater in the Eastern District of Texas.

Accordingly, trial in the Eastern District of Texas, a venue without a unique connection to this case, would place an undue burden on a smaller jury pool already hearing a greater number of cases.

### 4. Local Interest Weighs Against Transfer

As noted previously, the *situs* of facts underlying the alleged invention and the residence of the inventors and Traffic's principals create a greater local interest in the District of Oregon – compared with no such interest in the Eastern District of Texas. Accordingly, this factor weighs against transfer.

---

[37] See Exhibit 21, E.D. Tex. U.S. Attorney Information ("According to the 2000 U.S. Census figures, over 2.9 million people make their homes in the Eastern District of Texas.).

[38] See Exhibit 22, Quick Facts from U.S. Census Bureau (population of Oregon is 3,790,060).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

5.    **Familiarity with Governing Law and Avoidance of Conflicts of Law Are Neutral Factors.**

Given that this dispute concerns federal patent law, familiarity with governing law and the potential for conflicts of law are neutral factors in the transfer analysis. See *Vestas-American Wind, Technology, Inc. v. Beaird Co., Ltd.*, 2008 WL 4164551 *10 (D.Or., September 03, 2008) ("Neither conflicts of law nor the law of the home state are likely to play a part in this federal patent case.").

E.    **At the Most, Transfer to the Eastern District of Texas Only Shifts Convenience**

The location of Traffic's principals and the inventors in the District of Oregon, coupled with Google's witnesses and documents being significantly closer to the District of Oregon, undermine Traffic's argument that the Eastern District of Texas is "convenient."  At best, Traffic argues only that the Eastern District of Texas is more convenient for Traffic and it seeks to shift the convenience of the plaintiff Google to the defendant Traffic on that basis.  In evaluating a similar request in another patent matter, this Court observed:

> At best, ApplyYourself has shown nothing more than a shifting of inconvenience for evidence or witnesses, which is insufficient to support a change of venue. See *Harrison v. International Ass'n of Machinists & Aerospace Workers*, 807 F. Supp. 1513, 1517 (D. Or. 1992) (plaintiff's choice of forum controls when transfer only serves to shift the burden of inconvenience).

*CollegeNET, Inc.,* 2002 WL 33962845 *4.

F.    **Overall, the "Interest of Justice" Weighs Against Transfer.**

1.    **The "Interest of Justice" Is Not Limited to Whether Related Cases Exist in the Transferee Forum.**

Traffic leans heavily on language in cases discussing the importance of the "interest of justice" consideration.  In doing so, Traffic conflates the interest of justice with judicial

25- OPPOSITION TO MOTION TO DISMISS OR TRANSFER

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

efficiencies gained by hearing cases involving the same patents in the same courts and ignores all other considerations necessary to an examination of the "interests of justice."  However, "[t][he *a priori* premise that two related cases are best tried together does not necessarily mean *a posteriori* that two such cases should be combined *anywhere*.  Duplicative litigation, though regrettable, is in some situations unavoidable."  *Delphi Corp. v. Automotive Technologies Int'l., Inc.*, 2008 WL 294116 *6 (E.D. Mich. July 25, 2008).

A number of courts have denied transfer when the balance of other factors weighs in favor of the forum in which the allegedly "related" cases are not pending.

> The pendency of related litigation in another forum is a proper factor to be considered in resolving choice of venue questions, see, e. g.*, Firmani v. Clarke*, D.Del., 1971, 325 F.Supp. 689; *Thomson & McKinnon v. Minyard*, S.D.N.Y., 1968, 291 F.Supp. 573, and may have been decisive in a number of cases **where the convenience factors were inconclusive**, see, e. g., *Pesin v. Goldman, Sachs & Co.*, S.D.N.Y., 1975, 397 F.Supp. 392; *Medtronic, Inc. v. American Optical Corp.*, D.Minn., 1971, 337 F.Supp. 490; *Maxlow v. Leighton*, E.D.Pa., 1971, 325 F.Supp. 913. **However, we have found no case where it has carried the day against factors pointing in the other direction.**

*Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 739 (1st Cir. Mass. 1977) [emphasis added].  The Eastern District of Texas has explained that, while transfer may be appropriate if significant work has been done by the court in the transferee venue, when the court has had limited involvement in the case and the overlap between the cases is limited, transfer will only produce "minimal gains in judicial efficiency."  See *J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008).  Here, neither court has invested significant time and only this Court has issued a Scheduling Order.  See *Invitrogen Corp. v. Incyte Genomics, Inc.* 2002 WL 883963 *3 (D.Del. May 1, 2002) ("Although this case

involves the same patents as those under consideration in Maryland, the record does not reflect that the Maryland cases are close to trial or resolution.").  Furthermore, as previously discussed, it is entirely speculative as to whether the Eastern District would coordinate discovery, claim construction hearings and trials in the four non-Google infringement actions currently pending in order to yield the supposed efficiencies outlined in Traffic's motion.

The cases relied upon by Traffic are inapposite to the facts of this particular case.  Traffic errs in relying upon *Allen v. Scribner*, 812 F.2d 426, 436-37 (9th Cir. 1987) for the proposition that the "interest of justice" compels transfer to the Eastern District of Texas.  In *Allen*, the defendant waited three and a half years before seeking transfer.  *Id.*  Moreover, despite the defendant's argument to the contrary, the *Allen* court found that the bulk of the cause of action had taken place in the transferor forum.  *Id.*  The interest of justice was not "alone determinative."[39]  *Id.*  Accordingly, the Ninth Circuit upheld the district court's <u>refusal</u> to transfer the case.  *Id.*  Here, neither this case nor Traffic's cases in the Eastern District of Texas have been pending for a significant period of time.  Given the likely prospect of delay should this case be transferred to the Eastern District of Texas, the "interest of justice" cautions <u>against</u> transfer.

Traffic cites to *United States ex rel. Swan v. Covenant Care, Inc.*, 1999 U.S. Dist. LEXIS 15287 at *5 (N.D. Cal. 1999) for the proposition that "one factor that may outweigh all the others is the interest of justice" – even though the *Swan* court determined that none of the convenience factors supported keeping the case in the Northern District of California.  As in *Swan*, the outcome of weighing the relevant factors here is obvious – the District of Oregon is the most convenient forum and best serves the interest of justice.

---

[39] Memo at 7.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### 2.    Transfer to the Eastern District of Texas Would Reward Traffic's Forum Shopping and Indirect Pursuit of Google's Business Partners

Traffic has not commenced an action against Google in any other forum.  See

*Birmingham Fire Ins. Co. v. UP North Plastics, Inc.*, 2004 WL 838169 (D. Minn. April 19,

2004) ("Although the issues in this Court and in the Texas court may overlap…Birmingham Fire

is not a named party in the Texas action.").  Traffic's logic would improperly allow Traffic to file

one case in a place of its choosing and thereby preempt any other accused infringer from

commencing an action against it on similar issues elsewhere.[40]  This strategy defeats the heavy

presumption given in the Ninth Circuit to the appropriateness of a plaintiff's choice of venue, as

pointed out in *Stomp, Inc. v. NeatO*, LLC, 61 F.Supp.2d 1074, 1082 (C.D.Cal. 1999)

("transferring the case to the District of Connecticut because NeatO has filed other patent

infringement actions there would allow Defendant to avoid the requirements of the "first-to-file"

rule by suing multiple parties in separate actions.").

Traffic's argument that its lawsuits against T-Mobile USA and other non-Google entities

mandate transfer to the Eastern District of Texas also undermines the objectives of the

Declaratory Judgment Act.  "[L]itigation against or brought by the manufacturer of infringing

goods takes precedence over a suit by the patent owner against customers of the manufacturer."

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  As stated in *Codex*, 553 F.2d at

737-38:

> At the root of the preference for a manufacturer's declaratory
> judgment action is the recognition that, in reality, the manufacturer
> is the true defendant in the customer suit….it is a simple fact of life

---

[40] Of the four Traffic cases currently pending in the Eastern District of Texas, two were filed after Google filed the present lawsuit.  See *supra* n.20.  See *Borgwarner, Inc. v. Hilite Int'l, Inc.*, 2008 WL3849908 (N.D. Ill. Aug. 14, 2008) (transfer on basis of later-filed claims "would reward [defendant] for what is basically forum shopping).

28- OPPOSITION TO MOTION TO DISMISS OR TRANSFER

41063-0124/LEGAL16811746.2

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.

*Id.* (citations omitted).

Permitting transfer solely on the basis of lawsuits against Google's or anyone else's customers would allow Traffic to "bootstrap" Google into a clearly inconvenient forum.

> Nor are we fully convinced of the propriety of using another customer suit of another manufacturer, which, incidentally, may have very different collateral issues, as a magnet to draw a suit to a jurisdiction where it otherwise should not be. This would mean that if a patentee brings enough suits in what, in all respects, other than its personal hope of a favorable outcome, is an unnatural and inconvenient forum from the standpoint of trial, it can bootstrap itself into staying there.

*Codex*, 553 F.2d at 739.

Given that the purpose of the Declaratory Judgment Act is to permit the party who actually created the allegedly infringing product or service to resolve the sort of uncertainty raised by Traffic's multiple lawsuits against distributors and end users, transfer would undermine the objectives of the Declaratory Judgment Act by limiting Google's choice of forum. – a limitation that is not set forth in the Act itself. See *Arrowhead*, 846 F.2d 734-35; *Delphi*, 2008 WL 2941116 at *6 ("analysis of the customer-suit exception advises against transferring this case to Texas").

Transfer to the Eastern District of Texas defeats Google's superior right to defend allegations that GMM infringes the Traffic Patents in this District.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## V.    Conclusion

It is beyond dispute that Traffic alleged that the Google GMM product infringes the Traffic Patents when used on a T-Mobile phone, and that Traffic's assertion of that inaccurate claim at least to one Google customer injured Google in a way that gives this Court jurisdiction to hear the declaratory judgment action presented to it.  Traffic's request for transfer seeks only to shift burdens in this matter, not to increase judicial efficiency or accommodate the location of key witnesses.  This Court should deny the motion, according proper weight to plaintiff Google's choice of the District of Oregon as the appropriate venue for this action.

DATED:  August 28, 2009

Respectfully submitted,

/s/ Julia E. Markley
Julia E. Markley, OSB No. 000791
JMarkley@perkinscoie.com
**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiff

Thomas H. Shunk (Ohio Bar No. 0025793)
Christina J. Moser (Ohio Bar No. 0074817)
**Baker & Hostetler LLP**
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio  44114-3485
Telephone: 216.621.0200
Facsimile: 216.696.0740

(admitted *pro hac vice*)

30-  OPPOSITION TO MOTION TO DISMISS OR
TRANSFER

41063-0124/LEGAL16811746.2

*Perkins Coie* LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222