IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

```
GOOGLE, INC., a Delaware        )
corporation,                    )
                                )
        Plaintiff,               )
                                )
    vs.                          )
                                )   Case No. CV09-642-HU
TRAFFIC INFORMATION, LLC, a Texas )   FINDINGS AND
corporation,                    )   RECOMMENDATION
                                )
        Defendant.               )
_____)
```

Julia Markley
Perkins Coie
1120 N.W. Couch Street, Tenth Floor
Portland, Oregon 97209

Thomas H. Shunk
Christina J. Moser
Baker & Hostetler
1900 E. Ninth Street, Suite 3200
Cleveland, Ohio 44114
    Attorneys for plaintiff

Robert A. Schlachter
Timothy S. DeJong
Stoll Stoll Berne Lokting & Schlachter
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204

C. Dale Quisenberry
John T. Polasek
Jeffrfey S. David

FINDINGS AND RECOMMENDATION Page 1

Polasek, Quisenberry & Errington
6750 West Loop South, Suite 920
Ballaire, Texas 77401
    Attorneys for defendant

HUBEL, Magistrate Judge:

    This is an action brought by Google, Inc. (Google) against Traffic Information, Inc. (Traffic), seeking a declaration of noninfringement or patent invalidity of two patents owned by Traffic (the '862 Patent and the '606 Patent, collectively the Traffic Patents). Google alleges that in the course of patent litigation against T-Mobile and other defendants, Traffic has asserted that Google Maps infringes the Traffic Patents. Google alleges that it has an objectively reasonable apprehension[1] that Traffic will bring a patent infringement action asserting that Google's Maps traffic feature infringes the Traffic Patents.

    Traffic moves to dismiss for lack of subject matter jurisdiction or, alternatively, to transfer the case to the Eastern District of Texas, where Traffic has filed several other actions claiming infringement of the Traffic Patents.

## Factual Background

    This action was triggered after Traffic told Google's business partner, T-Mobile, that Google's software product, Google Maps for Mobile (GMM) infringes the Traffic Patents when used on a T-Mobile

---

[1] In <u>MedImmune v. Genentech Inc.</u>, 549 U.S. 118 (2007), the Supreme Court rejected the "reasonable apprehension of suit" prong of a two-part test for jurisdiction under the Declaratory Judgment Act in patent cases that had been applied in the Federal Circuit. <u>Sandisk v. STMicroelectronics, Inc.</u>, 480 F.3d 1372, 1379 (Fed. Cir. 2007).

FINDINGS AND RECOMMENDATION Page 2

cell phone. At the time, Traffic and T-Mobile were engaged in litigating a patent infringement case brought by Traffic against T-Mobile in the Eastern District of Texas. The assertion was made in an e-mail to T-Mobile's attorney that Traffic marked "confidential" and "for settlement purposes only, subject to FRE 408." T-Mobile disclosed the contents of the e-mail to Google. Traffic asserts that it did not consent to any disclosure of this communication, and that T-Mobile never told Traffic it was going to, or had, made the disclosure to Google.

## Standard

In an action brought under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), the standard for determining whether the action is justiciable is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. MedImmune, 549 U.S. at 127. In SanDisk, the Federal Circuit concluded, in light of the MedImmune decision rejecting the "reasonable apprehension of suit" test, that "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." 480 F.3d at 1381. In Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330, 1339 (Fed. Cir. 2007), the Federal Circuit held that an actual controversy, in the context of the Declaratory Judgment Act,

FINDINGS AND RECOMMENDATION Page 3

requires only that a dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts."(Quoting Medimmune, 549 U.S. at 127).

**Discussion**

1. Motion to dismiss

Traffic asserts that a "confidential" communication between Traffic and T-Mobile fails to satisfy the "definite and concrete" requirement of justiciability, arguing that Google's allegation in the complaint of "reasonable apprehension" has to be grounded on some act by Traffic directed at Google. Traffic cites SanDisk, 480 F.3d at 1380-81 ("jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee.") Traffic argues that in this case, Google's apprehension of suit was caused by T-Mobile's disclosure of information Traffic considered confidential, not by any affirmative act by Traffic, and therefore that Google's apprehension is not "fairly traceable" to Traffic. Traffic cites Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1335 (Fed. Cir. 2008)(case or controversy must be based on injury that is "caused by the defendants"). See also Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 332 (1999)("traceable connection" between facts forming basis for declaratory relief and threatened harm to plaintiff).

///

FINDINGS AND RECOMMENDATION Page 4

Google counters that Traffic has made a strategic decision to sue Google's customers who use GMM on T-Mobile cell phones, rather than confront Google directly, and that Google filed this action to prevent Traffic from initiating piecemeal litigation in Texas against each GMM business partner.

Google points out that Traffic does not deny its claim against T-Mobile that GMM infringes the Traffic Patents, and does not deny that the claim is "traceable" to Traffic. In response to Traffic's assertion that there is no justiciable harm to Google merely because Traffic "whisper[s] in the ears of Google's business partner," Google cites the court to Arrowhead Indus. Water Inc. v. Ecolochem, Inc., 846 F.2d 731, 735 n. 4 (Fed. Cir. 1988)(fact that a statement was "nonpublic" is irrelevant when patent holder does not deny its belief that defendant was infringer).

Google argues that there is no unfairness to Traffic in using the e-mail as a basis for a declaratory judgment lawsuit, because the e-mail was unilaterally labeled as confidential by Traffic, and there is no confidentiality agreement between Traffic and T-Mobile. Google contends that Rule 408 of the Federal Rules of Civil Procedure is not a confidentiality provision and does not provide a blanket exclusion of any use of information designated as a settlement communication. Google relies on the SanDisk rejection of the argument that materials marked as Rule 408 communications during licensing negotiations could not be used to establish justiciability:

> To avoid the risk of a declaratory judgment action, [defendant] could have sought [plaintiff's] agreement to the

FINDINGS AND RECOMMENDATION Page 5

1
2
3
4
5
>    terms of a suitable confidentiality agreement. The record
>    before us reflects that the parties did not enter into such an
>    agreement. Rather, [defendant] sought to condition its open
>    licensing discussions and the infringement study on adherence
>    to [Rule] 408. That rule expressly relates to evidence of
>    efforts toward compromising or attempting to compromise a
>    claim in litigation and does not prevent [plaintiff] from
>    relying on the licensing discussions and infringement study to
>    support its claims.

480 F.3d at 1375. Google points out that Rule 408 provides for the confidentiality of settlement negotiations "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction," but does not bar such evidence when "offered for [other] purposes ... [such as] proving a witness's bias or prejudice." Google argues that using the e-mail to establish a threat sufficient to satisfy the jurisdictional requirements for declaratory relief is "perfectly acceptable under Rule 408," quoting Dean Rhoades v. Avon Products, Inc., 504 F.3d 1151, 1161 (9th Cir. 2007).

In reply, Traffic argues that SanDisk supports Traffic's motion because the Federal Circuit held in that case that the risk of a declaratory judgment action could be avoided through a confidentiality agreement. 480 F.3d at 1375 n. 1. I do not find this argument persuasive because the record in this case contains no evidence even of an implied confidentiality agreement between T-Mobile and Traffic. There is nothing inherently confidential about a statement accusing a third party's product of patent infringement. Traffic should reasonably have anticipated--and perhaps even intended--that its claim of infringement by Google's product would

FINDINGS AND RECOMMENDATION Page 6

be communicated to Google--how better for T-Mobile to refute Traffic's infringement claim than by seeking Google's help in explaining GMM? The communication was an affirmative act fairly traceable to Traffic; the fact that the email was marked "confidential" does not affect the justiciability analysis.

Traffic acknowledges that it has recently filed a large number of actions alleging infringement of the Traffic Patents. According to the Declaration of Kevin Russell, one of the lawyers for Traffic, five patent actions have been filed by Traffic in the Eastern District of Texas, Marshall Division, for infringement of one or both of the Traffic Patents, three of which are still pending: <u>Traffic Information, LLC v. American Honda Motor Co. et al.</u>, 07-391-TJW (closed); <u>Traffic Information, LLC v. Alpine Electronics of America, Inc. et al.</u>, 08-7-TJW-CE (closed); <u>Traffic Information, LLC v. AT & T Mobility LLC et al.</u> 09-83-TJW-CE (pending), <u>Traffic Information LLC v. HTC USA, Inc. et al.</u>, 08-404-TJW (pending); and <u>Traffic Information LLC v. Sony Electronics Inc. et al.</u> 09-191-TJW-CE. See Russell Declaration ¶ 3.

The test for justiciability, as articulated by the Federal Circuit in <u>SanDisk</u> and <u>Teva</u>, is that the patentee take a position that puts the alleged infringer in the dilemma of risking a lawsuit or abandoning its product, and that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests," and that it be "real and substantial and admi[t] of specific relief through a decree of a conclusive character." All these requirements are met here. When the statement made to T-Mobile

FINDINGS AND RECOMMENDATION Page 7

about GMM is put in the context of Traffic's aggressive patent enforcement in Texas, it becomes a "definite and concrete" action that touches upon the legal relations of parties--Google and Traffic-- having adverse legal interests, and a declaration of infringement or noninfringement would not be an opinion "advising what the law would be upon a hypothetical set of facts."

I recommend that the motion to dismiss be denied.

2.   <u>Traffic's alternative motion to transfer</u>

Pursuant to 28 U.S.C. § 1404, courts have discretion to transfer an action when another venue would serve the convenience of the parties and witnesses and the interests of justice. <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498 (9th Cir. 2000). The statute requires that the proposed transferee district be one where the action "might have been brought," and that the transfer be for the "convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The parties do not dispute that this action might have been brought in the Eastern District of Texas. The question to be considered, therefore, is whether a transfer would serve the convenience of parties and witnesses and be in the interest of justice.

When deciding whether to transfer a case, the court must "balance the preference accorded the plaintiff's choice of forum with the burden of litigating in an inconvenient forum." <u>Gherebi v. Bush</u>, 352 F.3d 1278, 1302 (9th Cir. 2003). The defendant must "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." <u>Id.</u> See also <u>Telephone Management</u>

FINDINGS AND RECOMMENDATION Page 8

1  Corp. v. The Goodyear Tire & Rubber Co., 5 F. Supp. 2d 896 (D. Or.
2  1998).
3      The court must consider both private and public interest
4  factors affecting the convenience of the forum. Private factors
5  include the relative ease of access to sources of proof,
6  availability of compulsory process for attendance of unwilling
7  witnesses, the cost of obtaining attendance of willing witnesses,
8  the possibility of a premises view, and "all other practical
9  problems that make the trial of a case easy, expeditious and
10 inexpensive." Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1947). Public
11 factors include the administrative difficulties arising from court
12 congestion, the interest in having localized controversies decided
13 locally, the court's familiarity with the applicable law, avoidance
14 of unnecessary conflict of law problems, and the unfairness of
15 burdening citizens in an unrelated forum with jury duty. Piper
16 Aircraft Co. v. Reyno, 454 U.S. 235, 241 n. 6 (1981).
17     Traffic argues that the decisive factor is the presence in the
18 Eastern District of Texas of several other lawsuits involving the
19 Traffic Patents. Traffic's argument is that 1) the "interest of
20 justice" factor can outweigh all the others in some circumstances,
21 citing United States ex rel. Swan v. Covenant Care, Inc., 1999 WL
22 760610 (N.D. Cal. Sept. 21, 1999); 2) the Eastern District of Texas
23 is already familiar with the patents at issue, citing Allen v.
24 Scribner, 812 F.2d 426, 436-37 (9th Cir. 1987)(affirming *denial* of
25 motion to transfer in view of court's "familiarity with the case
26 after three and one half years"); and therefore 3) the existence of
27
28 FINDINGS AND RECOMMENDATION Page 9

the other actions in Texas should be the "paramount consideration," citing In re Volkswagen of Am., Inc., 566 F.3d 1349, 1351 (Fed. Cir. 2009)("existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice").

Traffic contends that other factors listed in § 1404(a) also favor transfer; judicial economy is served by trying the case in a court already familiar with the issues, and with a less congested docket than the District of Oregon, and the convenience of witnesses and parties is served because Traffic is a Texas company conducting its primary business in Marshall, Texas, and Google has litigated other patent cases in the Eastern District of Texas.[2] Traffic acknowledges that ordinarily, courts give "great weight" to a plaintiff's choice of forum, but argues that in this instance, Google's choice is entitled only to minimal weight because of the extent of Traffic and Google's contacts with the Eastern District of Texas. Traffic cites Inherent.com v. Martindale-Hubbell, Lexis/Nexis Inc., 420 F. Supp.2d 1093, 1100 (N.D. Cal. 2006)("the degree to which courts defer to the plaintiff's chosen venue is substantially reduced when the plaintiff's choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint.") Traffic notes that Google does not have its headquarters in Oregon, and that the only connection to the District of Oregon is the presence of two

---

[2] See Marshall Declaration Exhibit 3 (listing 53 cases in the Eastern District of Texas in which Google is or has been a party between 2003 and 2009).

FINDINGS AND RECOMMENDATION Page 10

inventors of the Traffic Patents in Oregon. Traffic gives the latter circumstance little weight because the action is not against the inventors personally. And finally, Traffic argues that litigation costs will be lower if the case is transferred because only one court will construe the terms of the patents. Traffic also points out that relative congestion of this court and the Eastern District of Texas supports transfer, citing statistics showing lower caseloads per judge in Texas and an average of six months longer getting to trial in Oregon.

Google argues that its choice of forum is entitled to deference, despite being a non-resident of Oregon, when the defendant is located in the forum state and most of the events relevant to the case took place there. Google cites <u>Home Indem. Co. v. Stimson Lumber Co.</u>, 229 F. Supp.2d 1075, 1085-86 (D. Or. 2001). Google asserts that the District of Oregon was chosen because it is the forum most convenient to Google, and also to Traffic's principals, who are the inventors of the Traffic Patents, and the attorney who prosecuted the applications for the Traffic Patents.

Google asserts that private factors also weigh against transfer, because 1) development of Google's accused product, GMM, took place in Northern California and Washington; 2) GMM is operated from Northern California and Washington; 3) inventors of the Traffic Patents reside in Oregon and the invention that became the Traffic Patents was likely conceived and reduced to practice in Oregon and/or Washington; and 4) the Traffic Patents were prosecuted from Oregon.

FINDINGS AND RECOMMENDATION Page 11

Consequently, Google argues, the documents and physical evidence relevant to both GMM and the Traffic Patents are much closer to Oregon than to Texas. Google cites a Western District of Washington case:

> [I]n patent infringement cases, it is well-recognized that the preferred forum is "that which is the center of gravity of the accused activity." Amazon.com v. Cedant Corp., 404 F. Supp.2d 1256, 1260 (W.D. Wash. 2005)... The district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production. [internal quotation and citation omitted] Additionally, a court should consider the location of the product's development, testing, research and production. [internal quotation and citation omitted] Also relevant is the place where the marketing and sales decisions occurred, not just the location of any particular sales activity.

Data Retrieval Technology, LLC v. Sybase, Inc., 2009 WL 960681 (W.D. Wash. April 8, 2009) at *3.

Google asserts that Oregon is the "hub of activity" because its own documents relating to the development of GMM are located in Northern California and Washington, and access to Google's source code is only available in Northern California or Washington, citing Tse v. Apple Computer, Inc., 2006 WL 2583608 at *3 (hub of activity is where accused software and products were designed and produced; location of source code, technical specifications, schematics, and technical operations documentation also relevant to hub of activity). Google points out that the documentation relating to the Traffic Patents is likely located in this District because the attorney who prosecuted the applications leading to the Traffic Patents is located in Portland.

Google argues that the availability of compulsory process also favors this forum, Traffic does not deny that two witnesses it has

FINDINGS AND RECOMMENDATION Page 12

identified, inventors and principals Kevin Russell and Bruce DeKock, reside in Oregon.[3] On Google's side, the individuals who created, developed and support the GMM product are located in Northern California and Washington. Google contends that Traffic has not identified a single non-party witness residing or working within the Eastern District of Texas's subpoena power.

Google argues that despite Traffic's representation that Russell and DeKock would be "willing" to travel to the Eastern District of Texas, it has not represented that a third inventor of the Traffic Patents, Qian, would also be willing.

Google dismisses Traffic's argument that the Eastern District docket is less congested:

> [W]hile the Eastern District of Virginia may dispose of cases more quickly than the District of Oregon, Oregon's docket is relatively fast compared with other districts and the schedule set for this case anticipates a trial within twelve months of filing the case. The difference in time between the two districts is not enough to warrant upsetting plaintiff's choice of forum or to disregard the first to file rule.

CollegeNET, Inc. v. Apply Yourself, Inc., 2002 WL 33962845 at *5 (D. Or. July 26, 2002). Google points out that the court has issued a scheduling order in this case, while no scheduling order has issued in the non-Google Eastern District of Texas cases. [4]

And finally, Google disputes Traffic's contention that the Eastern District's accumulated knowledge of the patents at issue and

---

[3] The residence of a third inventor, Richard Qian, is not revealed in the record before the court.

[4] I note that the Eastern District of Texas has seven district judges, no active senior district judges, and seven magistrate judges. The District of Oregon has six district judges, four active senior judges, and six magistrate judges.

FINDINGS AND RECOMMENDATION Page 13

the parties in the other pending cases generates enough judicial efficiency to require the court to transfer, arguing that Traffic's analysis ignores the fact that these various lawsuits involve separate and unrelated parties, and, other than one of several allegedly infringing products distributed by T-Mobile, products that are separate from and unrelated to the product accused in this case. Google argues that the central issue--whether the accused product is infringing Traffic's patents--is likely to be unique with regard to each of the lawsuits.

    I recommend that Traffic's motion to transfer this case to the Eastern District of Texas be denied. Because at least two of the Traffic Patents' inventors and Traffic principals are situated in Oregon, the attorney who prosecuted the Traffic Patents is in Oregon, GMM is operated from Northern California and Washington, and relevant source code for GMM is available in Northern California or Washington, I am persuaded that this court is closer to the milieu of GMM, the allegedly infringing device, and to the activity centered around the production of both GMM and the Traffic Patents, than the Eastern District of Texas. I am not persuaded that the presence of other patent litigation initiated by Traffic in the Eastern District of Texas, or Google's presence as a party in other cases in the Eastern District of Texas, trumps Google's effort to locate this case in a district closer to the hub of activity pertinent to this case and to key witnesses.

///

///

FINDINGS AND RECOMMENDATION Page 14

**Conclusion**

I recommend that Traffic's motion to dismiss and the alternative motion to transfer to the Eastern District of Texas (doc. # 8) be DENIED.

**Scheduling Order**

These Findings and Recommendation will be referred to a district judge. Objections, if any, are due February 22, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due March 11, 2010. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 2nd day of February, 2010.

/S/ Dennis James Hubel

Dennis James Hubel
United States Magistrate Judge

FINDINGS AND RECOMMENDATION Page 15