**Julia E. Markley**, OSB No. 000791
JMarkley@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

**Thomas H. Shunk** (Ohio Bar No. 0025793)
TShunk@bakerlaw.com
(admitted *pro hac vice*)
**Christina J. Moser** (Ohio Bar No. 0074817)
cmoser@bakerlaw.com
(admitted *pro hac vice*)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio  44114-3485
Telephone: 216.621.0200
Facsimile: 216.696.0740


Attorneys for Plaintiff


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **GOOGLE INC.**,<br><br>               Plaintiff,<br><br>v.<br><br>**TRAFFIC INFORMATION LLC**,<br><br>               Defendant. | No. CV09-642-HU<br><br>**RESPONSE TO TRAFFIC'S OBJECTION TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION REGARDING TRAFFIC'S MOTION TO DISMISS OR TRANSFER**<br><br>By Plaintiff Google Inc. |

Plaintiff Google Inc. ("Google") respectfully submits its Response to the Objections To

Magistrate Judge's Findings And Recommendations filed by defendant Traffic Information, LLC

("Traffic").

i    - RESPONSE TO OBJECTIONS TO FINDINGS AND
RECOMMENDATION

## Table of Contents

I.    Summary of Argument ...................................................................................1

II.   Relevant Facts .............................................................................................3

  A.  Facts Relating To The Basis For Jurisdiction .............................................4

  B.  Facts Relating To Appropriate Venue Of This Action ...................................5

III.  Argument In Support Of Jurisdiction ................................................................8

  A.  Traffic Does Not Deny It Accused GMM Of Infringement To T-Mobile, And There Is Thus A Justiciable Controversy ...........................................................8

  B.  Traffic's Injurious Statements To Google's Customers Are "Fairly Traceable" To Traffic9

    1.  T-Mobile Never Established That Its Communications Were Confidential ...........11

    2.  Rule 408 Statements Can Create A Justiciable Controversy...................................12

IV.   Argument Opposing Transfer...........................................................................14

  A.  Under 28 U.S.C. § 1404(a), Transfer Is Appropriate Only If The New Venue Is Clearly More Convenient....................................................................14

  B.  Google's Choice of Forum Is Entitled to Deference .........................................15

  C.  Private Factors Weigh Against Transfer. ......................................................16

    1.  Ease of Access to Sources of Proof Weighs Heavily in Favor of the District of Oregon .............................................................17

    2.  Availability of Compulsory Process Weighs Against Transfer...............................19

    3.  The Cost of Transporting Friendly Witnesses Weighs Heavily Against Transfer ....20

    4.  Possibility of Viewing Subject Premises Is Neutral ...........................................22

  D.  Public Factors Weigh Against Transfer ..........................................................22

    1.  Court Congestion Weighs Heavily Against Transfer ..............................................22

    2.  Transfer to the Eastern District of Texas Would Not Advance Judicial Efficiency...................................................................................23

    3.  Local Interest And Imposition of Jury Duty on Community Weigh Against Transfer ..................................................................................26

    4.  Familiarity with Governing Law and Avoidance of Conflicts of Law Are Neutral Factors. ....................................................................29

  E.  At Best, Transfer To The Eastern District of Texas Would Only Shift Convenience.29

  F.  Overall, the "Interest of Justice" Weighs Against Transfer. ..........................30

    1.  The "Interest of Justice" Is Not Limited to Whether Related Cases Exist in the Transferee Forum. .......................................................30

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

2.    Transfer to the Eastern District of Texas Would Reward Traffic's Forum Shopping and Indirect Pursuit of Google's Business Partners ..................................................32

V.    Conclusion ...........................................................................................................................34

iii-  RESPONSE TO OBJECTIONS TO FINDINGS AND
      RECOMMENDATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## Table of Authorities

*Cases*

*Allen v. Scribner*, 812 F.2d 426 (9th Cir. 1987) ...................................................34

*Arrowhead Indus. Water Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988)...................9, 37

*Birmingham Fire Ins. Co. v. UP North Plastics, Inc.*, 2004 WL 838169 (D. Minn. April 19, 2004).................................................................................................35

*Borgwarner, Inc. v. Hilite Int'l, Inc.*, Case no. 07-c-3339, 2008 WL3849908 (N.D. Ill. Aug. 14, 2008)....................................................................................35

*Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648 (D. Del. 2008) ...........25

*Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, 79 U.S.P.Q. 2d 1603 (C.D. Cal. 2006)...................................................................................29

*Bryant v. Ellis*, 301 Ore. 633, 724 P.2d 811 (1986) .....................................................11

*Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1st Cir. Mass. 1977) .......................33, 36

*CollegeNET, Inc. v. ApplyYourself, Inc.*, Case No. 3:02-cv-00484, 2002 WL 33962845 (D. Or. July 26, 2002).......................................................................24

*Continental Grain Co. v. The FBL-585*, 364 U.S. 19 (1960) .......................................26

*Creative Tech., Ltd., v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696 (9th Cir. 1995)...............................15

*Data Retrieval Technology, LLC v. Sybase, Inc.*, Case no. 2:08-cv-01702, 2009 WL 960681 (W.D.Wash., April 8, 2009) ...........................................................18

*Dean Rhoades v. Avon Products, Inc.*, 504 F.3d 1151 (9th Cir. 2007) ...................................13

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ..............15, 16, 20

*Delphi Corp. v. Automotive Technologies Int'l., Inc.*, Case no. Case no. 08-cv-11048, 2008 WL 2941116 (E.D. Mich. July 25, 2008).................................................33, 37

*Dunn & Fenley, LLC v. Diederich*, 2010 U.S. Dist. LEXIS 326 (D. Or. Jan. 5, 2010) .................3

*Fifth Generation Computer Corp. v. IBM Corp.*, Case no. 9:08-cv-205, 2009 U.S. Dist. LEXIS 12502 (E.D. Tex. Feb. 13, 2009) .......................................................19

*Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088 (9th Cir. 1998) ....................16

*Gemini IP Tech. v. Hewlett-Packard Co.*, Case no. 07-C-205-S, 2007 WL 2050983 (W.D. Wisc. July 16, 2007)....................................................................29

*General Tire & Rubber Co. v. Warkins*, 373 F.2d 361 (4th Cir. 1966).......................................27

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075 (D. Or. 2001) ..........................17

*In re TS Tech*, 551 F.3d 1315 (Fed. Cir. 2008) .........................................................................18

*In re Volkswagen of Am., Inc.*, 566 F.3d 1349 (Fed. Cir. 2009)..........................................27

*Invitrogen Corp. v. Incyte Genomics, Inc.*, Case no. 01-692, 2002 WL 883963 (D. Del. May 1, 2002) ..................................................................................................................34

*J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, Case no. 6:08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) .........................................................................34

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir.) .....................................................15, 16

*Kamin v. Kuhnau*, 222 Ore. 139, 374 P.2d 912 (1962) .........................................................11

*Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) ..................................................36

*Krauss Craft, Inc. v. Ross Recreational Equip. Co.*, Case no. 08-3062, 2009 WL 367521 (D. Or., February 12, 2009).............................................................................................16

*Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607 (E.D. La. 2000) ....................30

*Md. Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941) ..............................................8

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ......................................................8

*Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897 (Fed. Cir. 2008).........26

*Miller v. Consolidated Rail Corp.*, 196 F.R.D. 22 (E.D. Pa. 2000) .......................................17

*Minnesota Min. and Mfg. Co. v. Norton Co.*, 929 F.2d 670 (Fed. Cir. 1991) ..............................10

*Molins PLC v. Quigg*, 837 F.2d 1064 (Fed.Cir.1988) .............................................................15

*Nice Systems, Inc. v. Witness Systems, Inc.*, Case No. 1:06-cv-00311, 2006 WL 2946179 (D. Del. October 12, 2006) ..........................................................................26

*Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122 (S.D.N.Y. 2003) ...........................................26

*Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836 (N.D. Ill. 2009) ............................................................................................................................24

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) .....................13

*Stomp, Inc. v. NeatO*, LLC, 61 F. Supp. 2d 1074 (C.D. Cal. 1999) ........................................35

*Surefoot L.C. v. Sure Foot Corp.*, Case no. 2:07-cv-67, 2007 U.S. Dist. LEXIS 34525 (D. Utah 2008).................................................................................................................13

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

41063-0124/LEGAL17882705.1

*Surfer Internet Broad. of Miss., LLC v. XM Satellite Radio Inc.*, Case no. 4:07-cv-034, 2008 WL 1868426 (N.D. Miss. Apr. 24, 2008) ........................................29

*The Whistler Group, Inc. v. PNI Corp.*, No. 03-1536, 2003 WL 22939214 (N.D. Tex. Dec. 5, 2003) ........................................................................................30

*Tse v. Apple Computer, Inc.*, Case No. 1:05-cv-02149, 2006 WL 2583608 (D. Md., Aug. 31, 2006)........................................................................................19

*Union Pac. Railroad Co. v. Mower*, 219 F.3d 1069 (9th Cir. 2000)...........................................11

*Vestas-American Wind, Technology, Inc. v. Beaird Co., Ltd.*, Case no. 3:07-cv-01651, 2008 WL 4164551 (D. Or., Sept., 2008) ........................................................31

*Warner v. Stryker Corp.*, Case no. 6:08-cv-06368, 2009 WL 1773170 (D. Or., June 22, 2009)........................................................................................25

*Statutes*

28 U.S.C. § 1404(a) .........................................................................................15

*Rules*

Fed. R. Civ. P. 45(c)(3) ....................................................................................20

iii-  RESPONSE TO OBJECTIONS TO FINDINGS AND
      RECOMMENDATION

41063-0124/LEGAL17882705.1

## I.    Summary of Argument

On August 14, 2009, Defendant Traffic Information LLC ("Traffic") filed a Motion to

Dismiss or Transfer in this matter [Doc. No. 9], asserting (1) that Google Inc.'s ("Google")

Complaint lacked subject matter jurisdiction because it is based on threats of litigation made by

Traffic to Google's business partner, T-Mobile USA, not to Google, and (2) that the Eastern

District of Texas is better able to adjudicate this matter.  After briefing and extensive oral

argument,[1] Magistrate Judge Hubel found that neither argument had merit and denied the

motion.

Traffic now objects to the denial of its motion to transfer because "Traffic's pending

cases in Texas involve identical issues."[2]  However, Google is not a party to any of Traffic's

cases in Texas and so it is not possible for the issues in this case to be "identical" to those

presented in any Texas case.   The truth of the matter is that the case in this District is the first

filed between the parties (and indeed was filed prior to several of the still-pending cases Traffic

has filed in Texas[3]).

Traffic "must make a strong showing of inconvenience to warrant upsetting the plaintiff's

choice of forum,"[4] but the evidence presented by the parties to Magistrate Judge Hubel revealed

that Traffic's place of business is in Oregon, and at least two of Traffic's principals and inventors

---

[1] Rule 72(b)(2) of the Federal Rules of Civil Procedure required Traffic to "promptly arrange for
transcribing the record" in the matter.  Traffic has not fulfilled this obligation, and so the record
of the two hour oral argument before Judge Hubel conducted on October 21, 2009, is not
available to this Court.
[2] Traffic's Objections [Doc. No. 29] at page 2.
[3] This case was filed on June 9, 2009.  Traffic's later lawsuit against Sony Electronics and others
was filed on June 10, 2009 (Case No. 2-09-cv-191), and that against Yahoo! Inc. and others in
August of 2009 (Case Nos. 1-09-cv-786 and 2-09-cv-246).  Of the lawsuits filed earlier than this
case, two have been concluded, and two remain pending.  [See Findings and Recommendations
at page 7.]
[4] *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

are citizens of the state of Oregon.  Indeed, Traffic was unable to identify a <u>single witness</u>

relevant to this case located in the state of Texas.  In contrast, Google's witnesses are primarily

located in the states of Washington and California, and find this Court a much more convenient

forum for the litigation.

Traffic also sought dismissal of the action on the grounds that the evidence of a

justiciable dispute between the parties was obtained by Google in violation of an alleged

confidentiality agreement between Traffic and a third party, T-Mobile USA.  However,

Magistrate Judge Hubel determined that "the record in this case contains no evidence even of an

implied confidentiality agreement between T-Mobile and Traffic."[5]  Although Traffic disputes

this finding, the record presented to Judge Hubel was clear that the communication between T-

Mobile USA and Traffic at issue was <u>unilaterally</u> designated "Confidential" by Traffic without

any agreement from T-Mobile USA.  Further, to the extent that Traffic argues that the document

is protected by Rule 408 of the Federal Rules of Evidence, the Ninth Circuit has made it plain

that use of a Rule 408 communication to establish a threat sufficient to satisfy jurisdictional

requirements for declaratory relief is " perfectly acceptable."[6]

Google's declaratory judgment action is the <u>only</u> action between the parties that will

resolve all issues related to whether or not Google's product at issue – Google Maps for Mobile

("GMM") – infringes the Traffic Patents.  Google's choice of forum is the District of Oregon.

Traffic offers no convincing reason to disturb this choice.

---

[5] Findings and Recommendations [Doc. No. 27] at page 6.
[6] *Dean Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007).

2-    RESPONSE TO OBJECTIONS TO FINDINGS AND
      RECOMMENDATION

41063-0124/LEGAL17882705.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Accordingly, Magistrate Judge Hubel's decision denying Traffic's motion was correct and should be upheld by this Court.[7]

## II.    Relevant Facts[8]

This lawsuit concerns allegations by Traffic that Google's software product "Google Maps for Mobile" ("GMM")[9] infringes U.S. Patents 6,785,606 and 6,466,862 (the "Traffic Patents"). Although Traffic admittedly told Google's partner T-Mobile USA[10] that GMM infringed its patents, Traffic maintains that there is no justiciable controversy between the parties. However, Traffic never withdrew its claim that GMM infringes the Traffic Patents throughout the briefing and oral argument process before Magistrate Judge Hubel. Traffic's assertion creates declaratory judgment jurisdiction because it directly threatens Google's relationship with T-Mobile USA and T-Mobile cell phone users, and with other potential partners and customers that may be considering GMM for use on other cell phones.

---

[7] Traffic asserts that this Court must review Magistrate Judge Hubel's Findings and Recommendation *de novo*. While Google agrees that denial of the motion to dismiss is to be reviewed *de novo*, pursuant to 28 U.S.C. § 636(b)(1)(C), the Recommendation regarding the motion to transfer must be reviewed under the "clearly erroneous" standard of 28 U.S.C. § 636(b)(1)(A). *Dunn & Fenley, LLC v. Diederich*, 2010 U.S. Dist. LEXIS 326, *7 (D. Or. Jan. 5, 2010) ["Finally, I note that because a motion to transfer venue does not address the merits of the case but merely changes the forum of an action, it is a non-dispositive matter that is within the province of a magistrate judge's authority. *Holmes v. TV-3, Inc.*, 141 F.R.D. 697, 697 W.D. La.1991) (stating that "[s]ince a Motion to Transfer Venue is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor is it dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this Court."); see also, *Paoa v. Marati, et. al.*, 2007 U.S. Dist. LEXIS 94856, 2007 WL 4563938 (D. Hawai'i, December 28, 2007) (noting that transfer of venue is a non-dispositive matter and the standard of review for the magistrate's findings is clear error)."].

[8] Google filed extensive supporting exhibits and declarations with its Brief in Opposition to the Motion to Dismiss or Transfer [Doc. No. 11]. Rather than swell the record unnecessarily, Google incorporates its prior Brief and the supporting materials into the present Brief by reference as if fully stated herein. References in this Brief to exhibits are to the exhibits filed in connection with the earlier Brief.

[9] GMM is software which can be utilized on cell phones and similar devices in order to display maps on the cell phone for various purposes.

[10] T-Mobile makes GMM available to purchasers of certain of its cell phones.

3-    RESPONSE TO OBJECTIONS TO FINDINGS AND
       RECOMMENDATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Traffic's argument for transfer to the Eastern District of Texas as a preferable venue revolves around its contention that it "does business" in that district.  Yet Traffic cannot identify any witnesses who actually reside there that might be of importance to this case, and it has not identified any actual business it does there other than the business of filing lawsuits.  Transfer of this matter to the Eastern District of Texas would undermine, not advance, the interests of justice, and would unfairly reward patent owners whose only business function is to strategically file multiple lawsuits in inconvenient venues.

### A.    Facts Relating To The Basis For Jurisdiction

Google filed this declaratory relief action on June 9, 2009, after receiving notice from T-Mobile USA that Traffic had identified GMM as infringing the Traffic Patents when used on a T-Mobile cell phone.  As GMM is not limited to any particular device,[11] customers of T-Mobile USA represent only a portion of total GMM users.

Traffic has never denied that it believes GMM infringes its patents, nor that it made allegations of the infringement to T-Mobile.  Instead, it simply argues that it is not "fair" to trace the allegations of infringement to T-Mobile.  At bottom, Traffic's position is that Traffic may threaten Google's partners with impunity, denying Google the right to defend its own product from those threats and allegations, so long as it adds a "Confidential" legend to the defamatory communications.

Traffic claims that the communication to T-Mobile was in the nature of a "settlement communication" protected by Rule 408.  Traffic, however, never established that its communication to T-Mobile USA was subject to a confidentiality agreement it had reached with

---

[11] See Exhibit 1, Google Maps for Mobile product information ("Google Maps for mobile works on most phones") found at: http://www.google.com/mobile/products/maps.html#p=default.

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

T-Mobile USA, nor that it contained a settlement demand, nor even that it contained information that was actually confidential.[12]  According to its Brief in Support of its motion [Doc. No. 9] at page 5, Traffic apparently unilaterally labeled its email as "INADMISSIBLE AND CONFIDENTIAL, FOR SETTLEMENT PURPOSES ONLY, SUBJECT TO FRE 408."  In the absence of a confidentiality agreement between the adverse parties, however, Traffic had no reasonable expectation that T-Mobile would not share with Google the fact that Traffic was accusing GMM of infringement.

### B.    Facts Relating To Appropriate Venue Of This Action

Google's main office is in Mountain View, California.[13]  The bulk of Google's business activities relating to the accused Google product take place in its Mountain View, California and Seattle/Kirkland, Washington offices.[14]  Accordingly, the majority of Google employees with information potentially relevant to this lawsuit and relevant documents are located in or near Mountain View and Seattle.[15]  Google has no office located in or employee currently residing in the Eastern District of Texas.[16]  The accused features of GMM were initially developed by employees of Zipdash, Inc., a Palo Alto-based company purchased by Google in 2004.[17]  Google

---

[12] Traffic never provided the actual text of its communication to Magistrate Judge Hubel.

[13] See Exhibit 2, Delaware Dept. of State record for Google Inc.; Exhibit 3, Google Locations, found at http://www.google.com/intl/en/corporate/address.html.

[14] See Exhibit 4, Information page for Google's Mountain View, California location; Exhibit 5, Information page for Google's Seattle/Kirkland, Washington location.

[15] See Declaration of Christina J. Moser, ¶¶3, 5 (Moser Decl.").

[16] Id. ¶6.

[17] See Exhibit 6, Exhibit 21.01 to Google, Inc.'s 2004 Annual Report; Exhibit 7, *Navigating by Phone*, Palo Alto Weekly, April 28, 2004, accessible at http://www.paloaltoonline.com/weekly/morgue/2004/2004_04_28.zipdash28ja.shtml; Exhibit 8, *TECHNOLOGY; That's the Weather, and Now, Let's Go to the Cellphone for the Traffic*, New York Times, March 1, 2004, accessible at http://www.nytimes.com/2004/03/01/business/technology-that-s-the-weather-and-now-let-s-go-to-the-cellphone-for-the-traffic.html.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

continues to develop and support these features at Google's offices in the greater Seattle area.[18]

T-Mobile USA, the Google business partner that received the infringement accusations, is based

in Bellevue, Washington.[19]  As demonstrated by the foregoing, none of Google's potentially

relevant information or witnesses for this case is located in Texas.

Traffic is a Texas limited liability company registered with the Texas Secretary of State

on April 13, 2006.[20]  Although Traffic claims that its principal business operations are conducted

in the Eastern District of Texas, its address listed with the Texas Secretary of State at the time of

the briefing before Magistrate Judge Hubel was 601 SW 2nd Ave. Ste. 1600, Portland, OR

97204-3157.[21]  Traffic claims that its documents are located in Bellaire, Texas, which is the

location of its litigation counsel.[22]  Traffic has identified no "business" it conducts in the Eastern

District of Texas, other than the multiplicity of patent suits it has filed over the past two years.[23]

Kevin Russell is a named co-inventor of the Traffic Patents and also is the patent attorney

who prosecuted the applications that resulted in the Traffic Patents.[24]  Mr. Russell is a partner at

Chernoff Vilhauer McClung & Stenzel LLP, which has its sole office at 601 SW 2nd Ave Ste

1600, Portland OR 97204.[25]  Both Kevin Russell and Bruce DeKock, another listed inventor of

---

[18] Exhibit 5.
[19] See Exhibit 9, T-Mobile USA Company Information, found at http://www.t-Mobile.com/Company/CompanyInfo.aspx?tp=Abt_Tab_CompanyOverview.
[20] See Exhibit 10, Texas Franchise Tax Certification record for Traffic Information LLC, downloaded June 1, 2009.
[21] *Id.* Google has been unable to identify a Texas address for Traffic and none is provided in the Declaration of Kevin Russell in Support of Traffic's Motion to Dismiss or Transfer ("Russell Decl."). See Moser Decl. ¶12.
[22] See Motion to Dismiss or Transfer, Docket No. 8 (caption) and Russell Decl. ¶13.
[23] See, *e.g.* Russell Decl. ¶¶7-9.
[24] See Russell Decl. ¶10; Exhibit 11, Attorney/Agent Information for App. Serial No. 10/367,162 ('606 Patent) and App. Serial No. 09/550,476 ('862 Patent).
[25] See Exhibit 12, Chernoff Vilhauer McClung & Stenzel LLP website

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

the Traffic Patents, reside in the District of Oregon.[26]  The third inventor, Richard Qian, was a

resident of Camas, Washington (approximately 20 miles from Portland) and, upon information

and belief, currently lives near Seattle, Washington.[27]  Traffic provided a declaration from

Mr. Qian attached to its Reply brief, in which the declarant averred that he is willing to appear

voluntarily in the Eastern District of Texas to testify, but the declaration does not set out

Mr. Qian's current residence.

Traffic has identified no witnesses residing in the Eastern District of Texas.  Despite

purported concerns stated in its Brief in Support of its Motion to Dismiss about being involved in

"piecemeal litigation," Traffic has filed seven *separate* actions involving one or both of the

Traffic Patents since 2007.[28]

Traffic requests transfer to the Eastern District of Texas, where it has cases pending.

Witnesses in Mountain View, California; Seattle, Washington; or Portland, Oregon, would have

to travel approximately 2000 miles, 2350 miles, and 2300 miles, respectively to the Eastern

District of Texas (Marshall), but witnesses from Mountain View and Seattle would have to travel

---

[26] Exhibit 13, Inventor Declaration and Power of Attorney for App. Serial No. 10/367,162 ('606 Patent).
[27] *Id.*, also Exhibit 14, website for Richard J. Qian obtained from http://richardqian.com/.
[28] The PACER website shows that Traffic has filed all of the Eastern District of Texas cases separately over a period of about two years, beginning in 2007.  See *Traffic Information Traffic Information LLC v. American Honda Motor Co. Inc.*,  2:2007cv00391 (filed 09/07/2007, closed 03/12/2008); *Traffic Information LLC v. Alpine Electronics of America, Inc. et al*, 2:2008cv00007 (filed 01/08/2008, closed 04/15/2009); *Traffic Information LLC v. HTC USA, Inc. et al*, 2:2008cv00404 (filed 10/20/2008); *Traffic Information LLC v. AT&T Mobility LLC et al*, 2:2009cv00083 (filed 03/20/2009); *Traffic Information, LLC v. Sony Electronics Inc. et al*, 2:2009cv00191 (filed 06/10/2009); *Traffic Information, LLC v. Yahoo! Inc. et al*, 1:2009cv00786 (filed 08/14/2009, closed 08/14/2009); *Traffic Information, LLC v. Yahoo! Inc. et al*, 2:2009cv00246 (filed 08/18/2009).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

approximately 670 miles and 180 miles, respectively, to attend a hearing or trial in the District of Oregon (Portland).[29]

## III.     Argument In Support Of Jurisdiction

### A.     Traffic Does Not Deny It Accused GMM Of Infringement To T-Mobile, And There Is Thus A Justiciable Controversy

In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764 (2007), the Supreme Court made it clear that a declaratory action is available in a patent case when the facts as alleged "'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* at 127 (quoting *Md. Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

This case, where defendant Traffic has apparently made a strategic decision to pursue Google's customers who use GMM on T-Mobile cell phones rather than Google directly, is exactly the kind of situation for which the Declaratory Judgment Act provides a remedy. As described in *Arrowhead Indus. Water Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734-35 (Fed. Cir. 1988):

> This appeal presents a type of the sad and saddening scenario that led to enactment of the Declaratory Judgment Act (Act), 28 U.S.C. § 2201. In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. See *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F.Supp. 219, 237, 150 USPQ 589, 601 (D.N.J.1966). Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. See E. Bor-chard, *Declaratory Judgments* 803-04 (2d ed. 1941). Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a

---

[29] Exhibit 15, Maps showing distances.

8-  RESPONSE TO OBJECTIONS TO FINDINGS AND RECOMMENDATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests. The sole requirement for jurisdiction under the Act is that the conflict be real and immediate, *i.e.*, that there be a true, actual "controversy" required by the Act. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937); *Jervis B. Webb Co.*, 742 F.2d at 1398, 222 USPQ at 949.

*Id.* Magistrate Judge Hubel agreed that all of the requirements for justiciability under the

Declaratory Judgment Act, as articulated by the Federal Circuit in *SanDisk* and *Teva*, are met

here. *[Findings and Recommendation, pages 7-8]*

Google filed this lawsuit for declaratory relief to prevent Traffic from initiating

piecemeal litigation against each Google Maps business partner and, by extension, end users of

GMM, beginning with T-Mobile USA and T-Mobile cell phone users, and thereby to avoid being

made an explicit or implied defendant in a multitude of actions against those customers.

Allowing these harms to continue "would undermine the intended purpose of the Declaratory

Judgment Act." *Minnesota Min. and Mfg. Co. v. Norton Co.*, 929 F.2d 670, 675 (Fed. Cir.

1991).

**B.    Traffic's Injurious Statements To Google's Customers Are "Fairly Traceable" To Traffic**

Traffic argued to Magistrate Judge Hubel that Traffic's injurious statements to Google's

business partner T-Mobile USA are not "fairly traceable" to Traffic and, thus, Google lacks

constitutional standing for this action.  Traffic admitted that the communication in question was

"traceable" to it, but argued that it was not "fair" to follow that trace, because Traffic's

statements to T-Mobile USA were intended by Traffic to be confidential.

While a number of cases utilize the phrase "fairly traceable" in setting out the

requirements for declaratory judgment jurisdiction, the phrase is not used in a way requiring a

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

vague assessment of the equities concerned; rather, this phrase was intended simply to require a

fairly clear <u>causal connection</u> between an action taken by the Defendant and the injury

complained of:

> …[T]here must be a causal connection between the injury and the conduct
> complained of -- the injury has to be "fairly . . . trace[able] to the challenged
> action of the defendant, and not . . . the result [of] the independent action of some
> third party not before the court." *[citation omitted]*

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  The case cited in the previous

quote explains further,

> …[T]he "case or controversy" limitation of Art. III still requires that a federal
> court act only to redress injury that fairly can be traced to the challenged action of
> the defendant, and not injury that results from the independent action of some
> third party not before the court.

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).  Magistrate Judge Hubel found

that the present case met this test in concluding, "The communication was an affirmative act

fairly traceable to Traffic; the fact that the e-mail was marked 'confidential' does not affect the

justiciability analysis." *[Findings and Recommendation, pages 6-7]*  Further, Magistrate Judge

Hubel found nothing inappropriate in relying on the evidence of Traffic's communication to T-

Mobile USA, finding that "Traffic should reasonably have anticipated – and perhaps even

intended – that its claim of infringement by Google's product would be communicated to Google

– how better for T-Mobile to refute Traffic's infringement claim than by seeking Google's help

in explaining GMM?"  *[Findings and Recommendation, pages 6-7]*

10-  RESPONSE TO OBJECTIONS TO FINDINGS AND
     RECOMMENDATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1.    **T-Mobile Never Established That Its Communications Were Confidential**

Magistrate Judge Hubel concluded that "the record in this case contains no evidence even of an implied confidentiality agreement between T-Mobile and Traffic."[30]  In its Objections, Traffic attempts to dispute this finding by citing to <u>its own unilateral efforts</u> to designate the communication confidential – its use of a "confidential" label on the communication and its own understanding and expectation about the communication.[31]

However, as Magistrate Judge Hubel noted, Traffic never offered evidence that it had obtained T-Mobile USA's agreement to keep the information confidential.  In its Objections, Traffic admits that "Traffic and T-Mobile did not sign an *express* confidentiality agreement."[32] Traffic cites *Bryant v. Ellis*, 301 Ore. 633, 724 P.2d 811 (1986), *Union Pac. Railroad Co. v. Mower*, 219 F.3d 1069, 1074 (9th Cir. 2000), and *Kamin v. Kuhnau*, 222 Ore. 139, 374 P.2d 912, 919 (1962) to support a claim of implied confidentiality, but these citations do not avail.  In the *Bryant* case, the issue was whether the circuit court had authority to disqualify an attorney in a civil suit and arguably considered whether the attorney-client relationship could imply an agreement of confidentiality.  *Mower* concerned an implied duty not to reveal trade secrets in an employer-employee relationship.  *Kamin* concerned an implied duty not to utilize trade secrets revealed to a manufacturer of an item by the item's inventor.  In each circumstance, there was a special relationship between the two parties that created the implication of confidentiality.  In the present case, however, there was and is no such relationship between Traffic and Google, and

---

[30] Findings And Recommendations [Doc. No.  27] at page 6.
[31] Objections [Doc. no. 29] at page 6.
[32] Id.

41063-0124/LEGAL17882705.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

indeed the relationship between Traffic and T-Mobile USA, as two adversaries in a pending

piece of litigation, strongly implies that no confidentiality should exist.

Magistrate Judge Hubel properly concluded that the circumstances argued <u>away from</u> an

implication of confidentiality:

> There is nothing inherently confidential about a statement accusing a third party's
> product of patent infringement.  Traffic should reasonably have anticipated – and
> perhaps even intended – that its claim of infringement by Google's product would
> be communicated to Google – how better for T-Mobile to refute Traffic's
> infringement claim than by seeking Google's help in explaining GMM?  The
> communication was an affirmative act fairly traceable to Traffic; the fact that the
> e-mail was marked "confidential" does not affect the justiciability analysis.
> *[Findings and Recommendation, pages 6-7]*

Further, Traffic cannot point to any aspect of the information it claims was passed on

from T-Mobile USA to Google that has even the appearance of confidentiality.  There is, as

Magistrate Judge Hubel noted above, nothing inherently private or confidential about the matters

pointed to by Traffic.  It is common for Google itself to refer to the "traffic feature" of GMM.[33]

### 2.    Rule 408 Statements Can Create A Justiciable Controversy

Magistrate Judge Hubel considered, but rejected, Traffic's argument that Federal Rule of

Evidence 408 protected the communication to T-Mobile from use in establishing declaratory

judgment jurisdiction, citing with approval the following from *SanDisk Corp. v.*

*STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007):

> ST sought to condition its open licensing discussions and the infringement study
> on adherence to Federal Rule of Evidence 408. That rule expressly relates to
> evidence of efforts toward compromising or attempting to compromise a claim in
> litigation and does not prevent SanDisk from relying on the licensing discussions
> and infringement study to support its claims.

---

[33] See for example, Exhibit 16, the Google Mobile Blog dated April 7, 2008, "Better Know Your
Mobile:  Using My Location And Traffic Features on Google Maps." at
http://googlemobile.blogspot.com/2008/04/better-know-your-mobile-using-my.html.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*SanDisk*, 480 F.3d at 1375 *[cited in the Findings and Recommendation at page 6]*; see also,

*Surefoot L.C. v. Sure Foot Corp.*, Case no. 2:07-cv-67, 2007 U.S. Dist. LEXIS 34525, *6 (D.

Utah 2008)  (citing *SanDisk* and refusing to strike statements pertaining to discussions under

Rule 408 in determining whether claims were justiciable).  Rule 408 is not a confidentiality

provision, nor does it provide a blanket exclusion for any and all information designated as

settlement communications.

     The Ninth Circuit reached the same conclusion in *Dean Rhoades v. Avon Products, Inc.*,

504 F.3d 1151 (9th Cir. 2007):

> The text of *[Rule 408]* is clear: evidence from settlement negotiations may not be
> considered in court "when offered to prove liability for, invalidity of, or amount
> of a claim that was disputed as to validity or amount, or to impeach through a
> prior inconsistent statement or contradiction." " Rule 408, however, does not bar
> such evidence when "offered for [other] purposes . . . [such as] proving a
> witness's bias or prejudice." Notwithstanding the letter's attempt to claim an
> absolute privilege, therefore, statements made in settlement negotiations are only
> excludable under the circumstances protected by the Rule.
>
> Here, DermaNew does not rely on the threats in an attempt to prove whose
> trademark is valid, or to impeach Avon. Instead, it uses the threats to satisfy the
> jurisdictional requirements of an action for declaratory relief. n9 This is perfectly
> acceptable under Rule 408.

*Id.* at 1161 (citations omitted).

     Traffic argues that *SanDisk* actually favors dismissal in this action, based primarily on a

comment in a *Sandisk* footnote which suggests that the risk of declaratory judgment can be

avoided through a confidentiality agreement.  The actual words of the Court, however, point out

that the Court anticipated that any such agreement would be <u>negotiated</u> in advance of disclosure:

> To avoid the risk of a declaratory judgment action, ST could have sought
> SanDisk's agreement to the terms of a suitable confidentiality agreement. The
> record before us reflects that the parties did not enter into such an agreement.

13-  RESPONSE TO OBJECTIONS TO FINDINGS AND
RECOMMENDATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

*SanDisk Corp.*, 480 F.3d at 1375 (citations omitted).  Just as in *SanDisk*, the record before

Magistrate Judge Hubel "reflects that the parties did not enter into such an agreement" as there is

no evidence that T-Mobile USA ever consented to an understanding of confidentiality.

Traffic accuses Google of having failed to carry a burden of proof that there was no

agreement of confidentiality.  In fact, however, all the evidence offered in the case supports

Google's position:  the communication at issue lacks any indicia of confidentiality and the

reported content of the communication does not appear to concern confidential information.

Traffic's position that there was an understanding of confidentiality is supported by no evidence

at all.  Magistrate Judge Hubel correctly found that these statements establish subject-matter

jurisdiction for this declaratory judgment action.

## IV.    Argument Opposing Transfer

### A.    Under 28 U.S.C. § 1404(a), Transfer Is Appropriate Only If The New Venue Is Clearly More Convenient

The statute applicable to transfer of venue, 28 U.S.C. § 1404, provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).  The decision whether to transfer venue lies in the discretion of the district

court.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.) (under section 1404(a), "the

district court has discretion to adjudicate motions for transfer according to an individualized,

case-by-case consideration of convenience and fairness.") (internal quotation omitted), *cert.*

*denied*, 531 U.S. 928 (2000).

41063-0124/LEGAL17882705.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

In determining proper venue, the court considers both public and private factors. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Creative Tech., Ltd., v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995).[34]

Private factors include:

…ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; the possibility of viewing subject premises; and other factors contributing to an expeditious and inexpensive trial.

. . .

[Public] factors include administrative difficulties flowing from court congestion; imposition of jury duty on the people of a community unrelated to the litigation; the local interest in resolving the controversy at home; the interest in having a diversity case tried in a forum familiar with the law that governs the action; and the avoidance of unnecessary conflicts of law problems.

*Gemini Capital Group, Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1093, 1094 (9th Cir. 1998).

*See also Decker,* 805 F.2d at 843; *Royal Queentex Enterprises, Inc. v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 U.S. Dist. LEXIS 10139, at *7-8 (N.D. Cal. Mar.1, 2000).

## B.    Google's Choice of Forum Is Entitled to Deference

Traffic "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker.*, 805 F.2d at 843, see also *Jones*, 211 F.3d at 498-99 (plaintiff's choice of forum is a factor in section 1404(a) analysis). Even a non-resident's choice of forum is

---

[34] Ninth Circuit precedent applies to this question. *See Molins PLC v. Quigg*, 837 F.2d 1064, 1065 (Fed.Cir.1988) ("[W]e apply the law of that circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law."). Some Ninth Circuit decisions have identified another set of specific factors to be evaluated by the court, which are largely subsumed in the *Decker* analysis, including: (1) plaintiff's choice of forum; (2) is the forum state familiar with the governing law?; (3) the contacts relating to plaintiff's cause of action in the forum; (4) the ease of access to sources of proof and the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (5) the differences in the cost of litigating in the two forums. *See Jones*, 211 F.3d at 498-99; *Krauss Craft, Inc. v. Ross Recreational Equip. Co.*, Case no. 08-3062, 2009 WL 367521 *8 (D. Or., February 12, 2009).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

entitled to deference where the defendant is located in the forum state and the balance of events relevant to the case took place there. *Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1085-86 (D. Or. 2001); *see also Miller v. Consolidated Rail Corp.*, 196 F.R.D. 22, 25-26 (E.D. Pa. 2000) (although court was not plaintiff's home forum, plaintiff and his case had "more than a superficial link" to the Pennsylvania court, in large part because the defendant's headquarters were located in Pennsylvania, and plaintiff's choice was therefore not given any reduced deference ).

Google chose the District of Oregon because it is the forum that is most convenient to Google, Traffic Information's principals, the inventors of the Traffic Patents, and the attorney who prosecuted the applications that led to the Traffic Patents in light of all the factors considered under a § 1404 analysis. Traffic's attempt to portray this choice as unrelated to the underlying facts is unavailing.

### C.    Private Factors Weigh Against Transfer.

Considering the private factors of access to and convenience of witnesses and access to sources of proof, Magistrate Judge Hubel found that these factors weigh decisively in Google's favor:

> Because at least two of the Traffic Patents' inventors and Traffic principals are situated in Oregon, the attorney who prosecuted the Traffic Patents is in Oregon, GMM is operated from Northern California and Washington, and relevant source code for GMM is available in Northern California or Washington, I am persuaded that this court is closer to the milieu of GMM, the allegedly infringing device, and to the activity centered around the production of both GMM and the Traffic Patents, than the Eastern District of Texas.

*Findings And Recommendation*, page 14.

16-  RESPONSE TO OBJECTIONS TO FINDINGS AND RECOMMENDATION

41063-0124/LEGAL17882705.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1.    **Ease of Access to Sources of Proof Weighs Heavily in Favor of the District of Oregon**

The relative ease of access to sources of proof strongly weighs against transfer to the

Eastern District of Texas.  This factor has been found to favor transfer where the

documentary and physical evidence is located mainly in or closer to the transferee venue.

*See In re TS Tech*, 551 F.3d 1315, 1317 (Fed. Cir. 2008).  Here:

- The development of the accused product took place in Northern California and Washington;

- GMM is operated from Northern California and Washington;

- The "invention" at issue was likely conceived and reduced to practice in Oregon and/or Washington; and

- The patents at issue were prosecuted from Oregon.

The documents and physical evidence relevant to the underlying facts are much

closer to Oregon than Texas.  As explained by the court in *Data Retrieval Technology, LLC*

*v. Sybase, Inc.*, Case no. 2:08-cv-01702, 2009 WL 960681 (W.D. Wash., April 8, 2009):

> In addition, in patent infringement cases, it is well-recognized that the preferred forum is "that which is the center of gravity of the accused activity." *Amazon. com v. Cedant Corp.*, 404 F.Supp .2d 1256, 1260 (W.D.Wash.2005) (quoting *Ricoh Co., Ltd., v. Honeywell, Inc.*, 817 F.Supp. 473, 482, n. 17 (D.N.J.1993)). The district court "ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Ricoh*, 817 F.Supp. at 482, n. 17. Additionally, a court should consider "the location of the product's development, testing, research and production." *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F.Supp.2d 1039, 1044 (S.D.Tex.2007) (citations omitted). "Also relevant is the place where the marketing and sales decisions occurred, not just the location of any particular sales activity." *Id.* (internal quotations and citation omitted).

As the party in the position of the alleged infringer, Google's relevant documents

will include documents relating to the creation, development, and provision of the allegedly

infringing GMM.  *See Tse v. Apple Computer, Inc.*, Case No. 1:05-cv-02149, 2006 WL

17-  RESPONSE TO OBJECTIONS TO FINDINGS AND RECOMMENDATION

41063-0124/LEGAL17882705.1

2583608 *3 (D. Md., Aug. 31, 2006) ("The software and products alleged to violate Tse's patent were designed and produced in California, with the exception of MusicMatch's software, which was partially designed in Florida.  None of the design or production occurred in Maryland. California, then, is the 'hub of activity' in this case.")

Google's documents are located in Northern California and Washington – significantly closer to the District of Oregon than the Eastern District of Texas.  Moreover, should Google's source code be produced for inspection, access to the relevant source code is available only in Northern California or Washington.[35]  *See Tse*, 2006 WL 2583608 *2 (location of source code, technical specifications, schematics, and technical operations documentation relevant); *Fifth Generation Computer Corp. v. IBM Corp.*, Case no. 9:08-cv-205, 2009 U.S. Dist. LEXIS 12502, at *11-12 (E.D. Tex. Feb. 13, 2009) (finding this factor in favor of transfer where a number of documents were located in the transferee forum and none were located in the Eastern District of Texas, even though some documents may also be located in California, New Mexico, Minnesota, and the Southern District of Texas).

By contrast, Traffic's documents are likely either located in this District or just as easily accessible from Oregon as from Texas.  As Traffic does not produce any actual products or services, Traffic's relevant documents appear limited to documents relating to the prosecution of the Traffic Patents.  While Traffic maintains that its paper records are located in Bellaire, Texas (likely because of its other litigation activity), its motion is silent on whether or not relevant documents are also located in the District of Oregon.  Originals or duplicates of documents related to the prosecution of the Traffic Patents but not available

---

[35] See Moser Decl. ¶7.

18- RESPONSE TO OBJECTIONS TO FINDINGS AND
RECOMMENDATION

41063-0124/LEGAL17882705.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

in the patent's official prosecution history are just as likely to be located in Portland, Oregon, the location of the office of the attorney who prosecuted the applications leading to the Traffic Patents and the *situs* of this lawsuit.

Even if the Court accepts Traffic's argument that Bellaire, Texas is the sole physical location of certain Traffic documents, this fact does not confer on the Eastern District of Texas any special status. Paper documents are routinely converted into electronic format and reviewed anywhere that a computer can be connected to the Internet.

Given that most of the relevant documents are located nearer to the District of Oregon than the Eastern District of Texas and, should Google's source code be produced, it will be made available for inspection only in California or Washington, consideration of the location of sources of proof weighs strongly against transfer.

### 2.    Availability of Compulsory Process Weighs Against Transfer

The Court should also consider the availability of compulsory process to secure the attendance of witnesses. *See Decker,* 805 F.2d at 843. Under Fed. R. Civ. P. 45(c)(3), a court may quash a subpoena that would require a non-party witness to travel more than 100 miles to testify, and a court must quash a subpoena that would require a non-party witness to travel more than 100 miles to another state. Fed. R. Civ. P. 45(c)(3)(A)(ii), (B)(iii).

Traffic does not identify a single non-party witness that resides or works within the Eastern District of Texas' absolute subpoena power. By contrast, regardless of whether they now say they would be willing to travel to Texas for trial, the non-party witnesses—Traffic's principals and inventors—have personal and business interests that are likely to put them at odds with the demands of litigation and compulsory process may therefore be

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

needed to obtain their attendance at trial.  Traffic does not deny that inventors Kevin Russell

and Bruce DeKock, reside in the District of Oregon and are therefore available for

compulsory process to secure their attendance at trial.  Traffic has never revealed the

residence of Mr. Qian.

Traffic also relied in the briefing before Magistrate Judge Hubel upon an unspecified

number of "witnesses with companies that have been sued for infringement of one or both

of the patents-in-suit [who] will likely have evidence related to Google's allegation that the

patents are invalid."[36]  By this reference, Traffic presumably intends to demonstrate that

non-party witnesses and/or documents may be located across the United States, in an

attempt to divert the Court's attention from the concentration of witnesses in and near this

District.  Google would be happy to learn who these purported witnesses are, but Traffic's

briefs to Magistrate Judge Hubel never revealed those unnamed witnesses, and its

Objections are also silent on this issue.  Absent further specificity, this Court should not

attribute any weight to Traffic's suppositions regarding witnesses from whom Google might

seek discovery.

Traffic can identify no hostile third party witness residing in the Eastern District of

Texas that might have useful information in this action.  Messrs. Russell and DeKock reside

within this district.  Accordingly, this factor weighs against transfer.

### 3.    The Cost of Transporting Friendly Witnesses Weighs Heavily Against Transfer

Despite Traffic's claims that Messrs. Russell, DeKock and Qian would be happy to travel

to Marshall, Texas, the fact remains that Russell and DeKock reside in this District.  Having a

---

[36] Memo. at 11-12.

20-  RESPONSE TO OBJECTIONS TO FINDINGS AND
      RECOMMENDATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

party-friendly witness "willing to travel" to Texas is not the same as saying Texas is less costly and more convenient, which is the appropriate inquiry. On Google's side, the individuals who created, developed, and provide support to the GMM product are located in Northern California and Washington.[37]

The cost of transporting witnesses to the Eastern District of Texas significantly exceeds the cost of transporting them to the District of Oregon. The nearest airport hubs for the witnesses, San Francisco, Seattle, and Portland, are all a substantial distance from Shreveport, the closest airport hub to Marshall, Texas. Currently, air fares from San Francisco, Seattle, and Portland to Shreveport cost between $1586.01 and $2,054.[38] Flights from San Francisco and Seattle to Portland cost in the neighborhood of $320.00.[39] Driving from Seattle to Portland would take approximately three hours.[40] Driving from Seattle to Marshall would take one and a half days.[41] Compounding the airfare cost differential are the costs associated with the time it takes to travel to Marshall as opposed to Portland. Flights from San Francisco and Seattle to Marshall take between about seven to about ten hours.[42] Flights from San Francisco and Seattle to Portland take between one and two hours.[43] Clearly, it would be less costly to transport willing witnesses to Portland, Oregon than Marshall, Texas. Accordingly, this fact weighs heavily against transfer.

---

[37] *See Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003) ("[I]t is permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material.").
[38] See Exhibit 17, Sample Airfares to Shreveport.
[39] See Exhibit 18, Sample Airfares to Portland.
[40] See Exhibit 15, Maps.
[41] *Id.*
[42] See Exhibit 17.
[43] See Exhibit 18.

21-  RESPONSE TO OBJECTIONS TO FINDINGS AND
      RECOMMENDATION

41063-0124/LEGAL17882705.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

### 4.    Possibility of Viewing Subject Premises Is Neutral

The method claimed in the Traffic Patents is practiced on mobile devices.  Accordingly, this is not a matter where the court or jury will be need to take a field trip to view any premises and this factor is neutral.

### D.    Public Factors Weigh Against Transfer

Considering the public factors of judicial efficiency and local interest, Magistrate Judge Hubel found that these factors weigh decisively in Google's favor:

> I am not persuaded that the presence of other patent litigation initiated by Traffic in the Eastern District of Texas, or Google's presence as a party in other cases in the Eastern District of Texas, trumps Google's effort to locate this case in a district closer to the hub of activity pertinent to this case and to key witnesses.

*Findings And Recommendation*, page 14.

### 1.    Court Congestion Weighs Heavily Against Transfer

As to Traffic's claim that the Eastern District of Texas' docket is, statistically, better suited for adjudication of the merits of Google's contentions, such statistics are "relatively meaningless in the section 1404(a) analysis."[44]  *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 841 (N.D .Ill. 2009). "They consist of averages for cases of all types and tell the reader nothing about cases of the particular type at issue. Specifically, these statistics say nothing at all about patent infringement cases and how quickly they proceed to trial in the two districts."  *Id.*

The Eastern District of Texas' patent "rocket docket" reputation appears to be a thing of the past.  According to an August 18, 2008 article in *Texas Lawyer*,

---

[44] Even so, there is no appreciable difference between the median times from filing to disposition and from filing to trial in the two districts – the Eastern District of Texas is 9.2 months and 18.5 months, respectively and the District of Oregon is 10.4 months and 23 months, respectively.  See Exhibit 19, Judicial Caseload Profiles.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

U.S. Magistrate Judge Chad Everingham of Marshall says he and Ward held July 29 status conferences for about 30 [patent] cases, the bulk of which were filed in the latter half of 2007. Trial settings for those cases are in the summer of 2011, Everingham says.  Everingham says his best guess is that cases being filed now will be set for trial in late 2011 or early 2012.[45]

By comparison, when a similar argument was made to Magistrate Judge Hubel in the

*CollegeNET* matter (comparing this Court's docket to the Eastern District of Virginia) Judge

Hubel dismissed the statistical inquiry, observing:

> Furthermore, while the Eastern District of Virginia may dispose of cases more quickly than the District of Oregon, Oregon's docket is relatively fast compared with other districts and the schedule set for this case anticipates a trial within twelve months of filing the case. The difference in time between the two districts is not enough to warrant upsetting plaintiff's choice of forum or to disregard the first to file rule.

*CollegeNET, Inc. v. ApplyYourself, Inc.*, Case No. 3:02-cv-00484, 2002 WL 33962845 *5

(D. Or. July 26, 2002).  Clearly, the one year period to trial in the District of Oregon is

significantly shorter than the three to four years to trial in patent cases estimated by the very

judges before whom Traffic's Eastern District of Texas cases are currently pending.

Magistrate Judge Hubel also pointed out that the Eastern District of Texas has seven

district judges, but no active senior judges and seven magistrate judges.  This District has six

district judges and six magistrate judges, in addition to four active senior judges.  [Findings and

Recommendations, at page 13]

## 2.    Transfer to the Eastern District of Texas Would Not Advance Judicial Efficiency

Finally, Traffic argues that the Eastern District of Texas' accumulated knowledge of the

patents and parties in the other pending cases creates judicial efficiency.  This analysis ignores

---

[45] Exhibit 20, M. Robbins, *Eastern District Rocket Docket Decelerates in Marshall Division*, Texas Lawyer, August 18, 2008.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

the fact, however, that these various lawsuits involve <u>separate and unrelated parties</u> and, other

than one of several allegedly infringing products distributed by T-Mobile, <u>separate and unrelated</u>

<u>products</u>.  *See Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 655 (D.

Del. 2008) ("BSC is not a party to the New Jersey litigation, although the same product and same

patents are involved in both suits"); *Warner v. Stryker Corp.*, Case no. 6:08-cv-06368, 2009 WL

1773170 *1 (D. Or., June 22, 2009) (common theory of liability does not render plaintiffs'

claims "arising out of" the same transaction, occurrence or series of transactions).  Thus, the

central issue of a patent case – whether the specific accused product infringes the identified

claims of a valid enforceable patent – is likely to be unique with regard to each of the lawsuits.

Indeed, in view of the expected differences among parties and accused products, consolidation of

issues for trial may well prove to be judicially inefficient and confusing to the fact finder, as was

noted in *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 133 (S.D.N.Y. 2003):

> Pergo's main argument is that the transfer of the actions from this Court
> would result in the possibility of inconsistent judgments….Pergo's
> apprehension is misplaced, given that the products alleged to have been
> infringing are not the same and the two sets of defendants are unrelated. …
> Without ever raising any concerns about the potential for inconsistent
> judgments, courts consistently deny the joinder of unrelated parties into one
> action, even where the infringement of the same patent is alleged, and thereby
> allow for the actions against those defendants to proceed separately. See, e.g.,
> *Androphy*, 31 F.Supp.2d at 623; *New Jersey Machine*, 1991 WL 340196, at
> *1-*2.

*See also Nice Systems, Inc. v. Witness Systems, Inc.*, Case no. 1:06-cv-00311, 2006 WL

2946179, *3 (D. Del. October 12, 2006) (despite "some overlap of parties, products, and

technologies" transfer not warranted where actions were at various stages of litigation);

*Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008)

24- RESPONSE TO OBJECTIONS TO FINDINGS AND
RECOMMENDATION

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

(noting that competing infringement case was "broader in some regards" and "narrower" in others and, thus, of limited relevance to analysis of section 1404(a) analysis).

Traffic chides Magistrate Judge Hubel for failing to follow the precedents of *Continental Grain Co. v. The FBL-585*, 364 U.S. 19 (1960), *In re Volkswagen of Am., Inc.*, 566 F.3d 1349 (Fed. Cir. 2009), and *General Tire & Rubber Co. v. Warkins*, 373 F.2d 361 (4th Cir. 1966) regarding the existence of related litigation supporting transfer. These cases, however, do not argue against Magistrate Judge Hubel's conclusion. Unlike the present case, all three precedents cited by Traffic involved the same parties and identical issues in the related cases pending in the transferor venues.

The first precedent, *Continental Grain*, was not a patent case, but concerned a barge with cargo that sank.[46] The barge owner sued the cargo owner for negligence in one jurisdiction, while the cargo owner sued the barge owner for negligence in another. In that case, unlike the present case, the parties in the two suits were identical, the relevant facts were identical, and the legal principles involved were identical. Additionally, the convenience of the witnesses was shown to be strong in the transferee court. Thus, *Continental Grain* gives no guidance on the issues presented here.

The second precedent, *Volkswagen*, was an action for mandamus, where a patent infringement action was filed against a defendant in Texas and that defendant filed a declaratory judgment action in Michigan. The Michigan action was transferred to Texas, following the "first to file" doctrine and the Federal Circuit declined to overrule that decision in an earlier appeal.[47]

---

[46] The case largely dealt with the balance between the convenience of the transferee district and the "fiction" that, in admiralty, a vessel is considered a person with the result that the transferee court could not have had original jurisdiction over the *in rem* action against the vessel.
[47] *In re Volkswagen of Am., Inc.*, 296 Fed. Appx. 11, 13 (Fed. Cir. 2008).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Thereafter, Volkswagen sought to have the combined matter sent back to Michigan.  The Texas

court denied transfer, in light of the pendency in Texas of other cases involving the same patents

in that district.  The Federal Circuit affirmed the trial court's weighing of the facts, finding that

"[i]n this case, the existence of multiple lawsuits involving the same issues is a paramount

consideration...."[48]  *Volkswagen* does not give guidance to the facts in the present case, however,

because the parties and issues are not identical.  Indeed, the "first to file" doctrine as applied to

cases between Google and Traffic clearly supports <u>Google's</u> choice of forum in this District.

Thus, the case does <u>not</u> counsel abandoning the weighing of all factors in light of the presence of

other similar cases in the transferee district, as Traffic would argue.

     The third precedent, *General Tire*, concerned a motion to transfer that had been denied

but which was reasserted after factual circumstances in the case changed.  Specifically, the

transferor court included a party not present in the action in the transferee court; when that party

settled and was removed from the case, the remaining parties in the two actions were identical.

In essence, changed circumstances required a rebalancing of the relevant factors that caused the

appellate court to reconsider its previous position.  No such change in circumstances is argued by

Traffic, and Magistrate Judge Hubel's careful balancing of the factors should be adopted.

    **3.**    **Local Interest And Imposition of Jury Duty on Community Weigh Against Transfer**

     The Eastern District of Texas has no special connection to this case because the

Defendants' alleged infringement is not unique to that venue.  *TS Tech*, 551 F.3d at 1321

("[T]he vehicles containing TS Tech's allegedly infringing headrest assemblies were sold

---

[48] *Volkswagen* does not elaborate on the other factors weighed by the trial court, finding that, given the posture of the case (mandamus), it could not find "a clear abuse of discretion or usurpation of judicial power."  *Volkswagen*, 566 F.3d at 1351.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue"). Traffic's attempt to portray its own litigation efforts in Marshall, Texas as "substantial contacts" by Google with that forum is circular reasoning at its finest.[49]

With respect to Traffic's contacts with the transferee forum, Traffic has failed to identify any actual business it does in the Eastern District of Texas other than the business of filing lawsuits. Where a plaintiff attempts to manufacture venue, courts routinely transfer the case. *See*, *e.g.*, *Surfer Internet Broad. of Miss., LLC v. XM Satellite Radio Inc.*, Case no. 4:07-cv-034, 2008 WL 1868426, at *1 (N.D. Miss. Apr. 24, 2008); *Gemini IP Tech. v. Hewlett-Packard Co.*, Case no. 07-C-205-S,, 2007 WL 2050983, at *1 (W.D. Wisc. July 16, 2007); *Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, 79 U.S.P.Q. 2d 1603 (C.D. Cal. 2006). As the *Gemini IP Tech.* court stated, "there is nothing to suggest that *[the transferee forum]* is a convenient forum for the plaintiff in the sense of § 1404(a). The only apparent connection between plaintiff and *[the transferee forum]* is that it was organized here for purposes of establishing venue. There is no suggestion that it has employees or officers in *[the transferee forum]* or that anyone likely to give relevant testimony resides here." *Gemini IP Tech.*, 2007 WL 2050983, at *1. By contrast, the majority of the inventors of the Traffic Patents and of Traffic's principals have resided in the District of Oregon at least since the time the patent was filed and prosecuted. Therefore, this forum

---

[49] The fact that Google has been sued, against its will, in the Eastern District of Texas is completely irrelevant. *See Gemini*, 2007 WL 2050983, at *2 ("A corporation does not forfeit its right to claim greater convenience in another forum because it is large or because it has litigated there in the past.").

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

has a far more meaningful connection to the underlying issues in this litigation than the forum sought by Traffic.

As discussed above, the District of Oregon is also closer to the locus of the alleged infringement than the Eastern District of Texas.  *See The Whistler Group, Inc. v. PNI Corp.*, No. 03-1536, 2003 WL 22939214, at *4 (N.D. Tex. Dec. 5, 2003) ("In a patent infringement action, the preferred forum is that which is the center of gravity of the accused activity . . . In finding that center of gravity, a district court should consider the location of a product's development, testing, research, and production"); *Laitram Corp. v. Hewlett-Packard Co.*, 120 F. Supp. 2d 607, 609 (E.D. La. 2000) ("A fundamental principle guiding the Court's [transfer] analysis is that litigation should proceed in that place where the case find its center of gravity . . . Relevant considerations in determining the center of gravity in a given case include the location of a product's development, testing, research, and production, and the place where marketing and sales decisions were made.") (internal quotation marks omitted).

From a pure burden standpoint, it is also less onerous to expect jurors in the District of Oregon to hear this case than jurors in the Eastern District of Texas.  The estimated population of the Eastern District of Texas is 2.9 million people.[50]  The approximate population of the District of Oregon is 3.8 million.[51]  Taking into account that the Eastern District of Texas completed 24 trials in 2008 compared to the 16 trials completed during the

---

[50] See Exhibit 21, E.D. Tex. U.S. Attorney Information ("According to the 2000 U.S. Census figures, over 2.9 million people make their homes in the Eastern District of Texas.).
[51] See Exhibit 22, Quick Facts from U.S. Census Bureau (population of Oregon is 3,790,060).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

same period in this District, the burden on the jury pool would clearly be greater in the Eastern District of Texas.

Accordingly, trial in the Eastern District of Texas, a venue without a unique connection to this case, would place an undue burden on a smaller jury pool already hearing a greater number of cases. As well, the *situs* of facts underlying the alleged invention and the residence of the inventors and Traffic's principals create a greater local interest in the District of Oregon – compared with no such interest in the Eastern District of Texas. Accordingly, these factors weigh against transfer.

### 4. Familiarity with Governing Law and Avoidance of Conflicts of Law Are Neutral Factors.

Given that this dispute concerns federal patent law, familiarity with governing law and the potential for conflicts of law are neutral factors in the transfer analysis. *See Vestas-American Wind, Technology, Inc. v. Beaird Co., Ltd.*, Case no. 3:07-cv-01651, 2008 WL 4164551 *10 (D. Or. Sept. 03, 2008) ("Neither conflicts of law nor the law of the home state are likely to play a part in this federal patent case.")

### E. At Best, Transfer To The Eastern District Of Texas Would Only Shift Convenience

The location of Traffic's principals and the inventors in the District of Oregon, coupled with Google's witnesses and documents being significantly closer to the District of Oregon, undermine Traffic's argument that the Eastern District of Texas is "convenient." At best, Traffic argues only that the Eastern District of Texas is more convenient for <u>Traffic</u> and it seeks to shift the convenience of the plaintiff Google to the defendant Traffic on that basis. In evaluating a similar request in another patent matter, Magistrate Judge Hubel observed:

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

At best, ApplyYourself has shown nothing more than a shifting of inconvenience for evidence or witnesses, which is insufficient to support a change of venue. See *Harrison v. International Ass'n of Machinists & Aerospace Workers*, 807 F. Supp. 1513, 1517 (D. Or. 1992) (plaintiff's choice of forum controls when transfer only serves to shift the burden of inconvenience).

*CollegeNET, Inc.,* 2002 WL 33962845 at *4.

### F.     Overall, the "Interest of Justice" Weighs Against Transfer.

In his well-reasoned opinion, Judge Hubel pointed specifically to the presence of key witnesses in the state of Oregon, and the proximity of Google's witnesses in Northern California and Washington to conclude that "this court is closer to the milieu of GMM, the allegedly infringing device, and to the activity centered around the production of both GMM and the Traffic Patents, than the Eastern District of Texas."  (Findings and Recommendation, page 14) Weighing this against the presence of cases involving parties other than Google and products other than GMM in Texas, he concluded that these latter facts do not "trump[] Google's effort to locate this case in a district closer to the hub of activity pertinent to this case and to key witnesses."  *Id.*  Magistrate Judge Hubel's weighing of the interests of justice in this case was proper and should be adopted.

### 1.     The "Interest of Justice" Is Not Limited to Whether Related Cases Exist in the Transferee Forum.

Traffic has conflated the interest of justice with judicial efficiencies gained by hearing cases involving the same patents in the same courts, and ignored all other considerations necessary to an examination of the "interests of justice."  However, "[t]he *a priori* premise that two related cases are best tried together does not necessarily mean *a posteriori* that two such cases should be combined *anywhere*.  Duplicative litigation, though regrettable, is in some

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

situations unavoidable." *Delphi Corp. v. Automotive Technologies Int'l., Inc.*, Case no. 08-cv-11048, 2008 WL 2941116 *6 (E.D. Mich. July 25, 2008).

A number of courts have denied transfer to a forum in which allegedly "related" cases are pending because at least one of the convenience factors weighed against transfer.

> The pendency of related litigation in another forum is a proper factor to be considered in resolving choice of venue questions, see, e. g*., Firmani v. Clarke*, D.Del., 1971, 325 F.Supp. 689; *Thomson & McKinnon v. Minyard*, S.D.N.Y., 1968, 291 F.Supp. 573, and may have been decisive in a number of cases **where the convenience factors were inconclusive**, see, e. g., *Pesin v. Goldman, Sachs & Co.*, S.D.N.Y., 1975, 397 F.Supp. 392; *Medtronic, Inc. v. American Optical Corp.*, D.Minn., 1971, 337 F.Supp. 490; *Maxlow v. Leighton*, E.D.Pa., 1971, 325 F.Supp. 913.   **However, we have found no case where it has carried the day against factors pointing in the other direction.**

*Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 739 (1st Cir. Mass. 1977) [emphasis added].  The Eastern District of Texas has explained that, while transfer may be appropriate if significant work has been done by the court in the transferee venue, when the court has had limited involvement in the case and the overlap between the cases is limited, transfer will only produce "minimal gains in judicial efficiency."  *See J2 Global Communications, Inc. v. Protus IP Solutions, Inc.*, Case no. 6:08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) .  Here, neither court has invested significant time and the only court that has issued a Scheduling Order is this Court.  *See Invitrogen Corp. v. Incyte Genomics, Inc.*, Case no. 01-692, 2002 WL 883963 *3 (D. Del. May 1, 2002) ("Although this case involves the same patents as those under consideration in Maryland, the record does not reflect that the Maryland cases are close to trial or resolution.").  Furthermore, as previously discussed, it is entirely speculative as to whether the Eastern District would coordinate discovery, claim construction hearings and trials in the non-

Google infringement actions currently pending in order to yield the supposed efficiencies outlined in Traffic's motion.

The cases relied upon by Traffic in its Brief to Magistrate Judge Hubel are inapposite to the facts of this particular case. Traffic errs in relying upon *Allen v. Scribner*, 812 F.2d 426, 436-37 (9th Cir. 1987) for the proposition that the "interest of justice" compels transfer to the Eastern District of Texas. In *Allen*, the defendant waited three and a half years before seeking transfer. *Id.* Moreover, despite the defendant's argument to the contrary, the *Allen* court found that the bulk of the cause of action had taken place in the transferor forum. *Id.* The interest of justice was not "alone determinative."[52] *Id.* Accordingly, the Ninth Circuit upheld the district court's <u>refusal</u> to transfer the case. *Id.* Here, neither this case nor Traffic's cases in the Eastern District of Texas have been pending for a significant period of time. Given the likely prospect of delay should this case be transferred to the Eastern District of Texas, the "interest of justice" cautions <u>against</u> transfer.

### 2. Transfer to the Eastern District of Texas Would Reward Traffic's Forum Shopping and Indirect Pursuit of Google's Business Partners

Traffic's logic would improperly allow Traffic to file one case in a place of its choosing and thereby preempt any other accused infringer from commencing an action against it on similar issues elsewhere.[53] Granting Traffic's motion would reward forum shopping[54] and ignore the heavy presumption given in the Ninth Circuit to the appropriateness of a plaintiff's choice of

---

[52] Memo. at 7.

[53] Traffic has not commenced an action against Google in any other forum. *See Birmingham Fire Ins. Co. v. UP North Plastics, Inc.*, 2004 WL 838169 (D. Minn. April 19, 2004) ("Although the issues in this Court and in the Texas court may overlap…Birmingham Fire is not a named party in the Texas action.").

[54] Of the four Traffic cases currently pending in the Eastern District of Texas, two were filed after Google filed the present lawsuit. See *supra* n.20. *See Borgwarner, Inc. v. Hilite Int'l, Inc.*, Case no. 07-c-3339, 2008 WL3849908, at *6 (N.D. Ill. Aug. 14, 2008) (transfer on basis of later-filed claims "would reward [defendant] for what is basically forum shopping).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

venue, as pointed out in *Stomp, Inc. v. NeatO*, LLC, 61 F. Supp. 2d 1074, 1082 (C.D. Cal. 1999) ("transferring the case to the District of Connecticut because NeatO has filed other patent infringement actions there would allow Defendant to avoid the requirements of the "first-to-file" rule by suing multiple parties in separate actions.").

Traffic's argument that its lawsuits against T-Mobile USA and other non-Google entities mandate transfer to the Eastern District of Texas also undermines the objectives of the Declaratory Judgment Act. "[L]itigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). As stated in *Codex*, 553 F.2d at 737-38:

> At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit….it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.

*Id.* (citations omitted).

Permitting transfer solely on the basis of lawsuits against Google's, or anyone else's, customers would allow Traffic to "bootstrap" Google into a clearly inconvenient forum.

> Nor are we fully convinced of the propriety of using another customer suit of another manufacturer, which, incidentally, may have very different collateral issues, as a magnet to draw a suit to a jurisdiction where it otherwise should not be. This would mean that if a patentee brings enough suits in what, in all respects, other than its personal hope of a favorable outcome, is an unnatural and inconvenient forum from the standpoint of trial, it can bootstrap itself into staying there.

*Codex*, 553 F.2d at 739.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Given that the purpose of the Declaratory Judgment Act is to permit the party who actually created the allegedly infringing product or service to resolve the sort of uncertainty raised by Traffic's multiple lawsuits against distributors and end users, transfer would undermine the objectives of the Declaratory Judgment Act by negating Google's choice of forum. *See Arrowhead*, 846 F.2d 734-35; *Delphi*, 2008 WL 2941116 at *6 ("analysis of the customer-suit exception advises against transferring this case to Texas").

## V.    Conclusion

It is beyond dispute that Traffic alleged that the Google GMM product infringes the Traffic Patents when used on a T-Mobile phone, and that such assertions to at least one Google customer gives this Court jurisdiction to hear the declaratory judgment action presented to it. Traffic's request for transfer seeks only to shift burdens in this matter, not to increase judicial efficiency or accommodate the location of key witnesses.  For the reasons set forth above, this Court should adopt Magistrate Judge Hubel's Findings and Recommendation in their entirety.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

DATED:  March 11, 2010

Respectfully submitted,


s/ Julia E. Markley
Julia E. Markley, OSB No. 000791
JMarkley@perkinscoie.com
**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222


Thomas H. Shunk (Ohio Bar No. 0025793)
Christina J. Moser (Ohio Bar No. 0074817)
**Baker & Hostetler** LLP
3200 National City Center
1900 East Ninth Street
Cleveland, Ohio  44114-3485
Telephone: 216.621.0200
Facsimile: 216.696.0740

(admitted *pro hac vice*)

Attorneys for Plaintiff