FILED
MAY ~ 4 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

GOOGLE, INC.,            )
a Delaware Corporation,  )
                         )
         Plaintiff,      )
                         )   Case No. CV09-642-HU
    vs.                  )
                         )   FINDINGS AND
TRAFFIC INFORMATION, LLC,)   RECOMMENDATION
a Texas corporation,     )
                         )
         Defendant.      )
_____)

Julia E. Markley
Perkins Coie, LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209
(503) 727-2000

Thomas H. Shunk
Christina J. Moser
Baker and Hostetler LLP
3200 National City Center
1900 E. Ninth Street
Cleveland, OH 44114
(216) 861-7592

         Attorneys for Plaintiff

1  - FINDINGS AND RECOMMENDATION

Robert A. Schlachter
Timothy S. DeJong
209 S.W. Oak Street, Suite 500
Portland, OR 97204
(503) 227-1600

C. Dale Quisenberry
Polasek, Quisenberry & Errington, LLP
6750 West Loop South, Suite 920
Bellaire, TX 77401
(832) 778-6000

        Attorneys for Defendant

HUBEL, Magistrate Judge:

Plaintiff Google, Inc. (Google) seeks a declaration from the court that (1) its software product "Google Maps for Mobile" (GMM) does not infringe U.S. Patent No. 6,466,862 ('862 patent) or U.S. Patent No. 6,785,606 ('606 patent) issued to Defendant Traffic Information, LLC (Traffic), and/or (2) Traffic's '862 patent and '606 patent are invalid. In this proceeding, the parties' seek the court's construction of claim terms in both patents.

## **BACKGROUND**

The Abstract for both the '862 and '606 patents describes:

> A system for providing traffic information to a plurality of mobile users connected to a network. The system comprises a plurality of traffic monitors, each comprising at least a traffic detector and a transmitter, the traffic detector generating a signal in response to vehicular traffic and the transmitter transmitting the signal. A receiver receives the signals from the traffic monitors. A computer system is connected to the receiver and is further connected to the network. The computer system in response to a request signal received from one of the users transmits in response thereto information

representative of the signals transmitted by the traffic monitoring units. Alternative systems for gathering traffic information are disclosed.

Plf. Exs. B and C.

The '862 patent has 34 claims and the '606 patent has 23 claims. The specifications for both patents are identical. They describe a system whereby traffic monitors, using detectors to generate signals in response to vehicular traffic, transmit the signals to receivers, which in turn send the signals to a computer system. The computer system is connected to a network of users of the information. The computer system transmits the signals relating to vehicular traffic to the users in response to their requests. The network of users is a system comprised of mobile user stations each of which has a display, global positioning receiver, and communication device allowing it to send and receive signals. The computer system is able to send the signals to and receive them back from the user stations.

## STANDARDS

**Claim Construction**.

The construction of patent claims is a matter of law to be resolved by the court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 384 (1996). The goal of claim construction is to interpret what the patentee meant by a particular term or phrase in a claim. Renishaw PLC v. Marposs SpA, 158 F.3d 1243, 1249 (Fed. Cir. 1998).

3  - FINDINGS AND RECOMMENDATION

In construing a patent's claim language, the words used in the claim "are generally given their ordinary and customary meaning[.]" Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application.  Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005).  In some cases, the ordinary meaning of claim language as understood by a  person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.  Id. at 1314.  However, a person of ordinary skill in the art is deemed to read the claim term in the context  of both the particular claim in which the disputed term appears, and the entire patent, including the specification.  Id. at 1313.

To construe the claim, i.e., determine its meaning, the court may consult various sources, including both intrinsic evidence, such as the words used in the claim, the claim specification, and, if in evidence, the prosecution history, and extrinsic evidence, such as relevant scientific principles, the meaning of technical terms, and the state of the art.  Vitronics, 90 F.3d at 1582.

**Intrinsic Evidence.**

The court first looks "to the words used in the claim themselves . . . to define the scope of the patented invention." Vitronics, 90 F.3d at 1582. "[W]ords in a claim are generally given their ordinary and customary meaning, [but] a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." Id. "A technical term used in a patent document is interpreted as having the meaning that it would be given by persons experienced in the field of the invention, unless it is apparent from the patent and the prosecution history that the inventor used the term with a different meaning." Id.

The court "review[s] the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts a dictionary when it expressly defines terms used in the claim or when it defines terms by implication." Id. It "contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it." Id. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Id. The court "may also consider the prosecution history of the patent, including any express representations made by the applicant regarding the scope of the claims. Id.

**Extrinsic Evidence.**

If a claim term's construction is still unclear after considering intrinsic evidence, the court may consider extrinsic evidence to construe the term, such as "expert and inventor testimony, dictionaries, and learned treatises." <u>Datamize, LLC v. Plumtree Software, Inc.</u> 417 F.3d 1342, 1348 (Fed. Cir. 2005). "What matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." <u>Id.</u>, citing <u>Phillips</u>, 415 F.3d at 1314.

**Indefiniteness of Claim Terms.**

"Indefiniteness requires a determination whether those skilled in the art would understand what is claimed." <u>Enzo Biochem, Inc. v. Applera Corp.</u>, 599 F.3d 1325, 1332 (Fed. Cir. 2010)(internal quotation marks omitted).  To make that determination, general principles of claim construction apply.  <u>Id.</u> at 1331 (internal quotation marks omitted). "Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence." <u>Datamize, LLC v. Plumtree Software, Inc.</u>, 417 F.3d 1342, 1348 (Fed. Cir. 2005). A determination that a patent claim is invalid for indefiniteness is a question of law as part the court's responsibility to construe the patent claims.  <u>All Dental Prodx, LLC v. Advantage Dental Products, Inc.</u>, 309 F.3d 774 (Fed. Cir. 2002).

## DISCUSSION[1]

The parties seek construction of the following claim terms: Traffic Information; Traffic Information Representative of Said Signals Transmitted by Said Traffic Monitors; Traffic Information Database; Information Representative of Selected Portions of Said Traffic Information Database; Less than all Available Traffic Information; Providing in Response thereto; Vehicular Movement; Traffic Monitor; and  Mobile User Station.

**Terms Related to "Traffic Information."**

The term "traffic information" appears in the claims asserted for the '862 and the '606 patents and in the specifications for those patents.   The same term associated with additional claim language also appears in both patents.   The court construes the term standing alone and as associated with the additional language.

**Traffic Information.**

Claim 1 of the '862 patent asserts in relevant part:

> A system for providing <u>traffic information</u> to a plurality of mobile users connected to a network, comprising:
>
> . . . .

---

[1] At the Markman Hearing, the parties advised the court they had reached agreement in construing the claim terms "computer system," "displayed graphically," and "map database".   Each of these terms appears in the '862 patent, and the terms "computer system" and "displayed graphically," also appear in the '606 patent.   Traffic's counsel further advised the court that it had withdrawn Claim 9 of the '862 patent, in which the disputed claim term "said user" appears.

> (e) [a] computer system in response to a
> request for <u>traffic information</u> . . .
> providing <u>traffic information</u> representative
> of said signals transmitted by said traffic
> monitors.

'862 patent, 22: 34-35; 50-55.

<u>Google's Proposed Construction</u>.

Google contends "traffic information" is indefinite standing alone.  Construed as "traffic information representative of said signals transmitted by said traffic monitors," it is "the current speed, frequency, or flow of multiple vehicles traveling along a road as detected by one or more traffic monitors."

<u>Traffic's Proposed Construction</u>.

Traffic contends "traffic information" means "data regarding traffic conditions, which data can include, <u>but is not limited to</u> the speed, velocity, motion, density, flow, frequency of vehicles on a road, and/or other data representative of the movement of vehicles on a road."  (Emphasis added).

<u>Analysis</u>.

The parties' dispute focuses on Traffic's construction of the term "traffic information" as incorporating data not limited to the movement of vehicles on the road.  Google contends the patent's specification does not describe "any meaningful limits" to the "traffic information" that is intended to be derived from the traffic monitors, fed into the computer, and transmitted to user stations.  Accordingly, the claim term is indefinite.

8  - FINDINGS AND RECOMMENDATION

During the Markman Hearing, however, Traffic conceded the claim language "is not limited to" is redundant of the word "include" and therefore, should be read out of the claim. In so doing, Traffic contends any uncertainty as to the scope of the term "traffic information" is removed.

Traffic also describes "traffic information" as it is used in the claim terms and clarified in the specification to include data derived from traffic monitor signals, such as the speed, velocity, and frequency of vehicles on the road, as well as the traffic density and flow, average vehicle speed, and a vehicle's position, or change of position on the road.

The court concludes the claim term "traffic information," as described in the specification and with the words "is not limited" deleted, does not circumscribe the information as to a vehicle's speed on the road to "current speed" as urged by Google. The court also concludes Traffic's construction captures the meaning of the term as asserted in the claim and described in the specification.

On this record, therefore, the court's construction of the claim term "Traffic Information" is as follows:

> the actual speed, average speed, direction of travel, frequency, and position of vehicles traveling on a road, and other data that is representative of the movement of vehicles traveling on a road, as detected by one or more traffic monitors.

In light of this construction, the court rejects Google's assertion that the claim term "Traffic Information" is indefinite.

9  - FINDINGS AND RECOMMENDATION

**Traffic Information Representative of Said Signals Transmitted by Said Traffic Monitors.**

Based on the construction of "traffic information," which describes traffic information as being "detected" by traffic monitors, the term "representative of said signals transmitted by said traffic monitors" means "traffic information detected and transmitted by traffic monitors."

**Traffic Information Database Containing Data Representative of Traffic**

Claim 21(c) of the '862 patent asserts:

> A system for providing traffic information to a plurality of mobile users connected to a network, comprising:
>
> said computer system including . . . a <u>traffic information database containing data representative of traffic</u> at a plurality of locations.

'862 patent:  24: 12-13; 24-27.

<u>Google's Proposed Construction</u>.

Google contends "traffic information database" is indefinite to the extent the database is described as being "representative of traffic." Alternatively, Google asserts the claim term should be construed as "a database containing the current speed, frequency, or flow of multiple vehicles traveling along a road."

<u>Traffic Information's Proposed Costruction</u>.

Traffic contends the term "traffic information database" is not indefinite and should be construed as meaning "a collection of

10 - FINDINGS AND RECOMMENDATION

traffic information." Traffic cites examples of the type of information stored in the database as described in the patent's specification, such as "the associated road," "the direction that traffic moves at that location," and the "average vehicle velocity calculated for that location." '862 patent, 15:19-25.

<u>Analysis</u>.

The specification for the '862 patent describes how the traffic information database is derived and disseminated:

> The traffic information database may be derived from information obtained from stationary traffic monitors, mobile user stations, or a combination thereof.

'862 patent, 5:16-18.

> At least one of the mobile user stations provides a request to the computer system for information together with the respective geographic location of the mobile user station. In response to the request, the computer system provides to the mobile user station information representative of selected portions of the . . . traffic information database.

'862 patent, 5:3-10.

Based on these specifications, the court concludes the term "traffic information database" is not indefinite. The court construes the term as "all traffic information collected by traffic monitors and/or mobile user stations, and transmitted, calculated, and stored in the computer system." The "traffic information" collected and calculated in, and disseminated from the database is as construed above.

11 - FINDINGS AND RECOMMENDATION

**Information Representative of Selected Portions
of said Traffic Information Database.**

Claim 21(c) of the '862 patent asserts in relevant part:

> A system for providing traffic information to a
> plurality of mobile users connected to a network,
> comprising:
>
> > (d) at least one of the mobile user
> > stations providing a request to said
> > computer system for information together
> > with a respective geographic location of
> > said one of said mobile user stations,
> > and in response thereto, said computer
> > system providing to said one of said
> > mobile user stations <u>information</u>
> > <u>representative of said map database and</u>
> > <u>said selected portions of said traffic</u>
> > <u>information database</u>.

'862 patent, 24:13-14 and 28-35.  (Emphasis added).

<u>Google's Proposed Construction</u>.

Google contends this claim term is indefinite because the
entity selecting portions of the traffic information database is
unclear and the type of information being selected is not
identified.  In the alternative, Google contends the claim should
be construed to mean that the user selects information from the
traffic information database that is to be provided by the computer
system, and the information selected is "traffic information" as
construed by Google, <u>i.e.</u>, the current speed, frequency, or flow of
multiple vehicles traveling along a road as detected by one or more
traffic monitors."

<u>Traffic's Proposed Construction</u>.

Traffic construes the term to mean "certain data from the map database and certain data from the traffic database are transmitted to the mobile user station." Traffic contends Google inappropriately attempts to insert new language into the claim by insisting that the entity selecting the information be declared.

<u>Analysis</u>.

Claim 21(d) provides for the mobile user station to request the information. The specification also states:

> The present invention provides several alternative methods for displaying traffic information to a <u>commuter using a mobile user station</u>. These various alternatives <u>allow the user to customize the display to provide the desired information, and to minimize the amount of operation needed while driving</u>.

'862 patent, 15:57-62. (Emphasis added). The specification provides for the commuter who is using the mobile user station to select the desired "traffic information" (as construed above) "based on either the geographic location of the user, or for the geographic location requested by the user." <u>Id.</u>, 15:39-41. The mobile user station also allows the user to:

> preselect the scale of the map which will be displayed based on the user's preference. For example, the user may wish to show an area of one mile radius centered around the user, or two miles, or so forth.

'862 patent, 17:6-10.

13 - FINDINGS AND RECOMMENDATION

Based on these specifications, the court adopts Google's construction of the term "selected portions of said traffic information database" and construes it to mean the "user of the mobile user station selects portions of the traffic information database that are to be displayed on the mobile user station."

However, in light of the court's contrary construction of the claim term "traffic information," the court does not adopt Google's proposed construction describing the nature of the "selected portions of said traffic information" that may be displayed by the mobile user station.  The "selected" traffic information includes that information contained in the "traffic information database," as construed by the court.  See pp. 10-11, infra.

**Less Than All Available Traffic Information.**

Claim 22 of the '606 patent claims a system for providing traffic information to a plurality of mobile users "wherein less than all available traffic information is displayed" by a mobile user station."  (Emphasis added).  '606 patent, 24:56-57.

Google's Proposed Construction.

Google contends this claim term is indefinite and, therefore, invalid, because neither the claim nor the specification provides a measure as to "what portions of the collected traffic information should be provided, or what amount 'less than all available' is sufficient to practice the invention."  See Enzo Biochem, Inc. v. Applera, Corp., 599 F.3d 1325, 1332 (Fed. Cir. 2010)("When a 'word

of degree' is used, the court must determine whether the patent provides some standard for measuring that degree."

Traffic's Proposed Construction.

Traffic asserts "less than all available traffic information" means "the computer system may send traffic information corresponding to only some of the traffic monitors." Traffic contends a claim term is not required to identify the degree with "mathematical precision." In any event, Traffic asserts the term "less than all available traffic information" means "between zero and one hundred percent of the traffic information." Traffic asserts that language provides a very clear limit." As such, Traffic urges the court to construe this claim term to mean "the computer system may send traffic information corresponding to only some of the traffic monitors."

Analysis. The claim term suggests some travel information will be displayed by a mobile user station, i.e., the user of the mobile user station selects portions of the traffic information database. It is clear that the system will never or at best rarely display "all traffic information" for all geographic positions. As discussed above (p.13 supra), selected portions of the data are contemplated to be displayed. The user is able to select for display traffic information for his current location or to select a different location for display. The user may also select the scale to be displayed, for instance a 1 or 2 mile radius or some

15 - FINDINGS AND RECOMMENDATION

other scale.  The user's "selected portions" may be between "zero and 100% of the traffic information" database, which, by definition is "less than all available traffic information." This flexibility of the system does not render the claim term indefinite.

Construed as requested by Traffic, the court concludes the claim term "less than all available traffic information" as used in Claim 22 of the '606 patent is not indefinite.

**In Response to a Request for Traffic Information.**

Claim 1(e) of the '862 claims in relevant part:

> a system for providing traffic information to a network" in which:
>
> > (e) said computer system, <u>in response to a request for traffic information</u> from one of said mobile user stations, <u>providing in response thereto traffic information</u> representative of said signals transmitted by said traffic monitors.

'862 patent, 22:34-35; 6-10. (Emphasis added).  Claims 1(g) and 21(d) of the '862 patent, and Claim 11(d) of the '606 patent also use the language "in response to" in a related manner.

<u>Google's Proposed Construction</u>.

Google construes this term to mean that the computer system responds to a request for traffic information at the same time, <u>i.e.</u>, simultaneously, with the request for such information by the mobile user station.  "Traffic's system must request and provide information at the same time" because, otherwise, the claim describes a "system" and a "method," <u>e.g.</u>, a user of the system who

16 - FINDINGS AND RECOMMENDATION

inputs data requesting the information.    See IPXL Holdings v.
Amazon.com, Inc., 430 F3d. 1377, 1384 (Fed. Cir. 2005("A single
claim which claims both an apparatus and the method steps of using
the apparatus is indefinite").   Google contends its construction
comports with "the advantages touted by the patent, that the system
provides contemporaneous traffic information."  Google contends any
other construction renders the claim invalid under IPXL Holdings
because it requires construing the claim as involving both a system
and a method.

Traffic's Proposed Construction.

Traffic asserts the claim does not describe a system and
method but, rather, is an "apparatus claim containing functional
limitations."    See Ricoh Co. V. Katun Corp., 486 F. Supp.2d 395,
402 (D.N.J. 2005)("It is well-settled that a functional limitation
- an attempt to define something by what it does rather than by
what it is - is a permissible means of articulating a claim
limitation.").

Analysis.

On this record, the court agrees with Traffic that neither the
claim, nor its specification describes the need for a user to take
any steps to cause the mobile user station to request information
from computer system.  A representative claim specification states:

> At least one of the mobile user stations
> provides a request to the computer system for
> information    together    with    respective
> geographic    location    of    the    mobile    user

station.   In response to the request, the
computer system provides to the mobile user
station information representative of
selective portions of the traffic information
base . . .

'862 patent, 5: 3-6.

The specification describes the apparatus and its functional

limitations.  It does not describe a system and method for using

the system.  See Leader Technologies, Inc. v. Facebook, Inc., ____

F. Supp.2d ____, 2011 WL 881862 *17 (D. Del. Mar. 14, 2011).  In

that case, the patent claim, inter alia, described a "computer-

implemented network-based system" comprising  a "context" and a

"tracking component," and also included the language "wherein the

user accesses the data from the second context." Citing Ricoh, the

court rejected the defendant's argument that the two claims

improperly commingled apparatus and method claims because "there is

nothing in the claim language that requires the user to perform

certain steps or take certain actions for the claims elements to be

satisfied."  Id.

The court, however, rejects Google's proposed construction

that the computer system provides the information simultaneously

with the request for it.  To do so would ignore the plain meaning

of the phrase "in response to."  The word "response" means "an act

of responding" or "something constituting a reply or a reaction."

Webster's New World College Dictionary (4th Ed. 2004).  That

18 - FINDINGS AND RECOMMENDATION

definition, necessarily excludes Google's construction that the response from the computer system to the mobile user station is simultaneous with the request.

On the other hand, for the information provided by the computer system to be meaningful, it must be of recent vintage. The specification for the '862 patent provides guidance.    It describes one of the advantages of the system as a whole as "allow[ing] a user to receive contemporaneous [traffic] information, i.e., [it allows the user to obtain immediate information rather than waiting for the broadcast of information at a specified time." '862 patent, 10: 8-12.

Accordingly, the court construes the claim term "in response to a request for traffic information" to mean "the computer system supplies traffic information contemporaneously with the request for the information from the mobile user station."

**Vehicular Movement**.

Claim 1 of the '862 patent and claim 22 of the '606 patent claim:

> A system for providing traffic information to a plurality  of mobile users connected to a network, comprising:
>
> > (a) a plurality of traffic monitors, each said traffic monitor comprising at least a detector and a transmitter, said detector providing a signal including data representative of vehicular movement
> > . . . .

'862 patent, 22: 35-40; '606 patent, 24:39-43.

19 - FINDINGS AND RECOMMENDATION

Google's Proposed Construction.

Google contends "vehicular movement" means the "current speed, frequency, or flow of vehicles along the road, as detected by one or more traffic monitors."  Google contends "vehicular movement, does not include a vehicle's position on the road because the word "position" implies a "static measurement" which is inconsistent with the concept of "movement."

Traffic's Proposed Construction.

Traffic contends "vehicular movement" means the velocity, speed, position, and/or change of position of a vehicle."

Analysis.

The court concludes the term "vehicular movement" includes all of the "traffic information" as construed herein connoting the actual movement of vehicles along the road, including the velocity, speed, and change of position of the vehicle on the road, _i.e._, "direction" of travel, but not "position" in a singular sense for a vehicle.

**Traffic Monitor**.

Claim 1 of the '862 patent and claim 22 of the '606 patent claim:

> A system for providing traffic information to a plurality  of mobile users connected to a network, comprising:
>
> (a) a plurality of <u>traffic monitors</u>, each said <u>traffic monitor</u> comprising at

least a detector and a transmitter. . . .

'862 patent, 22: 35-40; '606 patent, 24:39-43.

Google's Proposed Construction.

Google contends the term "traffic monitor" should be construed to mean "a stationary device capable of determining the current speed, frequency, or flow of multiple vehicles traveling along a road."

Traffic Information's Proposed Construction.

Traffic contends "traffic monitor" should be construed to mean "any device used to sense, measure, detect, and/or determine vehicular traffic movement and transmit and/or provide a signal representative of vehicular movement."

Analysis.

The '862 patent specification describes "traffic monitors" as:

comprising at least a detector and a transmitter, said detector providing a signal including data representative of vehicular movement and said transmitter transmitting said signals.

'862 patent, 22:36-39.

The '862 patent specification describes multiple embodiments of traffic monitor detectors, including radiowaves, lightwaves, microwaves, soundwaves, analog or digital signals, doppler shifts, and pressurized strips across or wire loops under the road, all of which are capable of measuring traffic conditions, including the

21 - FINDINGS AND RECOMMENDATION

present or average speed of vehicles, their position, direction of travel, and their frequency of travel on the road.  '862 patent, 6:25-67.

In addition, the specification states that the computer "system may provide traffic information without the use of monitors at all, relying solely on information derived from the mobile user stations." Id., 13:19-21.

In light of these specifications, the court construes "traffic monitors" to mean "any device, mobile or fixed, that is used to measure, to detect, to determine, and to transmit data regarding multiple vehicles along the road, including the vehicles' speeds or average speeds, their position on the road, their direction of travel, and their frequency of travel in seconds or minutes.

As such, a mobile user station, as construed below, may perform the same function in gathering traffic information as a fixed position traffic monitor.

**Mobile User Station**.

Claim 1 of the '862 patent claims:

A system for providing traffic information to a plurality  of mobile users connected to a network, comprising:

(d) a mobile user station connected to a global positioning system receiver,  a display, and a communicating device, and

(e) [a] computer system, in response to a request from one of said mobile user

> stations, providing in response thereto
> to said one of said <u>mobile user stations</u>
> traffic information representative of
> said signals transmitted by said traffic
> monitors

'862 patent, 22: 46-55.  Claim 1 of the '606 patent claims:

> A system for providing traffic information to
> a plurality  of mobile users connected to a
> network, comprising:
>
>> (a) a plurality of <u>mobile user stations</u>,
>> each <u>mobile user station</u> being associated
>> with a display and a communication device
>> device to allow each of said <u>mobile user
>> stations</u> to send and receive signals, and
>>
>> (d) at least one of said <u>mobile user
>> stations</u> providing a request to said
>> computer system for traffic information
>> together with a signal associated with a
>> respective geographic location of said
>> one of said <u>mobile user stations</u>, and in
>> response thereto, said computer system
>> updating said traffic information
>> database based on said geographic
>> location of said one of said <u>mobile user
>> stations</u> and providing to said one of
>> said mobile user stations information
>> representative of selected portions of
>> said traffic information database . . .

'606 patent, 22: 39-44, 53-64.

<u>Google's Proposed Construction</u>.

Google contends a "mobile user station" is "a mobile device,

<u>distinct from a traffic monitor</u>, capable of determining and

displaying traffic information."  (Emphasis added).

<u>Traffic's Proposed Construction</u>.

Traffic contends a "mobile user station" is "an easily moving

or movable device that can transmit data to and/or receive data

23 - FINDINGS AND RECOMMENDATION

from the network; it may be a cellular phone or other handheld unit, or it may be installed in a car."

Analysis.

The central issue regarding the construction of this term is whether, as contended by Google, a mobile user station cannot be a traffic monitor.  Traffic asserts there is no limitation in the patent claims or specifications that would prevent a traffic monitor from being a mobile user station.

Google relies on the following limitation language set forth in the specification for the '862 patent to support its contention that a mobile user station is not a traffic monitor:

> [T]he [computer] system may provide traffic information without the use of monitors at all, relying on information derived from the mobile user stations.

'862 patent, 13: 19-21.

Traffic, however, asserts that the limitation in the claim specification does not preclude a mobile user station, which is equipped with a global positioning system, from being "a subset" of "traffic monitors."

The court agrees with Traffic.  While the "traffic monitor" and "mobile user station" serve different functions generally, and are separate devices, the specification for the '862 patent plainly describes an embodiment of the mobile user station in which it functions as a non-stationary "traffic monitor."

Accordingly, the court construes the claim term "mobile user

24 - FINDINGS AND RECOMMENDATION

station" as an "easily moveable device that is capable of determining, transmitting, receiving, and displaying traffic information."

## CONCLUSION

The court should construe the claim terms at issue as follows:

**Traffic Information**.

The actual speed, average speed, direction of travel, frequency, and position of vehicles traveling on a road, and other data that is representative of the movement of vehicles traveling on a road, as detected by one or more traffic monitors.

**Representative of Said Signals Transmitted by Said Traffic Monitors**.

Traffic information detected and transmitted by traffic monitors.

**Traffic Information Database Containing Data Representative of Traffic**.

Traffic information collected by traffic monitors and/or mobile user stations, and transmitted and stored in the computer system. The traffic information collected in and disseminated from the database is as construed above.

**Information Representative of Selected Portions of said Traffic Information Database**.

The user of the mobile user station selects portions of the traffic information database that are to be displayed on the mobile user station.

**Less Than All Available Traffic Information**.

The selected portions may be between zero and 100% of the traffic information database.

**In Response to a Request for Traffic Information**.

The computer system supplies traffic information contemporaneously with the request for the information from the mobile user station."

### Vehicular Movement.

Vehicular movement is the actual movement of vehicles along the road, including the velocity, speed, and change of position of the vehicle on the road.

### Traffic Monitor.

Any device, mobile or fixed, that is used to measure, to detect, to determine, and to transmit data regarding multiple vehicles along the road, including the vehicles' speeds or average speeds, their position on the road, their direction of travel, and their frequency of travel in seconds or minutes.

As such, a mobile user station, as construed below, may perform the same function in gathering traffic information as a traffic monitor.

### Mobile User Station.

A mobile, easily moveable device that is capable of determining, transmitting, receiving, and displaying traffic information."

26 - FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a district judge.  Objections, if any, are due May 23, 2011.

If objections are filed, then a response is due June 9, 2011. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.  If no objections are filed, then the Findings and Recommendation will go under advisement on May 23, 2011.

DATED this 4th day of May, 2011.

_____
Dennis J. Hubel
United States Magistrate Judge

27 - FINDINGS AND RECOMMENDATION