1        IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF OREGON

3    GOOGLE INC.,                    )
                                     )
4              Plaintiff,            )   Case No. CV-09-642-HU
                                     )
5        vs.                         )
                                     )
6    TRAFFIC INFORMATION LLC,        )   September 26, 2011
                                     )
7              Defendant.            )   Portland, Oregon
     _____)

8

9

10

11

12

13

14                    **Oral Argument**

15              TRANSCRIPT OF PROCEEDINGS

16       BEFORE THE HONORABLE MICHAEL W. MOSMAN

17          UNITED STATES DISTRICT COURT JUDGE

18

19

20

21

22

23

24

25

```
 1
 2                          APPEARANCES
 3

 4   FOR THE PLAINTIFF:      Ms. Christina J. Moser
                             Mr. Thomas H. Shunk
 5                           Baker & Hostetler LLP
                             1900 East 9th Street, Suite 3200
 6                           Cleveland, OH 44114-3482

 7                           Ms. Julia E. Markley
                             Perkins Coie, LLP
 8                           1120 N.W. Couch Street, 10th Floor
                             Portland, OR 97209-4128
 9

10   FOR THE DEFENDANT:      Mr. C. Dale Quisenberry
                             Polsek, Quisenberry & Errington, LLP
11                           6750 West Loop South, Suite 920
                             Bellaire, TX 77401
12

13                           Mr. Robert A. Shlachter
                             Stoll Stoll Berne Lokting
14                           & Shlachter, PC
                             209 S.W. Oak Street, Fifth Floor
15                           Portland, OR 97204

16

17   ALSO PRESENT:          Ms. Jennifer Polse

18

19   COURT REPORTER:        Bonita J. Shumway, CSR, RMR, CRR
                             United States District Courthouse
20                           1000 S.W. Third Ave., Room 301
                             Portland, OR  97204
21                           (503) 326-8188

22

23

24

25
```

1        (P R O C E E D I N G S)

2            THE CLERK:  Your Honor, this is the time and place

3    set for oral argument in Case No. 3:09-CV-642-HU, Google

4    Inc. v. Traffic Information LLC.

5            Counsel, can you introduce yourself for the

6    record.

7            MR. SHUNK:  Your Honor, for plaintiff, my name is

8    Tom Shunk.  With me is my partner, Christina Moser, as well

9    our local counsel, Ms. Julia Markley, from the Perkins Coie

10   table.  And also sitting at the table is Ms. Jennifer Polse

11   from Google.  She's corporate counsel for the company.

12           MR. SHLACHTER:  Good afternoon, Your Honor.

13   Robert Shlachter on behalf of Defendant Traffic.

14           MR. QUISENBERRY:  Good afternoon.  Dale

15   Quisenberry on behalf of Defendant Traffic Information LLC.

16           THE COURT:  Thank you all for being here and for

17   your helpful briefing in this matter.  I have reviewed with

18   care Judge Hubel's F&R and your objections to it.

19           There are a couple of predicate matters.  One

20   appears to be unopposed, the addition of deposition

21   testimony in the record.

22           Is there any objection to that?

23           MR. QUISENBERRY:  No, Your Honor.

24           THE COURT:  I will allow that to be added to the

25   record.

1          The second is far more substantive, and that is

2     Google's argument regarding indefiniteness.  And I am

3     declining to -- I think I was headed to a double negative

4     there.

5          I am not going to raise any issues with the F&R

6     because of indefiniteness.  What I'm trying to say here is

7     that I don't view that as a substantive objection to Judge

8     Hubel's F&R; rather, an argument that should and can be

9     still raised by way of dispositive motion.

10         The landscape is altered somewhat on that

11    argument, also.  In my own view, a phrase that is now not

12    before me, "less than all available traffic information,"

13    for example, raised the problem with indefiniteness, but I

14    view it as less an objection to an F&R that is supposed to

15    simply be claim construction, and more the seed of a future

16    dispositive motion.

17         That leaves us with the still-pending-before-me

18    claim construction terms that have been construed now by

19    Judge Hubel.  I'm prepared to go through those one by one,

20    unless the parties have any other what I'll call predicate

21    matters, starting with counsel for plaintiff.

22         MR. SHUNK:  Your Honor, if I may, just so that I

23    understand what Your Honor has told us, you don't need to

24    hear argument today, then, with regard to the indefiniteness

25    issue?

1          THE COURT:  That's right.

2          MR. SHUNK:  May we discuss that in the context of

3     construing the claim?

4          THE COURT:  Yes.  What I want to do is claim

5     construction, and invalidating the patent on indefiniteness

6     is not what I intend to take up today.

7          MR. SHUNK:  Thank you.

8          THE COURT:  But the idea that indefiniteness, or

9     an attempt to avoid it, or an argument that it can't be

10    avoided, has something to do with claim construction, is an

11    argument I'll hear.

12         MR. SHUNK:  Thank you, Your Honor.

13         THE COURT:  Anything further by way of predicate

14    matters from the defense?

15         MR. QUISENBERRY:  None, Your Honor.

16         THE COURT:  All right.  I'm trying to rank these

17    in some rough order of importance.  I may get their

18    importance to the parties wrong, but if I can discern the

19    weight of briefing, or maybe even the vehemence of briefing

20    as a measure, then I believe we'll start with the term

21    "traffic monitors."

22         So if you're me, you have before the Court three

23    constructions:  the Court's construction -- that is, Judge

24    Hubel's construction; the proposal that Google makes -- and

25    I'm not real concerned whether that's the same proposal that

was made to Judge Hubel or one that is made in response to

Judge Hubel, I'm just treating these as the current proposal

from Google; and the current proposal from Traffic.

Although they differ, for example, in their level

of detail, the core difference is whether the traffic

monitor is a stationary device or whether it's a device that

can be, as Judge Hubel put it, mobile or fixed.  What the

device does after that, what it measures and does or what it

measures seems to be something on which the parties and

Judge Hubel are not very far apart, and the core of the

argument seems to be the concept of whether it's mobile or

fixed or simply stationary.

As I said, I'm familiar with your arguments, but

I'd be happy to hear anything further you have, in addition

to what you've written.

And I believe we'll start then with what I'll call

the moving party here, although they're really cross

definitions.  I'll start with Google.

MR. SHUNK:  Your Honor, Ms. Moser is going to

address that.  And if we may, we do have a few slides to

assist in the presentation.

THE COURT:  That's fine.  As long as my machine

works.  It wasn't at an earlier hearing.

MS. MOSER:  Your Honor, how would you like counsel

to address the Court?  Do you prefer us to stay seated?

1          THE COURT:  You can stay seated if that works for

2    you.

3          Last time this wasn't working, they told me my

4    fingers were too cold.

5          MR. SHUNK:  Your Honor, we do have printed copies

6    as well.

7          THE COURT:  I think that's the ultimate attempt to

8    make it the user's fault.

9          Ms. Moser, is that it?

10         MS. MOSER:  Yes.

11         THE COURT:  Go ahead.

12         MS. MOSER:  The primary difference between the

13   parties, as you noted, is whether or not a traffic monitor

14   is a stationary device, a so-called stationary device versus

15   a mobile user station.  And I think that it's important to

16   note that there is some ambiguity that's introduced by the

17   Finding & Recommendation's use of the term "mobile or

18   fixed," because it concentrates on really the physical

19   nature of the device rather than, as Google asserts, the way

20   in which the device measures the -- either the traffic or

21   the location of the user.

22         A traffic monitor throughout the patent is --

23   there's no portion of the patent specification that

24   indicates that a mobile user station is considered to be a

25   traffic monitor or vice versa.  In fact, the specification

1    quite clearly talks about the two different embodiments of

2    the invention:  one which specifies using the information

3    for traffic monitors, and then the system may provide

4    traffic information without the use of monitors at all,

5    relying solely on information derived from the mobile user

6    stations.

7          THE COURT:  When you say that the patent

8    specifications do that quite clearly, you mean on the one

9    occasion that you've cited in your brief -- or, excuse me,

10    that Traffic Information cites that you also cited, both of

11    you, in your briefing, or are there several?

12          MS. MOSER:  Well, there is that -- that is the

13    clearest statement, and then if you go further in that same

14    column, column 13, it talks about different advantages and

15    disadvantages of using a traffic monitor versus a mobile

16    user station:  the cost, the advantages in terms of

17    gathering information from a plurality of mobile users

18    versus if a traffic monitor goes out, then there is a

19    deficit of information for -- as to a whole section of road.

20          And also --

21          THE COURT:  And just to back up also once, I want

22    to make sure, even though it's hornbook law, I want to make

23    sure we're speaking from the same page about sort of the

24    hierarchy of sources for me to determine what the actual

25    term we're talking about, the words "traffic monitors"

1  means.

2          So we're starting with the normal meaning to one

3  skilled in the art of the phrase.  Is it your contention

4  that that is ambiguous?

5          MS. MOSER:  What the meaning is to what --

6          THE COURT:  Just to the words "traffic monitors."

7  That's ambiguous, in your view, or not?

8          MS. MOSER:  It's not necessarily ambiguous.  I

9  think that it's -- the meaning of "traffic monitor" is clear

10  in the context of the patent, and --

11          THE COURT:  So "in the context of the patent"

12  meaning what parts of the patent make it clear to you?

13          MS. MOSER:  The figures, and also the

14  specification, in discussing the different -- the two

15  different embodiments.

16          THE COURT:  So the patent language, the claim

17  language standing alone, in your view, does not make it

18  clear; is that right?

19          MS. MOSER:  Well, to the extent that it talks

20  about gathering -- Claim 1, for example, talks about

21  gathering information using traffic monitors, and then

22  discusses the mobile user station as a separate device.  It

23  doesn't -- if a traffic monitor was a mobile user station,

24  then there would be really no point in choosing this

25  particular analysis.

1          THE COURT:  So it's at least inferable, in your

2     view, from just the claim language that, at a minimum,

3     traffic monitors are not the same thing as mobile user

4     stations?

5          MS. MOSER:  Yes, Your Honor.

6          THE COURT:  And since mobile user stations have a

7     lot in common with traffic monitors, except the word

8     "mobile," you think that's the inferable difference between

9     the two; that one is mobile and one is not?

10          MS. MOSER:  Not just purely based on the claim

11     language, Your Honor, but looking at --

12          THE COURT:  Well, I understand that, but I want to

13     know whether you get that far just by claim language.

14          MS. MOSER:  If one is to give significance to the

15     use of the word "mobile" in "mobile user station," then yes.

16          THE COURT:  All right.  And then the next source

17     you want to turn to are the embodiments, the pictures and

18     the specifications?

19          MS. MOSER:  Yes, Your Honor.

20          THE COURT:  All right.  What are you going to

21     start with?  The specification language?

22          MS. MOSER:  As we have pointed out in our brief,

23     the specification language, column 13 in particular, but

24     also in general discussing the two different embodiments,

25     the one where the information is provided by the local user

station versus where it's provided by the traffic monitors,

and in the descriptions of traffic monitors being devices

which, as the exhibits to the proposed reply brief, the

traffic detector handbooks, they look at the video cameras,

the infrared cameras, the radar cameras, the strips.  This

is -- in figure 2 of the patent shows an exemplar of the

traffic monitor and discusses -- and the 22B is the strip

that can be buried in the roadbed.  22A is the microwave

detector infrared device that measures the traffic.  And

when looked at also in context of figure 1, it shows the

fixed location of each traffic monitor, 22X, versus, you

know, the mobile user station, which is depicted as in the

vehicle.

        THE COURT:  All right.

        MS. MOSER:  So the discussions of traffic monitors

clearly relate to devices that measure the speed of

vehicles, the flow of traffic as it passes by the monitor,

and the descriptions of traffic monitors also repeatedly

refer to measuring traffic as it passes by, and describes

and shows the traffic monitors themselves located at fixed

intervals along the roads, specifically figures 1, 7 and

8 -- or 1, 7 and 11, and then in columns 5, 6, 7, 13, 15,

16.

        So those discussions, in talking about how -- and

this is the point that we're trying to make, that -- where

we think some clarification of the judge's order is in
order, because it's not necessarily, you know, how the
device is affixed, whether it can be bolted to a -- an
overpass, whether it can be placed on a road at one point,
such as with traffic construction, the devices that measure
the speed of cars in traffic construction zones that are
then movable to another location.  What constitutes easily
movable?  If we jump ahead and also look at "traffic
monitor" in the context of the magistrate judge's definition
of "mobile user station," what is easily movable?  That --
really the physical fixed or unfixed nature of the device
isn't relevant to the patent.  What is relevant is how it
measures the information.

        THE COURT:  From a stationary position versus a
mobile?

        MS. MOSER:  Correct, Your Honor.

        THE COURT:  So you can take a device, and as long
as you -- when measuring for traffic data, it's stationary,
and in your view that's a traffic monitor?

        MS. MOSER:  Because you're measuring the vehicles
as they pass.  You're measuring the flow, the density of
traffic.  And that is -- that's the primary difference in
how the two are described.

        THE COURT:  What you seek to exclude from "traffic
monitors" is a device that can determine speed, frequency

1    and the like from traffic from a mobile position?

2              MS. MOSER:  Yes, Your Honor.  And also the --

3              THE COURT:  And I don't mean to say that's what

4    you seek to exclude, because what you want isn't really what

5    we're after here, but rather you contend that that is the

6    linguistic difference between a traffic monitor and a mobile

7    user station?

8              MS. MOSER:  Yes --

9              THE COURT:  It's the mobility of the device as

10   it's measuring?

11             MS. MOSER:  That's what the patent teaches.  And

12   to the extent that Traffic wishes to argue at a later date

13   that, you know, a mobile device serves substantially the

14   same function in substantially the same way to achieve the

15   same result, then they're free to argue that, and the

16   parties can dispute whether the doctrine of equivalents is

17   available in that context, dealing with infringement.

18             But the claim construction process is not the time

19   to look at -- as the magistrate judge held, he said the two

20   devices can perform the same function, and that, in and of

21   itself, that's one of the factors looked at under doctrine

22   of equivalents.  So Google asserts it's not appropriate to

23   judge at the claim construction stage one of the elements of

24   whether or not a mobile device qualifies as a traffic

25   monitor under the doctrine of equivalents.

1        THE COURT:  So you don't think the doctrine of

2   equivalents is a doctrine to aid in claim construction; that

3   is, that it's to be avoided if possible in claim

4   construction?

5        MS. MOSER:  Absolutely, Your Honor.

6        THE COURT:  You agree that it's not an element of

7   claim construction?

8        MS. MOSER:  Correct.

9        THE COURT:  Or a tool, I should say.

10       MS. MOSER:  Correct.  The doctrine of equivalents

11  has no place in claim construction, and the *AquaTex*

12  decision, I think, addresses that, because in that case

13  there was a question as to whether the fiberfill was

14  supposed to be natural or whether synthetic could also be

15  included within the scope of the patent claims, and the

16  Court clearly said, "Well, look, it might not make a

17  difference ultimately as to infringement, but the

18  specification, the patent teaches only the natural fibers.

19  If the other party wants to argue that its fibers are

20  included, then that's a doctrine of equivalents argument for

21  a later date."

22       THE COURT:  You're aware your opponent's main

23  argument is that you have cherrypicked from the embodiments

24  in order to propose language that limits the claims?  I'm a

25  rookie, but I know enough about patent law that I know that

1    I'm supposed to fall down in shock when that happens.   It's

2    a cardinal sin.

3              MS. MOSER:  Yes.

4              THE COURT:  Not ordinal, cardinal.

5              MS. MOSER:  Yes, yes.

6              THE COURT:  It takes confession and quite a bit of

7    other penance if you actually do that.

8              So what's your response to that argument that

9    you've taken embodiments here and said, "Well, they look

10   stationary on the pictures, so 'traffic monitor' must mean

11   stationary"?

12             MS. MOSER:  And, Your Honor, the cardinal sin of

13   claim construction, that's easy enough to repeat, but in

14   looking at, you know, how the courts actually apply these

15   principles, *Phillips* itself says that you need to look at

16   the claim language in the context of the specification.  You

17   have to do that.

18             And the *ICU* case, the *ICU Medical* case that I was

19   referring to earlier, the -- even if some of the language

20   might be broad, you still have to look at how it's described

21   in the specification.  The reference to *Phillips*, it's not a

22   panacea.

23             And in this particular case, it's particularly

24   relevant that even Traffic admits that there are -- that the

25   patent claims different embodiments.  Claim 1 uses traffic

monitors.  Claim 21, on the other hand, doesn't incorporate

traffic monitors explicitly in the claims of the patent.

And that follows along with how the specification describes

the alternative embodiments.

The cases in our brief cite to the fact that

different claims can claim alternative embodiments, and that

the patent should be interpreted accordingly.

THE COURT:  The last question before I turn to

Traffic.  I confess I sort of lost my way here regarding a

principle that I usually find very important, and that's

burden of proof.  But we have a patent that's presumed

valid.  There's language in the claims to be construed in a

Markman hearing.  That's happened with the magistrate judge

in Traffic's favor on this issue, although he queried

whether mobile or fixed does that very accurately, but at

least Judge Hubel seems to reject the concept that

stationary is the right definition.

Whose burden are we -- who's got the burden now?

Any thoughts on that?

MS. MOSER:  I would say it's de novo review, Your

Honor, and so you'd go back and refer to the original burden

on claim construction, where both parties have --

THE COURT:  Equal burden?

MS. MOSER:  Yes, right.  And it's a matter of law,

as with contractual interpretation.

```
 1              THE COURT:  Thank you.
 2              All right.  Again, we're trying to focus in on the
 3     concept of stationary or not as a way to define traffic
 4     monitors.  What are your thoughts?
 5              MR. QUISENBERRY:  May I bring up a copy of my
 6     PowerPoint?
 7              THE COURT:  You can.  It won't -- well, actually,
 8     yes, you can.  Here, it appears Ms. Stephens has fixed it.
 9     I'm not supposed to look surprised.  It's up.
10              MR. QUISENBERRY:  Let me first just address this
11     last point.  I believe I heard Ms. Moser say that Traffic
12     has admitted that there are different claims directed to
13     different embodiments, with one claim directed only to
14     traffic monitors, another claim directed only to mobile user
15     stations.
16              I'm not sure that we have admitted that anywhere.
17     But the point that I would make, and I think the argument
18     that we made in our briefing is that what they're not
19     keeping in mind is that when you add in Claim 22 to Claim
20     21, which Claim 21 is the independent claim that has the
21     "mobile user station" in it but it doesn't have "traffic
22     monitor," when you add in Claim 22, it further recites
23     "traffic monitor."
24              So, you know, when you're -- at least when you're
25     considering Claim 22, that's when it addresses a traffic
```

1    monitor.

2          So let me go to the section in here that has to do

3    with my comments on the stationary.  Okay.  It starts right

4    here.

5          So the Court has already granted me in this

6    argument that they're just importing limitations from the --

7          THE COURT:  I haven't granted you -- I've granted

8    you that it's your argument, but that doesn't help you much.

9          MR. QUISENBERRY:  I didn't mean to suggest that

10   you had adopted it.

11         But so if you look at --

12         THE COURT:  If I could interrupt you for just a

13   moment.  It does appear to me, first of all, that both sides

14   have at least implicitly determined that the question isn't

15   answerable from the term itself.  It's not the sort of term

16   that one reasonably skilled in the art would know how to

17   define with regard to the debate that is present between

18   these two parties.  So that means that you may agree on what

19   "traffic" is, for example, or not, but whether this means

20   stationary or not stationary isn't readily answerable from

21   the words "traffic monitors" or other language from the

22   claims.

23         Do you agree with that, that you have to turn to

24   some other source in order to decide this particular debate

25   about the meaning of the phrase?

1      MR. QUISENBERRY:  Well, I guess the first point I

2  would say is that I think that you can look at this claim

3  and see very clearly that it doesn't require that they're

4  stationary, and that had that been the intent, it could have

5  easily been done, but it wasn't.

6      So we think that's an important point, that the

7  claim language itself does not include the limitation

8  "stationary."

9      THE COURT:  Why is that important?  That's an

10 argument I think that you could probably make in every

11 Markman hearing where the phrase doesn't readily have an

12 answer to the question.  You can always say, "Well, it

13 doesn't say what my opponent thinks it needs to say," and I

14 guess your opponent could say, "Well, it doesn't rule out

15 the meaning that we contend it has."  I mean, don't those

16 two arguments just kind of cancel each other out?

17     MR. QUISENBERRY:  Well, I'm not so sure that they

18 do when you look at the whole context of the intrinsic

19 record here.  And I understand you're asking me whether we

20 need to go outside the claim.  I think you do need to go

21 look at the specification.  I think it's very difficult to

22 construe the claims without doing that.

23     THE COURT:  All right.  So your argument on the

24 claim language itself is that it doesn't ever make clear

25 anywhere in the claim language that they are stationary.  So

1    you say that's sort of the dog that doesn't bark.  It's not

2    in there, so I shouldn't find it.

3           MR. QUISENBERRY:  Unless there's some reason in

4    the specification that says that "traffic monitor" should

5    mean something that it's limited to, just something that's

6    stationary.  And there's nothing in the specification that

7    requires that.  I think that's a key difference between the

8    case law that they have given to us.  I mean, some of those

9    cases have to do with there was a -- there was a particular

10   limitation that was added, or where the patent stated that

11   they were trying to overcome a problem with the prior art,

12   and in order to do that, they went with the parallel bus or

13   whatever that case was.

14           There's nothing in this patent that says there's a

15   problem with stationary traffic monitors, or there's a

16   problem with mobile traffic monitors, therefore we have to

17   go with stationary.

18           THE COURT:  All right.  So your opponent's central

19   argument textually is this idea that mobile user stations

20   and traffic monitors are treated differently in various

21   places, including in the specification language, but in

22   various places, and that there are a number of inferences

23   that seem to be readily drawn from that idea, meaning that

24   there are two different concepts, mobile user station and

25   traffic monitor, focusing on the word "mobile" here.

1          The argument I've heard advanced in your briefing

2    is that that's an unfair selection of language only from

3    embodiments.  Is that your core argument to say that I

4    shouldn't make much of a distinction in the patent between

5    traffic monitors and mobile user stations?

6          MR. QUISENBERRY:  Absent some reason in the

7    specification that says that that distinction requires

8    traffic monitors being limited to stationary, it's just not

9    there.

10          THE COURT:  Thank you.

11          MR. QUISENBERRY:  Can I just go ahead and flip

12    through these slides here and just make sure I didn't miss

13    anything?

14          THE COURT:  No.

15          "Traffic monitors" is a term that you have

16    proposed construing in a certain way, and Judge Hubel

17    essentially went your way, with some differences.

18          What are your -- assuming that you win the day on

19    the concept of "stationary," what are your quibbles with

20    Judge Hubel's definition?  Why would you prefer your own?

21          MR. QUISENBERRY:  May I refer to the slides for

22    this?

23          THE COURT:  Yes.

24          MR. QUISENBERRY:  Okay.  So looking here, this is

25    the magistrate judge's claim construction.  Do you have

1    that, Your Honor?

2              THE COURT:  Yes.

3              MR. QUISENBERRY:  So we've got this first

4    occurrence of "and" here.  And in essence, it appears that

5    what the magistrate judge has required is that the traffic

6    monitor must be able to do all four of these

7    things:  measure, detect, determine and transmit.

8              So our proposed fix to that is that it be changed

9    to "and/or."

10             And if you look, for example, at Claim 1 of the

11   '862 patent, it only recites that it should be able to do

12   two of them, detect and transmit.

13             Here's a copy of Claim 1, and if you look here --

14             THE COURT:  That's fine.  I don't think that's a

15   live debate between the parties.  Google's proposal uses the

16   disjunctive in a similar spot.

17             What else do you care about with Judge Hubel's

18   definition?

19             MR. QUISENBERRY:  Well, we certainly care about

20   that one, and we care about the same issue here, the second

21   occurrence of "and."  It has the same issue of essentially

22   requiring that the traffic monitor do all four of these

23   things with respect to speed, average speed, position on the

24   road, direction of travel, and frequency of travel in

25   seconds or minutes.

1           And the specification I believe clearly shows that

2   those things are -- they're options, they're examples, but

3   they're not requirements.

4           Here's an example at the bottom here, where it

5   says, "Traffic monitors may detect or otherwise calculate

6   speed, average speed, traffic flow, or other data

7   representative of the traffic."

8           THE COURT:  Is there anything that Judge Hubel's

9   definition of "traffic monitors" does that in your view is

10  different than your own proposal of the definition of

11  "traffic monitors" if you had the disjunctive throughout in

12  his definition?

13          MR. QUISENBERRY:  If we add in "and/or"?

14          THE COURT:  Yes.

15          MR. QUISENBERRY:  The only other two things -- the

16  other item would be where it talks about multiple vehicles,

17  right here.

18          THE COURT:  As opposed to a singular or a

19  multiple?  That's your quibble?

20          MR. QUISENBERRY:  What we proposed was to strike

21  "multiple" and put "one or more" there.

22          Let me just get down here and just make these

23  points.

24          THE COURT:  You don't need to do that.  If I need

25  you to just go through your whole slide and make sure you

1    haven't missed something, I'll let you know.

2            MR. QUISENBERRY:  Fair enough.

3            THE COURT:  All right.  Thank you.

4            Do you wish to reply on this issue?

5            MS. MOSER:  Yes, Your Honor.  There are a couple

6    of points of clarification that I'd like to make, to sort of

7    go backwards in time.

8            The first one addresses Google's proposed

9    construction of "traffic monitor," and the disjunctive that

10   Google has in its definition refers to the type of

11   information, the speed, frequency or flow of multiple

12   vehicles.  That was our proposal.

13           But with respect to --

14           THE COURT:  I took that to mean you didn't believe

15   that the phrase should be construed to require all instead

16   of one or more of those pieces of data.

17           MS. MOSER:  Well, the specific portion of the

18   magistrate's construction that Traffic is focusing on, I

19   think, has to do with the various functions.  So it's the

20   measuring, detecting, determining and transmitting.  And on

21   that, Google does take issue with Traffic's proposed

22   insertion of "and/or" between those different functions,

23   mainly because --

24           THE COURT:  What's the difference between

25   measuring, detecting and determining versus determining?

1          MS. MOSER:  Your Honor, with -- you know, in our

2     estimation, there's probably not much difference.

3          THE COURT:  Well, then why does it matter if they

4     have to do all of them or one or more?  Your word is

5     "determining."

6          MS. MOSER:  Well, because it has to transmit as

7     well.  The traffic monitor in the claim specifications

8     includes transmitter, and it has to transmit the information

9     to the computer system in order for the entire system to

10    work.

11         THE COURT:  Traffic's proposal says, "a device

12    used to sense, measure, detect and/or determine."

13         You say "determine."  In my own view, those are

14    meaningless distinctions, but we'll go back if we have to,

15    "and to transmit."

16         So you're saying that I should be careful to make

17    sure that they have to determine and transmit?

18         MS. MOSER:  Yes, Your Honor.

19         THE COURT:  And isn't that what Traffic's proposal

20    does, determine and transmit?

21         MS. MOSER:  Well, no, because the "and/or" allows

22    it to transmit.

23         THE COURT:  And/or provide?

24         What's the difference between "transmit and/or

25    provide"?

 1              MS. MOSER:  Providing and transmitting, Your

 2   Honor, I'm not --

 3              THE COURT:  They either transmit it or someone

 4   writes it out and walks over to the end user and hands them

 5   a note, I guess.  I don't like to make too much of

 6   distinctions that are really just unnecessary verbiage.

 7              MS. MOSER:  Well, with their proposed revision,

 8   though, the device can just transmit or it can just measure.

 9              THE COURT:  Their proposed revision to Judge

10   Hubel's --

11              MS. MOSER:  Correct, correct.  And we think that

12   writes out an express limitation to the claim.

13              THE COURT:  Don't you agree that the device has to

14   determine and transmit?

15              MR. QUISENBERRY:  No.

16              THE COURT:  You say it can just determine and not

17   transmit it via traffic monitor under the claim language?

18              MR. QUISENBERRY:  Well, what I would say is that

19   you're looking for a minimum of two things that it has to

20   do.  I would say based on the claim language, it has to

21   detect and transmit.  That's what the --

22              THE COURT:  So not determine and transmit, but

23   detect and transmit?

24              MR. QUISENBERRY:  Well, I think Your

25   Honor raises --

1          THE COURT:  It has to do something and transmit,

2    though?

3          MR. QUISENBERRY:  I believe that the claim

4    language says that it would be detect and transmit.

5          THE COURT:  Well, my question was it has to do

6    something and transmit.  And you agree with that, don't you?

7          MR. QUISENBERRY:  I do.

8          THE COURT:  So in terms of "and/or transmit," you

9    agree that that should just be "and"?  Whatever may come

10   before that, we'll talk about, but it has to transmit?

11         MR. QUISENBERRY:  I agree that it has to transmit.

12         THE COURT:  Thank you.

13         Let's turn to "mobile user station."

14         Actually, since we're doing this a little bit like

15   Russian dolls here, my own view, having reviewed the

16   pleadings and done my best so far on these fairly specific

17   issues, is that the phrase "traffic monitors" does not

18   necessarily include within it in anything other than perhaps

19   some preferred embodiments the concept of being stationary.

20   And I decline to read into "traffic monitors" the need to be

21   stationary from really just those preferred embodiments.

22         I agree that there is -- that there are two

23   devices talked about, not just in the embodiments but

24   elsewhere, and those are mobile user stations and traffic

25   monitors, but I decline to infer from the presence of those

two devices being described a further concept, which is that
the traffic monitors must be stationary.

I agree with Traffic's concerns about the
Court's -- that is, Judge Hubel's earlier construction that
"mobile" or "fixed" -- I should say Google's concern also
that "mobile" or "fixed" isn't quite the right way to phrase
that.  And I am concerned about the final sentence of Judge
Hubel's construction, which I'm not sure ends up being
clarifying of the term language as opposed to accomplishing
something else.

So those are my rulings.  My tentative intention,
which I will revisit after I've heard all the arguments on
all of the claims, is essentially to adopt Traffic's
proposal, not the F&R's proposal for the definition of
"traffic monitors."  It's a shorter definition.

And just to be clear, I understand that to be even
today the following:  "Any device used to sense, measure,
detect and/or determine vehicular movement and transmit
and/or provide a signal representative of vehicular
movement."

I say tentative because I've already expressed in
my view the idea that that contains a number of phrases that
if it were presented to me by a law clerk, I would edit out
as pointless, but the core concept is a device that
determines vehicular movement and transmits it, is what I

1    intend to adopt here.

2         I don't know what you gain by "transmit and/or

3    provide."  Is there any iteration of this device on Earth

4    that will hand over the determined information in any other

5    way than by transmitting it?

6         MR. QUISENBERRY:  We have, Your Honor, no

7    objection here if you would like us to strike "and/or

8    provide," no objection here.

9         THE COURT:  Okay.

10        MR. QUISENBERRY:  Could I say one other thing?

11        THE COURT:  Yes.

12        MR. QUISENBERRY:  What I just heard Your Honor say

13   is that the core was "determine and transmit," and that's

14   different than what we proposed.  And if you're going to go

15   with just two things, I would much prefer it be "detect and

16   transmit," just because that's what the claim language says.

17        THE COURT:  Well, just so you know, the proposal

18   you made is, "Any device used to sense, measure, detect

19   and/or determine," which means that it can be read in four

20   different ways.  Any device that determines and transmits.

21   And you contend that detecting is different than

22   determining?

23        MR. QUISENBERRY:  Well, I think it begs the

24   question, but --

25        THE COURT:  You'd like all of it, in other words,

1    but if you had to pick one, it would be "detect"?

2            MR. QUISENBERRY:  Yes.

3            Now, what --

4            THE COURT:  Thank you.

5            Let's turn to "mobile user station."  The core

6    distinction here is that it's distinct from a traffic

7    monitor, on the one hand, and I assume also that it's mobile

8    as opposed to stationary or not easily movable.

9            I have, by defining "traffic monitors" the way I

10   have, answered the question of whether the distinction is --

11   well, whether mobile user stations can fall within sort of a

12   subset of traffic monitor or not.

13           We're left with Google's concern that the mobile

14   device ought to be defined as distinct from a traffic

15   monitor, and after that I'm not sure there is much dispute.

16           There is a difference, I understand, between

17   "mobile" and "easily movable," at least you've raised that

18   earlier, that a number of things that are easily movable are

19   not mobile, and that has to do with not how they're placed

20   on Earth but rather how they measure incoming data; is that

21   right?

22           MS. MOSER:  Yes, Your Honor.

23           THE COURT:  So if I understand Google's proposal

24   here, you'd want "mobile user stations" to be defined as a

25   mobile device, and that's the crux of the matter for you,

1    that they have to be -- does just saying they're a mobile

2    device, does that get at the concept you've raised earlier,

3    that they -- that they detect or determine incoming data

4    while they're mobile, as opposed to simply being easily

5    movable?

6            MS. MOSER:  Yes, Your Honor, I think so, because

7    the mobile device, the point of the mobile user station is

8    that they detect.  They don't necessarily detect the traffic

9    information, vehicular movement, they detect the mobile user

10   location, as described in the patent at various points.  So

11   that's -- it's measuring while it's mobile.  That's the

12   whole point of incorporating the mobile user stations into

13   the system.

14           THE COURT:  So am I right that given what I've

15   done with "traffic monitors" already, the core of the

16   dispute now is whether a mobile user station is a mobile

17   device or an easily movable device?  Because your concern is

18   that traffic monitor can be both stationary and -- well, it

19   can be both stationary and easily movable?

20           MS. MOSER:  To be honest, Your Honor, I don't

21   think "easily movable" adds anything to the patent.  I don't

22   think that it serves -- it relates to the purpose of the

23   invention or adds really any meaningful distinction.  Like

24   you said, "easily movable" can -- it's sort of relative

25   versus how the two devices are meant to measure.  One is

1    meant to be -- you know, measure traffic, measure vehicles

2    as they pass by.  They're meant to measure actual vehicular

3    movement traffic, as a body, as a whole.

4         The mobile user station's purpose is to measure

5    the location of the user essentially, the mobile user

6    station.  So that's one vehicle, the movement of one vehicle

7    through the road system.

8         THE COURT:  But the idea, you contend, is captured

9    in the phrase, "a mobile device capable of determining and

10   displaying traffic information"?

11        MS. MOSER:  Yes, Your Honor.

12        MR. SHUNK:  May I add something, Your Honor?  I

13   know Ms. Moser has handled the argument so far, but if I can

14   add a thought to that.

15        THE COURT:  Yes.

16        MR. SHUNK:  Your Honor, I think earlier in

17   expressing your view on -- and your ruling on "traffic

18   monitor" suggested that maybe mobile user stations could be

19   a subset of traffic monitor.  And there is an inconsistency

20   in viewing it that way that will arise unless Your Honor

21   also adjusts the definition of "vehicular movement."

22        And to unpack that, here is the fundamental issue.

23   Because Judge Hubel has already defined "vehicular movement"

24   to be "the measurement and flow of vehicles," plural, a

25   traffic monitor must necessarily, because it measures

vehicular movement, measure multiple vehicles, whereas a
mobile user station, because of the way it is, can only
measure the movement of a vehicle, the one that it's located
in.

So the real difference between the traffic monitor
and the mobile user station, when you come right down to it,
is that the traffic monitor must measure multiple vehicles,
and the mobile user station measures one vehicle, and that's
the result of the fact that the traffic monitor measures
things that flow by, whereas the mobile user station just
measures itself, in essence.

And I know we haven't discussed vehicular movement
yet, Your Honor, but that kind of resolves the question and
also would suggest that given Your Honor's decision with
regard to "traffic monitor," I don't think it necessarily
follows from that decision that mobile user stations could
be a subset of traffic monitors.

THE COURT:  Thank you.

I want to make clear that I raised that issue
without holding that they were.  I said that I wanted to
hear further argument.  I'm not even sure that's necessary
that I reach any conclusion about whether they're a subset.
Much of that comes up at dispositive motions, not claim
construction.  But we will get to "vehicular movement."

So we're now at a point where the distinction

between Traffic and the Court, on one hand, and Google on

the other, is whether a mobile user station is a mobile

device or an easily moving or movable device.  After that,

the distinctions tend to really become very small.

So what's your argument on whether it's a mobile

device or an easily moving or movable device, or does that

matter?

MR. QUISENBERRY:  I don't think it's -- I mean

we're happy if it just says "mobile."

THE COURT:  All right.

So if Judge Hubel's definition was, "a mobile

device capable of determining, transmitting, receiving

and/or displaying traffic information," you'd be fine with

that?

MR. QUISENBERRY:  I didn't quite catch all of

that.  Were you reading from Judge Hubel's construction?

THE COURT:  Yes, sir.  So it says "easily

movable."  If we just call it a mobile device, since that's

a word that probably doesn't need to be unpacked any further

for the rest of the world to know something about it,

"capable of determining, transmitting, receiving and/or

displaying traffic information."

MR. QUISENBERRY:  Traffic is fine with that.

THE COURT:  Then the only issue there is that that

puts "determining and transmitting" in the disjunctive, and

1  the parties agreed a moment ago that that should be

2  conjunctive, right?

3          MR. QUISENBERRY:  Well, could I address that?

4          THE COURT:  Yes.

5          MR. QUISENBERRY:  So I think that from my

6  perspective, the concept that was driving our thinking on

7  that issue was that the claim language that deals with

8  "traffic information" says -- it recites a detector and a

9  transmitter, and that's why we were focused on "detect and

10 transmit."

11         For purposes of this one, I don't know that that

12 same reasoning applies, but we're certainly okay with what

13 Your Honor proposed just a moment ago for the construction.

14         THE COURT:  I raised a concern about what I

15 proposed a moment ago, which is that it creates confusion.

16 We now have traffic monitors that must both detect or

17 determine and transmit.  That would be in distinction with

18 mobile user stations that, under Judge Hubel's definition --

19 and for that matter, Traffic's -- could simply determine but

20 not transmit, or transmit and not determine.

21         Doesn't the patent essentially teach that the

22 mobile user station must in some level detect some

23 information and transmit it?

24         MR. QUISENBERRY:  Now that I've kind of referred

25 to these slides for my memory, the claim language for

"mobile user station" leads us to a different point than the
claim language for the "traffic monitor," where there we had
"detect and transmit."

Here, if you look at the way the claims are
drafted, there's definitely a common denominator across all
the claims that the mobile user station needs to display,
because I believe that's recited in every single claim, and
you've got a mobile device that could be a smartphone, for
example, that has a display that displays the traffic
information.  So I would say "display" is something that
needs to be in there.

And "receive" I believe also is something that
should be in there, because in order for it to be displayed,
it needs to be able to receive.

And then some of the other claims also recite a
communicating device, which would suggest some ability to
have -- to both send and receive back and forth from the
computer system.  So in certain instances, it will also need
to be able to transmit, but that should not be a limitation,
a core limitation on a mobile user station, because there
are certain instances disclosed in the patent and the claims
where transmitting from the mobile user station back to the
computer system is not a requirement.

THE COURT:  Your own proposal doesn't contain the
word "display," and so in light of what you've just said,

and the idea that I've got to start off with a mobile user
station being a mobile device, and everybody next to you
uses the word "capable of" or "that can," which is the same
as "capable of."

So a mobile device capable of what, in your view?

MR. QUISENBERRY:  Receiving and displaying traffic
information.

THE COURT:  And yours says "determining and
displaying."  Your thoughts on this?

MS. MOSER:  Yes, Your Honor.

As far as determining, the mobile user station
always has to make some determination of the location of the
mobile user station, and -- in all of the embodiments,
because it's -- the information is transmitted back to the
mobile user station based on the geographic location, and
that determination is made in the computer system.  So there
is always some determining going on -- and there is a
disagreement with Traffic on this -- always some
transmitting going on.

THE COURT:  Well, is the determining being done by
the mobile user station or the network?

MS. MOSER:  In terms of the geographic location?

THE COURT:  Any determining.  Is there any
determining that necessarily is done by the mobile user
station?

1    MS. MOSER:  The mobile user station determines its

2    geographic location by using the GPS, in coordination with

3    the GPS receiver.

4    THE COURT:  Does it determine its geographic

5    location or does it receive that?

6    MS. MOSER:  You know, in order to receive it, it

7    has to send a request, so sending a request and getting

8    something back.

9    THE COURT:  If I send a request saying, "Where am

10    I," and I get the answer back, I didn't determine my

11    location, I received it?

12    MS. MOSER:  I don't know, Your Honor.  I don't

13    know that that -- going down to that level.

14    Your Honor, I look at that as determining.

15    THE COURT:  You said, "capable of receiving and

16    displaying traffic information"?

17    MR. QUISENBERRY:  Yes, sir.

18    THE COURT:  And Judge Hubel said, "capable of

19    determining, transmitting, receiving and/or displaying."

20    MR. QUISENBERRY:  Correct.

21    THE COURT:  And what was your objection to that

22    that you filed?

23    MR. QUISENBERRY:  Well, our objection there is

24    that first of all --

25    THE COURT:  I don't want to know what it is.  I

want to know the objection you filed to the F&R.  What was

your objection?

MR. QUISENBERRY:  Our objection that we filed was

with respect to the word "and."

THE COURT:  You wanted it to be "and/or"?

MR. QUISENBERRY:  Correct.

THE COURT:  So other than that, you didn't have

any problem with "determining, transmitting" as part of the

definition, as long as it is "and/or"?

MR. QUISENBERRY:  So long as it's not a

requirement, yes.

THE COURT:  So if we captured the twin concepts of

doing something and displaying, or rather transmitting,

Judge Hubel's definition would read, "a mobile device that

is capable of" -- Give me just a moment here.

It would be, "determining, receiving, or

displaying and transmitting traffic information"?

MR. QUISENBERRY:  We would not be in favor of

that, Your Honor, because of the common denominator I

mentioned a minute ago with respect to mobile user stations,

is that they be able to display traffic information.  So I

believe the requirement in what Your Honor just dictated was

"transmitted," and we don't believe that's a requirement of

mobile user station.

THE COURT:  Well, the objection you filed would

1  not make "display" a common denominator.  It would make it

2  one of several things the device could do.

3      MR. QUISENBERRY:  Well, I was just trying to work

4  with what the magistrate judge gave us and make the least

5  edit to it as possible, and this is something that we

6  could --

7      THE COURT:  Well, that's not what we do with

8  de novo review.  I look at your objections as your current

9  position on what the correct claim construction is.  So I'm

10  just trying to work with your objections, which I assumed

11  meant that you were okay with the rest.

12      What you're telling me now is that you don't agree

13  with Judge Hubel's list, you don't even really agree with it

14  if I made the amendment that you suggest in the F&R.  You

15  don't really like that.  You want something -- you want

16  something in addition to what you sought in the objections

17  to the F&R?

18      MR. QUISENBERRY:  No, sir.  We're perfectly happy

19  with the amendment.  So just add in the slash "and/or," and

20  we're happy.

21      THE COURT:  Right.  But you're unhappy if I do

22  something different that accomplishes the same thing by

23  making display just one thing that ought to happen, even

24  though that's what the proposal that you -- even though

25  that's what Judge Hubel has done with your proposal?

1          MR. QUISENBERRY:  I might have misunderstood Your

2     Honor.

3          THE COURT:  If I engage in claim construction that

4     makes display just one of several things the mobile user

5     device can do, you disagree with that because it makes

6     displaying just one of several things the mobile user device

7     can do?

8          MR. QUISENBERRY:  No, sir.  What I heard Your

9     Honor say is that a mobile user station must be able to

10    transmit.  And maybe I misunderstood what Your Honor

11    dictated, but that's what I heard.

12         THE COURT:  And your answer is a mobile user

13    station must be able to display?

14         MR. QUISENBERRY:  Correct.

15         THE COURT:  And that it can do one of several

16    other things:  determine, transmit or receive?

17         MR. QUISENBERRY:  Yes.

18         THE COURT:  So if Judge Hubel's claim construction

19    read, "a mobile device that is capable of determining,

20    transmitting or receiving and displaying traffic

21    information," you'd be fine?

22         MR. QUISENBERRY:  Yes, sir.

23         THE COURT:  Not only fine, but even happier than

24    the objection you made to the F&R?

25         MR. QUISENBERRY:  I wouldn't go that far, but I'm

    1    fine with that, if that's what the Court decides to do.

    2            THE COURT:  It's not a -- I stated it somewhat

    3    frivolously.  It's not a frivolous question.  It gets to

    4    what are you really after here.

    5            We're at de novo review.  What I expect from you

    6    is your proposed construction to be what you think is the

    7    accurate representation of "mobile user station," not the

    8    best compromise you can get, working with Judge Hubel's

    9    existing language.

   10            And so one, I thought, reflected what you're

   11    actually telling me should happen here.  The other you told

   12    me was sort of half a loaf, in light of what Judge Hubel

   13    said.

   14            I want the former not the latter.  Which is it?  I

   15    want the one that's your best construction of "mobile user

   16    station."

   17            MR. QUISENBERRY:  The best one is what Judge Hubel

   18    gave us, with adding in "slash or."

   19            THE COURT:  Even though that makes displaying

   20    optional?

   21            MR. QUISENBERRY:  Yes.

   22            THE COURT:  So you disagree with what you said

   23    earlier, that the irreducible minimum here is that it ought

   24    to display?

   25            MR. QUISENBERRY:  I believe that's a true

1  statement.

2           So, in light of that, I believe that --

3           THE COURT:  The disjunctive ought to come before

4  "display," and the conjunctive means the displaying always

5  happens, right?

6           MR. QUISENBERRY:  Yes.

7           THE COURT:  Thank you.

8           That's what I want to hear, not your compromise

9  proposal, but what you think the claim language provides.

10           MR. QUISENBERRY:  Yes, sir.

11           THE COURT:  That's how we'll define "mobile user

12  station": "A mobile device that is capable of determining,

13  transmitting or receiving and displaying traffic

14  information."

15           Let's take a brief break here, and we'll take back

16  up after five minutes.

17           THE CLERK:  This court is in recess.

18           (A recess is then taken.)

19           THE COURT:  Thank you.  I didn't mean to keep you

20  waiting.  I had to take an important phone call that took

21  longer than I thought.

22           We were still sort of beating to death "mobile

23  user station."  I think we're close.  I intend not to

24  completely rule on all these from the bench here today, but

25  the fundamental idea is that a mobile device capable of

something, and I believe it will be as I just described.

I'll take some time to think about it, but I believe it will

be, "capable of determining, transmitting or receiving and

displaying traffic information."

All right.  That's two.

So let's turn to -- I think what we'll do is turn

to "traffic information."  That will be followed by the two

contested terms that have that phrase, "traffic information"

in them, and then on down from there, ending with "vehicular

movement."

So let's turn to "traffic information."

All right.  Again, I'm sort of comparing in my own

mind the Court's construction with the two proposals, and I

agree with the clause that Judge Hubel added, which is in

Google's proposal -- well, I think I agree with the clause,

"as detected by one or more traffic monitors."  So that's

issue number one.

The second is that I agree with the Court's

decision -- or I tentatively agree with the Court's decision

not to limit the information to current speed, frequency,

flow, et cetera.

And then the third debate, if there really is one,

is about -- so, one is it's information not necessarily

current; and two is that it's gathered or detected by one or

more traffic monitors; and the third is what goes in the

1　list.

2　　　　The Court's construction has "travel, frequency

3　and position."  Google's has "speed, frequency or flow."

4　And Traffic has, "speed, motion, density, flow, frequency."

5　It also has "velocity."

6　　　　I recognize that, in a scientific sense, there's a

7　difference between "speed" and "velocity," but I don't

8　believe those terms are used differently in this patent, so

9　I don't know why we'd have both.

10　　　　So that's a little bit less of an important

11　debate.  It's some combination of those words as to what

12　goes into "traffic information."

13　　　　And then finally, Google has the word "multiple,"

14　which doesn't -- it isn't expressed in the Court's

15　construction, but both the Court and Traffic use the word

16　"vehicles."

17　　　　So I don't know that there's a real distinction

18　there.  There is in the way the parties have subsequently

19　written it up to me, but the proposal, at least, from

20　Traffic, originally said "vehicles," while "vehicles" is

21　plural, although I believe Traffic currently wants to make

22　sure that the traffic information is about one or more

23　vehicles.

24　　　　So those are the debates.

25　　　　Let's start with, "as detected by one or more

traffic monitors," which is in the Court's construction and Google's proposal.

Why do you believe that's important?

MR. SHUNK:  Your Honor, if I may address that point.

I must say I'm a little uncertain about how to proceed, because of course our view is that "traffic information" is indefinite and therefore can't be -- a definition can't be elicited from the patent or the prior art or the specification.

THE COURT:  Well, there's absolutely nothing wrong with simply resting on that.  You don't have to try to propose something that you think works for a term that you believe to be indefinite.  I don't hold that argument against you in any way.  If that's your argument, you are putting your eggs in that basket, but --

MR. SHUNK:  And, of course, I don't want to, because if it is determined that it is definite, then I'd like to offer the Court the best definition I can come up with, short of the argument, and that's what we have attempted to do.

In other words, given the fact that we don't think "traffic information" is clearly defined in the patent, where we go -- and I think this is the way Judge Hubel went -- was to look at what it actually says in the patent

about the specific examples of traffic information as
described.  And I think that's an appropriate direction to
go, not waiving the indefiniteness argument, but attempting
to get the best you can out of the patent.  That's certainly
what was done in the *ICU Medical* case that we cite, where
the Court said yes, *Phillips* says don't import restrictions
from the specification into the claims, but nevertheless it
goes on to say the particular limitation described in that
case was only described in one particular way throughout the
patent, and therefore adopted that particular definition.

So --

THE COURT:  Why do you propose, "as depicted by
one or more traffic monitors," instead of proposing, "as
detected by one or more traffic monitors or mobile user
stations"?

MR. SHUNK:  Because mobile user stations are never
described as themselves getting or determining traffic
information.

THE COURT:  And why -- Thank you.  So it's a
textual argument, basically?

MR. SHUNK:  Yes.

THE COURT:  That is just not something you believe
can be found in the patent?

MR. SHUNK:  That's right.  In other words, the one
place that you see the mobile user station providing

1    information is to the traffic information database, and I

2    think this is certainly an argument that Traffic makes that

3    I think confuses the issue.  The "traffic information

4    database," which is a claim term in Claim 21, is actually a

5    database of traffic information; that is, information about

6    the movement of multiple vehicles.

7         It then says in Claim 22 that it can be augmented

8    by information that is obtained from traffic monitors.  So

9    it's not really necessary -- I should say that the way we

10   view the traffic information database is that it's

11   historical information.  It's information that may be

12   computed by the database itself, but when it needs to be

13   augmented, it's augmented by traffic monitor information.

14   Traffic monitors are what obtain the information, and mobile

15   user stations are what display the information,

16   fundamentally.

17        Now, the patent does talk about the fact that

18   mobile user stations can also transmit their location, and

19   it talks about the fact that that can be used in order to

20   assemble information that goes into a traffic information

21   database, but it doesn't say that the mobile user stations

22   themselves transmit traffic information, it only discusses

23   the transmission of traffic information by one or more

24   traffic monitors.

25        And I think that's the reasoning that Judge Hubel

saw in requiring that traffic information be something that

is as detected by one or more traffic monitors.

THE COURT:  So your view is that traffic

information is detected by traffic monitors?

MR. SHUNK:  Yes.

THE COURT:  But that the traffic information

database can contain two things:  traffic information as

detected by traffic monitors, and something else augmented

or derived from mobile user stations?

MR. SHUNK:  Yes, Your Honor.  In other words, if

you notice, our proposal, the proposal for "traffic

information database" is very similar to "traffic

information," except that it doesn't require that it be

detected by one or more traffic monitors.

So to --

THE COURT:  You mean that's your limitation on

"traffic information"?

MR. SHUNK:  That's right.

THE COURT:  Without that limitation being imposed

on "traffic information database"?

MR. SHUNK:  Yes.  We don't import that "as

detected by one or more traffic monitors" into the

definition of "traffic information database" because we

think the database is broader, that it's simply the traffic

information that the traffic monitors transmit.

```
 1              THE COURT:  Which you get specifically from Claim

 2      22?

 3              MR. SHUNK:  Yes, among other things.

 4              THE COURT:  Thank you.

 5          What objection do you have, if any, to "traffic

 6      information" being defined at least in part as "detected by

 7      one or more traffic monitors"?

 8              MR. QUISENBERRY:  Okay.  Let me just kind of talk

 9      about this generally.  So there are the two independent

10      claims, Claim 1 and Claim 21.  Claim 1 recites "traffic

11      monitors."  Claim 21 does not recite "traffic monitors," but

12      instead it recites "mobile user stations."  Claim 22, which

13      depends on Claim 21, adds in "traffic monitors."

14          So we think there's a very strong claim

15      differentiation argument that says that it's improper to

16      read the traffic monitor limitation from Claim 22 into Claim

17      21.  That's, I think, you know, a very strong point.

18              Let me --

19              THE COURT:  We'll come to claim differentiation

20      later.  Quite frankly, my concern is that I've heard two

21      different sort of proposals of what Claim 22 does, and

22      without deciding the issue at all, I'll just say that both

23      of them appear to be -- both appear to have claim

24      differentiation issues in them.  So I'm not sure there's a

25      way out of that box for me with Claim 22.
```

1          Be that as it may, your main argument as to why

2   "traffic information" should not contain the limitation, "as

3   detected by one or more traffic monitors," comes from

4   essentially Claim 21 and 22 read together?

5          MR. QUISENBERRY:  Well, coupled with the fact that

6   Claim 1 expressly recites a traffic monitor, whereas Claim

7   21 doesn't recite a traffic monitor at all.

8          And then here's the other point.  If you take that

9   construction of "traffic information" that has the phrase at

10  the end that says, "as detected by one or more traffic

11  monitors," and then you plug that into Claim 21, you're

12  clearly importing the traffic monitor into Claim 21.  We

13  just think that's an improper importation of a limitation

14  from the specification that's just not in the claim.

15         And if I could add --

16         THE COURT:  So what are the sources, according

17  to -- for one reading the patent, where does the traffic

18  information come from?

19         MR. QUISENBERRY:  Well, it can come from -- well,

20  I mean, looking, for example, at Claim 1 of the '862 patent,

21  the way the claim is laid out, the first thing that happens

22  is you have the traffic monitors that are recited that have

23  the detector and the transmitter, and the detector detects a

24  signal.

25         THE COURT:  I don't need to know the mechanism.

1    You're just telling me that one source of traffic

2    information in Claim 1 is traffic monitors?

3                MR. QUISENBERRY:  True.

4                THE COURT:  What other source does the patent

5    teach us about -- of traffic information?

6                MR. QUISENBERRY:  Well, let me point you to one.

7    I pulled it up on the screen.

8           And this is something that the magistrate judge

9    quoted at page 22 of his order.  He's quoting from column

10   13, lines 19 through 21 of the specification.

11          I mean, I can read it.  "In addition, the

12   specification states that the computer system may provide

13   traffic information without the use of monitors at all,

14   relying solely on information derived from the mobile user

15   stations."

16          So when I hear from Google that -- basically

17   directly the opposite of this, I think is what I heard, that

18   you can't get traffic information that is derived from a

19   mobile user station, I believe that this evidence from the

20   specification shows that that's incorrect.

21               THE COURT:  All right.  Let's ignore for a moment

22   the list that the Court's construction has in it:  speed,

23   direction, frequency.  We'll come back to what should be in

24   the list and what shouldn't.

25          I take it, then, that you'd have no objection to a

1  construction that said, "the actual speed, et cetera, of

2  vehicles traveling on a road, as detected by one or more

3  traffic monitors and/or mobile user stations"?  In other

4  words, there's no other source for traffic information than

5  those two sources in the patent?

6          MR. QUISENBERRY:  This is something I haven't

7  given a lot of thought to.

8          THE COURT:  Well, is there in the patent any other

9  source for traffic information?  Is the patent claiming

10  traffic information from the wide world, news broadcasts,

11  newspapers?

12          MR. QUISENBERRY:  As I sit here, without going

13  back and viewing the patent in light of the question, I

14  can't think of anything else that's disclosed in the patent

15  that would be a source other than traffic monitors or mobile

16  user stations.

17          THE COURT:  Well, if I thought it was a hard or a

18  tricky question, I might give you more time, but it doesn't

19  seem to be either, really.  That's all this patent is

20  claiming, isn't it, that traffic information coming at most

21  from traffic monitors and mobile user stations, nowhere

22  else?

23          MR. QUISENBERRY:  It doesn't strike me as a tricky

24  question either, Your Honor.  I think the answer to that is

25  yes.

1          THE COURT:  All right.

2          MR. QUISENBERRY:  I just am a little bit uneasy

3     without having thought about it.

4          THE COURT:  Let's go to the list.  I have a hard

5     time sorting through what really matters here.  Speed,

6     frequency, flow; speed, velocity, motion, density, flow,

7     frequency; speed, direction, frequency, and position.  Those

8     are the three.

9          Do you have any thoughts from Traffic about which

10    of these are really fairly included in the concept of

11    "traffic information," as found in the patent?

12         First of all, let's start with an easy one.  Do

13    you need speed and velocity?

14         MR. QUISENBERRY:  I don't think it's critical.

15         THE COURT:  All right.  And everybody says flow --

16    well, no, you and Google say flow.  The Court doesn't.

17         You suggest motion.  I guess you are just pulling

18    that out of one piece of the patent?

19         MR. QUISENBERRY:  I believe so, Your Honor.

20         THE COURT:  Your words just come from various

21    places in the patent, right?

22         MR. QUISENBERRY:  That's true.

23         THE COURT:  Which is why you put "speed and

24    velocity," since the patent either says "speed (velocity)"?

25         MR. QUISENBERRY:  Correct.

1          THE COURT:  Thankfully it doesn't say, "frequency
2     (number of times), vehicles (cars)."
3          We'll give you speed but not velocity.
4          I'll work through that myself.  I'm not sure how
5     important the list is.
6          I recognize that your contention -- well, first I
7     recognize the box you're in with indefiniteness.  This is at
8     the crux of indefiniteness.  Assuming we work our way around
9     indefiniteness somehow, you've contended that traffic
10    information comes from one source, and that traffic
11    information database can have two sources?
12         MR. SHUNK:  Yes, Your Honor.
13         THE COURT:  So you, I assume, believe that
14    "traffic information" should not be defined to come from
15    possibly traffic monitors and/or mobile user stations?
16         MR. SHUNK:  That's right.
17         THE COURT:  And that's inconsistent with what
18    claim, what patent language?
19         MR. SHUNK:  Well, for example -- and first of all,
20    I would disagree with Mr. Quisenberry.  I think we have
21    taken into account the differences between Claim 1 and 21,
22    in the fact that we defined "traffic information" to be, "as
23    detected by one or more traffic monitors," but we don't
24    limit "traffic information database" in that way.  And I
25    think that that's how we have accommodated the fact that the

1    traffic information database may have several sources, but

2    traffic information itself has only one source, and that is

3    the traffic monitor.

4         Now, looking at the claim language, to respond to

5    specifically to Your Honor's question, in Claim 1 --

6         THE COURT:  May I pause you for just a moment.

7         MR. SHUNK:  Sure.

8         (There is a pause in the proceedings.)

9         THE COURT:  I'm sorry.  Go ahead.

10        MR. SHUNK:  Thank you, Your Honor.

11        Claim 1 and subsection (e) requires that what is

12   transmitted or provided in this case to the mobile user

13   stations is, "traffic information representative of said

14   signals transmitted by said traffic monitors."

15        So we would argue that the actual language of the

16   claim explains that the traffic monitors are the source of

17   the traffic information that is of relevance to, you know,

18   to the invention.

19        And then if you look over at Claim 22, it talks

20   about the system of Claim 21, which has the traffic

21   information database in it, "wherein a computer system is

22   connected to the traffic monitors and the traffic

23   information database contains data derived from said traffic

24   monitors," the implication being that with regard to Claim

25   21, that because the dependent claim is limited, Claim 21 is

broader than it, so Claim 21 then gets information that is derived from the monitors and information that's derived from other sources.

And Claim 23, dependent on Claim 22, has the computer system updating the traffic information database based on data received from the mobile user stations, not traffic information received from them but on data.

So, again, the grand scheme, mobile user stations don't transmit traffic information.  They transmit data about individual vehicles.

Now, the traffic information database might take that information on individual vehicles and update the traffic information database based on it, but that doesn't change the fact that it's -- that traffic monitors gather the traffic information, but the mobile user stations do not gather the traffic information.

So I disagree with Mr. Quisenberry that Claims 21, -2 and -3 belie our argument.  In fact, I think they support it, because they show that there are two distinct sources of information in the traffic information database.  One of them is giving traffic information.  The other is simply supplying data that is then somehow -- and it's not clear from the patent, but is somehow massaged to update the traffic information that's in the database.

THE COURT:  And 21, in your view, sub (d), simply

1    describes mobile user stations getting some undefined subset

2    of information from the traffic information database?

3                MR. SHUNK:  Yes.

4                THE COURT:  It's not necessarily traffic

5    information, as earlier defined?

6                MR. SHUNK:  Right.

7                THE COURT:  Because if it got traffic information,

8    your view is getting it is not the same as inputting into

9    it?  Receiving it is not the same?

10               MR. SHUNK:  The mobile user stations provide data

11   which might be useful in updating the traffic information

12   database or might be somehow aggregated to create traffic

13   information, but the mobile user stations don't themselves

14   transmit traffic information.

15               THE COURT:  All right.  Thank you.

16               Do you wish to reply?

17               MR. QUISENBERRY:  Yes, Your Honor.

18               THE COURT:  Go ahead.

19               MR. QUISENBERRY:  I'm just looking for an example

20   here.

21               If you look at column 12, for example, line 38,

22   there's a paragraph there that begins, "In a preferred

23   embodiment".

24               THE COURT:  Yes.

25               MR. QUISENBERRY:  So I'll read that.  I believe

1    there's a passage here that supports -- or that is contrary

2    again to what we're hearing from Google.

3           "In a preferred embodiment, the system obtains

4    traffic information from users that have a GPS receiver

5    (62). In this system, whenever a user station (52) requests

6    traffic information from the computer system, the computer

7    system associates the velocity of that particular user with

8    its current location."

9           I believe that that right there is an example of

10    velocity that's coming from the mobile user station. That's

11    an example of traffic information.

12           And then if I can just direct the Court again

13    to --

14           THE COURT: Well, I guess I thought you were going

15    to rely on the first phrase, "the system obtains traffic

16    information from users."

17           MR. QUISENBERRY: I think that's equally helpful.

18    I guess it just didn't specify the mobile user station

19    there, and that's why I went a little bit further.

20           And then if I could, I mean, this is -- this

21    sounds to me like it could be an important point, and we're

22    really at opposite ends of the spectrum from Google on this

23    question of whether or not a mobile user station can be used

24    to generate traffic information. I believe the quote that I

25    read a minute ago from -- that the magistrate judge relied

on in page 22 of his order is another one.  Again, this is
column 13, line 19 to 21, where the examiner said, "In
addition, the specification states that the computer system
may provide traffic information without the use of monitors
at all."

That's an example of what's happening in Claim 21.
Again, it only recites a mobile user station.  It doesn't
recite a traffic monitor.  The traffic monitor doesn't enter
the picture until you get down to a dependent claim.  And,
you know, we think that's improper to import "traffic
monitor" into Claim 21, and that's what's happening by
including it in the definition of "traffic information."

Now, I have another response, if I may, to another
point that Mr. Shunk made.  He referred to Claim 1(e) as
support for including the traffic monitor limitation at the
end of the construction of "traffic information."

I agree with him that if this was the only claim,
then he would have an argument with respect to that claim.
But the problem is there's nothing in the specification that
requires traffic information to come from traffic monitors,
and you've got Claim 21 that doesn't include a traffic
monitor and doesn't include this same language that
Mr. Shunk is pointing to in Claim 1.

THE COURT:  Well, Claim 1(e) does state that,
taken by itself, traffic information essentially comes from

or is representative of signals transmitted by traffic

monitors.  So starting with that, you need somewhere else to

really contradict that, at least to get past it.

What is it that you're relying on in the claim

language where traffic information comes from something

other than traffic monitors?  And I said starting with claim

language.

MR. QUISENBERRY:  Well, certainly in Claim 1

there's not going to be anything, because this is a claim

that's directed to the traffic information coming at least

from traffic monitors.

So I would direct the Court's attention to Claim

21, which doesn't say anything -- it doesn't include this

same language that says, "traffic information representative

of said signals transmitted by said traffic monitors."  That

phrase is not in Claim 21.

THE COURT:  I understand that.  And I guess that's

what I'm asking.  You have in Claim 1(e) language that

defines "traffic information" as "coming from said traffic

monitors."

So to point me at 21 and say, "Well, that's not

repeated in 21," doesn't get you very far, at least in terms

of claim language.  I'm not saying that we only rely on

claim language, but the fact that 21 doesn't repeat the

definition in Claim 1, that is a sort of a weak inferential

1    argument.

2              I'm looking for you to point to me somewhere where

3    "traffic information" in the claim language is defined as

4    coming from more than traffic monitors.

5              I think your answer is there's nowhere in the

6    claim language that it does that, let's turn to

7    specifications and embodiments, right?

8              MR. QUISENBERRY:  I believe that's correct.

9              THE COURT:  All right.  Thank you.

10             MR. SHUNK:  May I respond briefly to that last

11   point?

12             THE COURT:  Just let him finish.

13             MR. SHUNK:  I'm sorry, Your Honor.

14             THE COURT:  That's all right.

15             MR. QUISENBERRY:  The only thing I was going to

16   add again was the claim differentiation argument between 21

17   and 22.

18             THE COURT:  And I don't want to get too deeply

19   into that, since I've punted on it, but your argument there

20   is, if I understand it, that a definition of "traffic

21   information" as coming only from traffic monitors renders 22

22   essentially superfluous to 21?

23             MR. QUISENBERRY:  Well, if you include the traffic

24   monitor limitation in "traffic information," that is going

25   to import the traffic monitor limitation into Claim 21.

1          THE COURT:  Yes.

2          MR. QUISENBERRY:  And we believe that the doctrine

3    of claim differentiation precludes that because the

4    limitation "traffic monitor" that is sought to be imported

5    is found in a dependent claim.

6          THE COURT:  Claim 22?

7          MR. QUISENBERRY:  Yes, sir.

8          THE COURT:  All right.  Which is what I thought I

9    said, that if you defined it that way, 22 becomes

10   superfluous.  You don't need it anymore because you've

11   already made that limitation elsewhere.

12         Is that the idea of claim differentiation, then?

13   In other words, there's no further need for 22 if you import

14   the "traffic information monitor" limitation into "traffic

15   information"?

16         MR. QUISENBERRY:  Yes.

17         THE COURT:  All right.

18         And again, I'm not going to go on with this very

19   long, but just in a nutshell for me, if you don't do that,

20   you don't import "traffic information monitor" as a

21   limitation on the term "traffic information," what does 22

22   add to 21?

23         MR. QUISENBERRY:  22 adds that the computer system

24   is connected to a plurality of traffic monitors, number one.

25   I mean, now you've got a claim that specifically recites

both a mobile user station and a computer system that is

connected to a plurality of traffic monitors, and then

there's additional language there in Claim 22.

THE COURT:  All right.  Thank you.

Go ahead.

MR. SHUNK:  Thank you, Your Honor.

Just responding to two points that Mr. Quisenberry

made.  First of all, Claim 22 isn't superfluous because it

claims the computer system being connected to the traffic

monitors and deriving the traffic via the information

database from the monitors.  That is smaller in scope than

the possibility that the traffic information database comes

from a remote database that it is not -- that the database

is not connected to; for example, a historical database of

traffic times and conditions that it might extract traffic

information from.

So, in other words, it's very possible to read 22

as being a subset of a greater universe of traffic

information databases that come from traffic monitors, ones

that are both connected to the system and ones that are no

longer or have never been connected to the system.

THE COURT:  All right.

MR. SHUNK:  Secondly, again looking at the claim

language, notice that the claim language of 22 talks about

the information database being built from the traffic

1    monitors.  23 only talks about the mobile user stations

2    updating the database based on data.

3         And the final point that I would make very

4    quickly, Your Honor, is that in the specification section

5    that Mr. Quisenberry read and that was quoted by the

6    magistrate, the specification says that "The system may

7    provide traffic information without the use of monitors,

8    relying solely on information derived from the mobile user

9    stations."

10        It doesn't say the system may obtain traffic

11   information without the use of monitors.  What that is

12   explicitly teaching is the possibility that data -- not

13   traffic information but simply individual vehicular data is

14   obtained from -- by the system, and then the system

15   essentially cooks that into traffic information, but it does

16   not at all undercut the fundamental principle that traffic

17   information is information about multiple vehicles, and

18   therefore cannot be provided -- it cannot be provided by an

19   individual mobile user station.

20        THE COURT:  And in terms of the limitation on

21   "traffic information from traffic monitors," that limitation

22   being absent from "traffic information database," that's

23   what Judge Hubel did?

24        MR. SHUNK:  Yes.

25        THE COURT:  You don't disagree with that at all?

 1                MR. SHUNK:  No.

 2                THE COURT:  Finally, on "traffic information,"

 3    Traffic's proposal and the judge's construction used the

 4    word "vehicles."  Google has made much of multiple vehicles.

 5    What's the difference between multiple vehicles and

 6    vehicles?

 7                MR. QUISENBERRY:  Two seconds?

 8                THE COURT:  Sure.

 9                (There is a pause in the proceedings.)

10                MR. QUISENBERRY:  Thank you, Your Honor.

11          So there may not be any disagreement on this one.

12    We've agreed with a portion of the magistrate judge's

13    construction that talks about vehicles.

14                THE COURT:  All right.  Thank you.

15          There are two related terms defined by Judge

16    Hubel:  "Traffic information representative of said signals

17    transmitted by said traffic monitors," and however one goes

18    on defining "traffic information."  I don't see a lot of

19    difference among the parties at the core of this phrase.  It

20    just is sort of driven by the definition of "traffic

21    information."

22          So I don't need to hear further argument on that

23    one.

24          And finally, "traffic information database

25    containing data representative of traffic," I feel the same

way about that, that however one goes with defining "traffic
information," even as a part of this term -- in other words,
the Court defined "traffic information" here, "collected by
traffic monitors and/or mobile user stations."  I'm not sure
the rest of that matters a lot.  The parties all agree --
all define "database" in some way; Traffic as "a collection
of traffic information."

          I guess that's where you wanted to think further
about whether this database contained anything other than
something received from traffic monitors and mobile user
stations, right?

          MR. QUISENBERRY:  I would say that it could
include information from both and/or traffic monitoring.

          THE COURT:  I understood that, but instead of
saying that, you've said "a collection of traffic
information."

          "Traffic information" is defined earlier by you as
"something coming from and/or" -- correct?  "Mobile user
stations and/or traffic monitors."

          So, in your view, if you defined "traffic
information" your way, then "database" doesn't require much
of a definition; isn't that right?

          MR. QUISENBERRY:  Well, we have some other points
about the "traffic information database" limitation that are
separate and apart but would not be resolved by the

construction of "traffic information," I don't believe.  I

mean, for example, if you look at -- I may be jumping around

here, but "traffic information representative of," that

phrase.

THE COURT:  Yes.

MR. QUISENBERRY:  The magistrate judge said that

that's "traffic information detected and transmitted by

traffic monitors."

And the problem that we see there is that as you

plug that definition in for that phrase, it reads out the

relationship between the signals that are used to then

create the traffic information.

So this is a situation where he's essentially

saying that the traffic information actually has to be

detected at the traffic monitor location.  And the way the

claim reads, for example, if you look at Claim 1 of the '862

patent, it starts out by saying that the traffic monitor

collects or transmits a signal that's representative of

vehicular movement, or something like that.  So you've got a

signal that comes from the traffic monitor, goes to the

receiver and then to the computer system, and then from the

computer system, that is where the traffic information comes

to life and is transmitted out to the mobile user station.

But the way the magistrate judge construed that

phrase by saying that it's traffic information detected and

1  transmitted by traffic monitors, that distinction

2  disappears.

3        THE COURT:  All right.  Thank you.

4        As I said, in my view these are driven by the

5  resolution of the question of what "traffic information"

6  means, and I'll resolve them following the oral argument, in

7  light of how I rule on "traffic information."

8        I'm inclined to agree with the Court and Google's

9  argument that -- the Court's construction and Google's

10  argument that the claim language itself describes "traffic

11  information" as coming from traffic monitors.

12        It's a bit of a hierarchy of source of argument

13  that concerns me here, since that language, that meaning of

14  "traffic information" comes from the claim language, and the

15  only thing contrary I'm aware of comes from something lower

16  down the eristic hierarchy than claim language.

17        Let's turn to -- I understand that "less than all

18  available traffic information" has been withdrawn.

19        MR. QUISENBERRY:  Yes.

20        THE COURT:  I don't need to hear more about

21  "information representative of selected portions of said

22  traffic information database," other than focusing on the

23  Court's construction using the word "selects."  And I think

24  one and possibly both parties are concerned that that adds a

25  step by users not really found in the patent itself.

1        I know that's Traffic's concern, is it not?

2        MR. QUISENBERRY:  Yes, that's one of them.

3        THE COURT:  So I just want to focus on the fact

4    that it's a subset of information from the database, no verb

5    in there of "selecting by users."

6        MR. QUISENBERRY:  Right.  And there's something I

7    discovered, Your Honor, when I was preparing for this

8    hearing, going back through the magistrate judge's order.

9    And if I could just pull up another slide?

10        THE COURT:  Yes.

11        I'll step down.  I've lost my signal again.

12        Go ahead, I'll read it down here.

13        Go ahead.

14        MR. QUISENBERRY:  Okay.  So this is something that

15    the magistrate judge wrote in his Markman orders, page 17

16    and 18.

17        He says, "On this record, the Court agrees with

18    Traffic that neither the claim nor its specification

19    describes the need for a user to take any steps to cause the

20    mobile user station to request information from the computer

21    system."

22        We believe that -- I need to be clear here that he

23    said this in a different place in his order.  He was not

24    talking about this claim term.

25        But what I did is -- then he quoted from a passage

of the '862 patent.  It's in the specification.  And I have
done this side-by-side comparison so that you can see that
the language that he was quoting in this spec lines up
directly with the language in Claim 21(d).

           And so the point is, is that I think that
there's -- there's a recognition at least on behalf of the
magistrate judge that the user -- that there should be no
action required by the user in order for the mobile user
station to make a request for information from the computer
system.

           THE COURT:  Google's proposal doesn't contain the
concept of a selection or request by a user; rather, it
focuses on what the subset of information is that's being
described by this term.

           So I take from that, you don't really object to
the idea that a more accurate construction might delete the
idea of a selection by a user of the mobile user station of
this information?

           MR. SHUNK:  I'm not sure I understand, Your Honor,
frankly.  We have in our proposal requested that a subset of
"which is selected by the commuter" be part of the
definition.  And the Court, I believe, agreed with us that
the user selects portions of the information database.

           So I think we're in accord with Judge Hubel that
the user is selecting the portion of the database that he

wants to see or she wants to see.

The confusion comes from the fact that the place that Mr. Quisenberry read from the magistrate judge's order, and again from the specification, isn't talking about selecting a portion of the database; it's, rather, the part that talks about the making a request for information and then the system providing response.  And the magistrate was addressing the *IPXL* indefiniteness argument, and saying that he believed there was no requirement that the human being take the step of requesting information, and therefore in his view -- and we disagree respectfully with him -- he believed that *IPXL*'s indefiniteness finding wasn't triggered.

However, that's different from the question of whether the data -- the portion of the database requested is controlled by the user or not.  And to give you a simple example of what that talks about, for example, you may want to look at what's the traffic going to be like going home tonight.  Well, you could look at just a five-block radius around the courthouse, or you could look at the entire county and see what the roads look like, or you could look at a quadrant of the state, depending on how far you wanted to go.  That, we believe, the specification teaches that the user, the human being must select.

And before coming today, we did a word search on

the specification, and every time the word "select" is used

in the specification, at least as far as we could see, the

selection was done by a human being, a user.

So -- and we think, frankly, the plain word itself

"select" implies human intervention, because computers don't

select things, they respond to certain inputs.  But

selection implies a will.

THE COURT:  I guess I have a lot of trouble with

that concept.  Computers select things all the time.

Somebody is sending me ads for products that I've never

desired on the computer every day, so I hope that's not a

human doing that.

But I get your point that you're in accord with

the Court that the phrase, the term we're defining here,

"information representative of selected portions of said

traffic," assume "traffic information database" should be

defined as in essence a subset of the total traffic

information database in some manner selected by -- you say a

commuter, but the claim language is the user of the mobile

user station.

MR. SHUNK:  Yes.  And we wouldn't object to "user"

being substituted for "commuter."  I think we chose

"commuter" because in the specification, the word "commuter"

is used.  But I don't see a big difference between

"commuter" and "user."

1          And perhaps "user" is better, as I think about it,

2    because certainly this information and these claims are not

3    limited to simply people who are commuting back and forth to

4    work, but anyone who is seeking to understand traffic

5    information in the context of specific geographic origins.

6          THE COURT:  All right.  Thank you.

7          The last phrase I want to hear about is "vehicular

8    movement."

9          MR. QUISENBERRY:  Your Honor --

10         THE COURT:  Yes?

11         MR. QUISENBERRY:  May I just respond?

12         THE COURT:  On "information"?

13         MR. QUISENBERRY:  Yes, sir.

14         THE COURT:  Yes, but you'll owe me a sandwich from

15   the restaurant of your choice if you repeat yourself at all.

16         MR. QUISENBERRY:  Okay.  I don't think I'm going

17   to have to deliver on that.

18         Here's what I'd like to do, because we haven't

19   walked through Claim 21(d) yet.  Okay.  And I've pulled it

20   up on the screen here.  I just want to go to it in the

21   patent.

22         THE COURT:  I have in front of me the patent.

23         MR. QUISENBERRY:  Okay.  So Claim 21(d), first of

24   all, there's nothing in the claim that says anything about a

25   user doing anything.  Okay?  The way it starts out, it says

that a mobile user station provides two pieces of information to the computer station.  First it provides the request, and then along with it it provides the geographic location of the mobile user station.  And then the computer system takes that information and turns around and provides back to the mobile user station this information that we talk about here, "providing to said one of said mobile user stations information representative of selected portions of the map database and selected portions of the traffic information database."

        And then the point is how does the computer system make that decision as to what information it's going to send back?  The claim language says that it does it "based on said respective geographic location of said one of said mobile user stations."

        So in terms of the hierarchy and relevance of the intrinsic record, here we are at the claim language, and it says nothing about a user doing anything.  It very clearly explains how the process works, that the mobile user stations fires off these two pieces of information, the request, the geographic location, the computer system takes that and spits back to the mobile user station this information, the map and the traffic information, which is selected based upon the location of the mobile user station.

        So I think that that explanation that comes

straight from the claim language is just at odds with what

Google is saying.

THE COURT:  Thank you.

"Vehicular movement."  I'll start with Google.

MR. SHUNK:  Your Honor, I'm not sure that we have

a lot of complaint about the magistrate judge's

construction, so long as it is understood that this use of

the word "vehicles" implies multiple vehicles, again that

that's not going to drop by the wayside.  We use the phrase,

"multiple vehicles traveling along the road," to emphasize

the fact that vehicular movement was not the movement of an

individual car.  And I believe that the magistrate judge

reached the same conclusion, saying, "the actual movement of

vehicles along the road."

So I'm not sure that we're in disagreement, and I

believe, Your Honor, at least I'm hearing a tentative

conclusion from Your Honor that using the word "vehicles" in

plural means multiple vehicles.

THE COURT:  That's how I understand plurals to

work.

What -- I may have missed something.  What is

added by the parenthetical sentence at the end of the

Court's construction, if anything?

MR. SHUNK:  I think -- obviously Judge Hubel would

know the answer to that better than I do, but I suspect that

1  by the word "movement," he didn't find -- he wanted to

2  describe a vector, not a point.  Just knowing a specific

3  point of a vehicle doesn't tell you anything about its

4  movement, and I think that's why he included that phrase

5  there.

6      THE COURT:  Well, you say -- again, I'm not trying

7  to get inside his head.  We're talking about what his

8  objective meaning is.  If you say, "the actual movement of

9  vehicles along the road," including velocity and change of

10  position, but not just the position, what you mean is you

11  can give velocity -- well, one meaning is you can give

12  velocity, position and change of position.  The other

13  meaning is you can give velocity and change of position, but

14  you do not include just position only, change of position.

15      Which of those two -- how do you read that?  Which

16  of those two?

17      MR. SHUNK:  I guess I would read it as the latter,

18  that velocity and change of position are aspects of

19  vehicular movement, but simple position is not an aspect of

20  vehicular movement.  And I would agree with that.

21      THE COURT:  And that's where you differ?  You

22  think "vehicular movement" includes concepts of velocity and

23  change of position but also just position?

24      MR. QUISENBERRY:  Correct.

25      THE COURT:  So if there's a dead-stop traffic jam,

1    one of the information pieces about vehicular movement you

2    contend is included within that language is that everybody

3    is stopped?

4              MR. QUISENBERRY:  Yes.  I mean, that's what

5    happens when it shows up red on your phone.

6              THE COURT:  All right.  Thank you all.

7              MR. SHUNK:  Your Honor, can I respond to that,

8    just that last point?

9              THE COURT:  Whether movement includes position or

10   only change in position?

11             MR. SHUNK:  There can be zero velocity.  That's

12   different from reporting a point.  And I think this is a

13   critical issue to the case, because there may be some types

14   of monitors, for example, or other devices that report

15   simply the position at a specific time of a vehicle.

16             THE COURT:  There can be zero velocity.  Why can't

17   there be zero movement?

18             MR. SHUNK:  Well, zero velocity would be zero

19   movement, but there's a difference between saying Tom Shunk

20   is standing right now in the middle of the courtroom and

21   he's not moving versus Tom Shunk is standing in the middle

22   of the courtroom without information about what I'm doing

23   the next second thereafter or the previous second.

24             THE COURT:  Well, I'm interested in what the

25   phrase "vehicular movement" includes, and you're

1    arguing that -- essentially you're arguing that to say

2    there's no vehicular movement is not fairly included within

3    the phrase "vehicular movement".

4         MR. SHUNK:  No, actually, I would say that

5    recording zero -- that zero velocity is reporting vehicular

6    movement.  It's reporting that there is currently no

7    vehicular movement.  But there's a difference between that

8    and simply reporting the point where a thing is right now

9    without information about -- in order to be stopped, you

10   have to stop for some period of time, and if there's no

11   period of time reported, just the coordinates of a

12   particular vehicle at a particular point, you're not saying

13   anything about whether it's stopped over a period of time or

14   just there at that instant.

15        Maybe I'm not making myself clear.

16        THE COURT:  No, I understand.  I understand your

17   distinction between position and movement.

18        And finally, you advocated for this all being

19   detected by one or more traffic monitors?

20        MR. SHUNK:  Yes, Your Honor.

21        THE COURT:  Not monitors and mobile user stations?

22        MR. SHUNK:  Yes, Your Honor.  And we think, for

23   the reasons explained in the briefing, that that's

24   appropriate.  That's the only way the phrase is used in the

25   patent.  It's in connection with what the traffic monitors

1    report.

2              THE COURT:  Where do we find vehicular movement

3    associated with mobile user stations?  I'm sorry, I'm

4    looking at you, but I didn't say that I was asking you a

5    question.  I'm looking for a claim language link between

6    vehicular movement and mobile user stations.

7              MR. QUISENBERRY:  I'm not sure that there is one.

8              THE COURT:  Then why do you believe that vehicular

9    movement shouldn't be limited to "as detected by one or more

10   traffic monitors"?

11             (There is a pause in the proceedings.)

12             THE COURT:  I'm going to give you a minute to

13   think about that and turn here for just a second.

14             So are these two concepts linked, the idea that

15   you cannot define vehicular movement in terms of position

16   alone, and the idea that you gain information about

17   vehicular movement only from traffic monitors?  The reason

18   I'm asking if they're linked is that whether traffic

19   monitors are somehow, under the claim language, not capable

20   of giving you position but only movement?

21             MR. SHUNK:  I don't know that traffic monitors are

22   incapable of giving --

23             THE COURT:  I don't mean that technologically

24   speaking.  I mean that in terms of the way they're described

25   in the patent.  Do they only record and transmit movement

1    and not position?

2          MR. SHUNK:  Well, Claim 1(a) -- and this is the

3    only place "vehicular movement" is used in the claims, I

4    believe -- says that the detector, which is part of the

5    traffic monitor, provides a signal including data

6    representative of vehicular movement.

7          So I believe that -- that's why I believe

8    vehicular movement is very clearly linked in this patent to

9    the detector of the traffic monitor.  Traffic monitors

10   detect vehicular movement.

11         THE COURT:  All right.  But they're not linked, in

12   other words, linguistically in this patent?  There's no way

13   to understand vehicular movement not including position,

14   just by knowing that it comes from stationary traffic

15   monitors?

16         MR. SHUNK:  I believe that's right, Your Honor.

17         THE COURT:  That's not a very well-phrased

18   question, but I think you get the idea that I was wondering

19   whether there was a link that once we know they come from

20   traffic monitors -- that is, vehicular movement data -- do

21   we, of necessity, know that they cannot include position?

22   And that doesn't appear to be the case.  It's merely a

23   linguistic concept, not an otherwise logical concept.

24         MR. SHUNK:  I think I agree with that, Your Honor.

25         THE COURT:  All right.

1    I was looking for whether vehicular movement is

2    linked in the claim language anywhere to mobile user

3    stations.

4    MR. QUISENBERRY:  I don't believe that it is.

5    THE COURT:  It's only here in Claim 1 where it's

6    described, vehicular movement is described as coming from

7    traffic monitors?

8    MR. QUISENBERRY:  I believe that's correct.

9    THE COURT:  All right.  Thank you all very much.

10    I will get to you with my revisions.  I've given

11    you some tentative conclusions, and I don't intend to engage

12    in lengthy reanalysis -- that's why we've had an hour and a

13    half here -- and it will be for the reasons we've discussed

14    here unless I engage in claim construction that we really

15    haven't fully discussed here.

16    Anything further from Google?

17    MR. SHUNK:  No.  Thank you very much for your time

18    here today.

19    THE COURT:  Thank you both.

20    Anything further from Traffic?

21    MR. QUISENBERRY:  There were just a couple of

22    points that I didn't get to on vehicular movement.  It's in

23    the briefing.

24    THE COURT:  Do you have -- I received from Google

25    a copy of its PowerPoint slides on paper.  Do you have that

1   with you?

2           MR. QUISENBERRY:  Yes, I do.

3           THE COURT:  Would you forward that to the Court?

4           MR. QUISENBERRY:  Yes, I'd be happy to.

5   (Handing.)

6           THE COURT:  Wow, you win just by size.  I mean, I

7   look at that and I know who should win this case, right?

8           MR. QUISENBERRY:  Well, there's a bunch in there

9   from last time that we didn't touch on here, so --

10          THE COURT:  I'll do my best to make what use I can

11  of this.

12          Thank you all.  Good day.

13          MR. QUISENBERRY:  Thank you.

14          THE CLERK:  This court is adjourned.

15              (Proceedings concluded.)

16

17

18

19

20

21

22

23

24

25

1

2                                --o0o--

3

4           I certify, by signing below, that the foregoing is

5    a correct transcript of the record of proceedings in the

6    above-entitled cause.  A transcript without an original

7    signature or conformed signature is not certified.

8

9

10   */s/Bonita J. Shumway*              *10/3/2011*
     _____        _____
11   BONITA J. SHUMWAY, CSR, RMR, CRR    DATE
     Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25